UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTOCRAT LEISURE LIMITED,

    Plaintiff,

- against -

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee,

    Defendant,

KBC FINANCIAL PRODUCTS UK LTD,
KBC ALPHA MASTER FUND SPC KBC
CONVERTIBLE OPPORTUNITIES
FUND, KBC ALPHA MASTER FUND
SPC KBC MULTI-STRATEGY
ARBITRAGE FUND, AMARANTH LLC,
ALEXANDRA GLOBAL MASTER FUND,
LTD., UFJ INTERNATIONAL PLC,
DEEPHAVEN INTERNATIONAL
CONVERTIBLE TRADING, LTD.,
CALAMOS ADVISORS LLC ON BEHALF
OF CALAMOS GROWTH AND INCOME
FUND, CALAMOS GLOBAL GROWTH
AND INCOME FUND AND CERTAIN
OTHER INSTITUTIONAL CLIENTS,
CQS CONVERTIBLE AND
QUANTITATIVE STRATEGIES
MASTER FUND LTD., D.E. SHAW
INVESTMENT GROUP, LLC, D.E. SHAW
VALENCE INTERNATIONAL, INC, and
QVT FUND LP,

    Intervening Defendants.

**OPINION AND ORDER**

04 Civ. 10014 (PKL)



## APPEARANCES

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
Mark C. Hansen, Esq.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Michael K. Kellogg, Esq.
Mark L. Evans, Esq.
Antonia M. Apps, Esq.

Attorneys for the Plaintiff

CAHILL GORDON & REINDEL L.L.P
Charles S. Gilman, Esq.
80 Pine Street
New York, New York 10005
Oreste P. McClung, Esq.

Attorneys for the Defendant Trustee

CLEARY GOTTLIEB STEEN & HAMILTON L.L.P
Evan A. Davis, Esq.
One Liberty Plaza
New York, New York 10006

Attorneys for the Intervening Defendants

2

**LEISURE, <u>District Judge</u>:**

Plaintiff, Aristocrat Leisure Limited ("Aristocrat"), seeks reformation of a bond indenture ("Indenture") to correct a scrivener's error, and a declaration of plaintiff's immediate right to call the bonds for redemption under the Indenture. Plaintiff claims that it legitimately called the bonds on December 20, 2004, and that call simultaneously terminated the intervening defendants' ("Bondholders") right to convert their bonds to Aristocrat common stock. Defendant Trustee, Deutsche Bank Trust Company Americas ("Trustee"), defends this action on behalf of all of the convertible bondholders and is an affiliate of one of the lead underwriters and managers of the bond offering at issue. The Trustee and the Bondholders claim that notice is required to effect a call of the bonds, and that the Bondholders have a right to convert after notice is given. The Trustee and Bondholders argue that Aristocrat's December 20, 2004 alleged notice and call were not sufficient under the Indenture and seek declaratory judgment that the alleged notice and call did not terminate the Bondholders' right to convert their bonds to stock. The Trustee and Bondholders also seek declaratory judgment that the Bondholders' notices of conversion are valid and effective, and that Aristocrat is liable for any diminution in the value of its common stock effective after Aristocrat refused to honor the Bondholders' notices of conversion.[1] The Trustee seeks indemnification for its expenses in defending against this action. The parties now concurrently move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

---

[1] The Bondholders also asserted counterclaims for violation of federal securities laws and for breach of the implied covenant of good faith and fair dealing. Because developments as a result of the Court's decision here may moot those claims, plaintiff's obligation to respond has been held in abeyance pending the same.

# BACKGROUND[2]

I.  The Parties

Plaintiff Aristocrat, an Australian corporation, is a global supplier of gaming machines and video gaming machines. Plaintiff's supply area includes New York State. (Plaintiff's Complaint ("Compl.") ¶ 4.)

Defendant Trustee is a New York corporation. The Trustee was originally named Bankers Trust Company ("BTC") as referenced on the Indenture, and was acquired by Deutsche Bank in 1999. In April 2002, the Trustee officially changed its name to Deutsche Bank Trust Company Americas, as referenced in the above caption. (Defendant Trustee's Answer ("Tr.'s Ans.") ¶ 5.)

The intervening defendant Bondholders are various corporations organized in England, the Caribbean, and the United States (Delaware). The Bondholders own a substantial majority of the outstanding bonds here at issue. (Intervening Defendant's Answer ("BHs' Ans.") first unnumbered paragraph.)

II.  The Bonds

On May 31, 2001, plaintiff issued US$130,000,000 of 5% convertible bonds, due May 2006, to qualified institutional buyers ("QIBs"). The bonds were issued under an Indenture which lays out the rights and obligations of the issuer (Aristocrat), the Trustee, and the Bondholders. Unfortunately, the Indenture contains a scrivener's error regarding the proper exchange rate. The exchange rate was mistakenly transposed so that, instead of reading

---

[2] The following facts are drawn from the pleadings, the parties motion papers, and the contractual documents submitted as exhibits to the instant motion. Unless otherwise noted, these facts are not in dispute.

"US$0.514 = A$1.00,"[3] the Indenture read "A$0.514 = US$1.00." This error is continuous and consistent throughout the Indenture.

The Indenture allows the Bondholders to convert principal due under the bonds to newly-issued ordinary shares of Aristocrat stock. (Compl. Ex. A § 13.01.) In order to convert, the Bondholders must give effective irrevocable notice to the Trustee. (Id. § 13.02.) However, this right to convert terminates "immediately upon, and simultaneously with, any call by the Issuer for the redemption of the Bonds in accordance with Article 12." (Id. § 13.01.) Any bonds "not validly redeemed by the Issuer pursuant to such redemption shall regain" their conversion rights. (Id.)

The bonds are redeemable at Aristocrat's option on or after May 31, 2004, "on not less than 30 nor more than 60 days' notice to the Holders and not less that 45 days' notice to the Trustee," provided that, prior to the notice, the closing price of Aristocrat's ordinary shares exceeds 140% of the conversion price of the bonds for 20 of 30 trading days. (Id. § 12.02(a).) Aristocrat must "mail notice of such redemption" to the Bondholders. (Id. § 12.04.) Such notice must:

> specify the unpaid principal amount of each Bond held by such Holder to be redeemed, the Redemption Date, the redemption price and the amount of any accrued and unpaid interest payable on the Redemption date, the . . . identifying number of the Bonds and . . . that payment will be made upon presentation and surrender of the Bonds to be redeemed and . . . the Conversion Price then in effect and the date on which the right to convert such Bonds . . . to be redeemed expires.

(Id.) Further, prior to the issuance of notice, "the election of the Issuer to redeem any Bonds shall be evidenced by a Board Resolution." In order to effect redemption, Aristocrat must deposit funds, "[n]o later than 10:00 a.m. at least one Business Day prior to the Redemption date

---

[3] "A$" stands for Australian dollar currency.

specified in the notice of redemption[,] . . . sufficient to redeem on the Redemption Date all of the Bonds so called for redemption." (Id.) If the deposit is over-funded "because of the conversion of such Bonds as provided in" article 12, the surplus "shall after such conversion be repaid to the Issuer by the Trustee." (Id. § 13.10.)

The scrivener's error skewed the stock-price trigger for Aristocrat's right to redeem the bonds. As written into the Indenture, Aristocrat's right had not been triggered as of the parties' submissions on this motion. However, as corrected, Aristocrat's right materialized on November 22, 2004. Realizing the error, Aristocrat contacted the Trustee to correct it. The Trustee refused to correct the error because Aristocrat insisted the correction would allow it immediately to terminate Bondholders' right to convert their bonds to stock. All parties agree that the exchange rate is a scrivener's error and should be the converse of that written.

On December 20, 2004, plaintiff attempted to give notice of redemption and call the bonds for redemption. Plaintiff sent a communique to the Bondholders titled "Notice of Redemption" and stating:

> [t]he Issuer has elected to call for the redemption of all outstanding Bonds, such redemption to occur on the date that is 45 days after the date that the correction of the Exchange Rate to A$1.00=US$.5140 (such date, the "Redemption Date"). This redemption is made at the option of the Issuer under Article 12 of the Indenture.

(Memorandum of Law in Support of Defendant Trustee's Motion for Judgment on the Pleadings ("Tr.'s Mem.") Ex. A.) The notice identified the unpaid principal amount as US$130,000,000, and stated the Bondholders would receive 100% of the principal plus interest. (Id.) Further, the Bondholders were put on notice that "[p]ursuant to Section 13.01 of the Indenture, the Conversion Rights terminate immediately upon, and simultaneously with, the call by the Issuer for the redemption of the Bonds. Accordingly the Conversion Rights have terminated as of the

date hereof." (Id.) This notice was faxed and mailed to the Trustee and the Bondholders. The next day, Aristocrat also made a media announcement that it had called the bonds for redemption.

Also on December 20, 2004, Aristocrat instigated the instant suit against the Trustee, seeking declaratory judgment that Aristocrat's redemption right came into being on November 22, 2004, Aristocrat called for redemption on December 20, 2004, terminating the Bondholders' right to convert and requiring the Trustee to redeem the bonds. This Court allowed the Bondholders to intervene as of right as defendants on March 30, 2005. By stipulation dated March 9, 2005, the parties agreed that plaintiff need not answer nor conduct discovery regarding the Bondholders' contingent counter-claims until this Court renders its decision on this motion.

## DISCUSSION

I. Motion on the Pleadings Standard

Disposition of a litigation on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters Inc., 842 F.2d 639, 642 (2d Cir. 1988). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6). . . accept[ing] the allegations contained in the complaint as true, and draw[ing] all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). When analyzing a 12(c) motion, the Court considers "the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings." Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (Leisure,

7

J.) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)). A court should dispose of the claims on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1994). The Second Circuit reviews a district court's judgment on the pleadings *de novo*. Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004).

II.  Scrivener's Error

All parties agree that the exchange rate in the Indenture resulted from a scrivener's error and should be the converse of that printed. Where it is shown by clear and convincing evidence that both "parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent," the court should reform the contract to conform with the parties' intent. See Healy v. Rich Prods. Corp, 98 F.2d 68, 73 (2d Cir. 1992); Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank, 850 F. Supp. 1199, 1225 (S.D.N.Y. 1994) ("A court may reform or rescind an agreement, where it finds . . . mutual mistake.") (quotation omitted); Nash v. Kornblum, 12 N.Y.2d 42, 46, 186 N.E.2d 551, 553 (1962).[4] Parol evidence is admissible to correct a mutual mistake. Investors Ins. Co. of Am. v. Dorinco Reinsurance Co., 917 F.2d 100, 105 (2d Cir. 1990). Also, when enforcing the contract, reformation is retroactive to the creation of the contract as it reflects the parties' intentions when entering into the contract. See Aramony v. United Way of Am., 28 F. Supp. 2d 147, 168 (S.D.N.Y. 1998) (noting that, in the case of a scrivener-like error, "courts typically enforce the parties' agreement or understanding . . . 'if the actual intention of the parties can be and is determined'") (quoting 1, 3 Arthur Linton Corbin, Corbin on Contracts §§ 95, 608 (1960)), rev'd

---

[4]  The Indenture, the parties' briefs, and the Court's diversity jurisdiction all urge the application of New York contract law to the underlying claims. See Compl. Ex. A § 14.06(a); Cap Gemini Ernst & Young, U.S. v. Nackel, 346 F.3d 360, 365-66 (2d Cir. 2003).

8

in part on other grounds, Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140 (2d Cir. 1999). It is clear from the parties' admissions that the scrivener's error is a mutual mistake acknowledged by all involved in the Indenture. Thus, the contract is reformed according to the parties' intentions and the exchange rate is reversed to read "US$0.514 = A$1.00." Aristocrat's right to redeem the bonds materialized on November 22, 2004. Of course, this does not end the Court's analysis as it must consider the consequences of this reformation.

III. Effect of Aristocrat's December 20, 2004 Communication

"Under New York law 'the initial interpretation of a contract is a matter of law for the court to decide.'" Fleet Capital Corp. v. Yamaha Motor Corp., No. 01 Civ. 1047, 2002 U.S. Dist. LEXIS 18115, at *62-63 (S.D.N.Y. Sept. 25, 2002) (quoting Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998)). The Court interprets bond indentures pursuant to contract law. See Met. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990) (applying New York contract law to review the District Court's interpretation of an indenture). So long as there is no reasonable basis for differing meanings of contractual language when viewing the contract as a whole, the contract is unambiguous. See Fleet Capital, 2002 U.S. Dist. LEXIS 18115, at *63. Where unambiguous, courts are to interpret contractual language pursuant to its plain meaning, especially when dealing with "sophisticated, counseled business people negotiating at arm's length." See Vt. Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475, 807 N.E.2d 876, 879 (2004); see also Alexander & Alexander, 136 F.3d at 86 ("If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence."). "Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation. The

court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." Met. Life Ins., 906 F.2d at 889 (quotation and citation omitted).

The Indenture terminates the Bondholders' conversion rights simultaneously with "any call by the Issuer for the redemption of the Bonds." (Compl. Ex. A § 13.01.) Aristocrat claims it "called" the bonds for redemption on December 20, 2004 by issuing several demands for redemption: (1) a public Board resolution; (2) a notice faxed to the Bondholders; (3) the same notice sent to the Trustee with a cover letter; and, (4) a press release stating that Aristocrat has called for redemption of the bonds. Aristocrat presses the Court to accept the noun definition of a "call" – "[a] demand for the presentation of a security (esp[ecially] a bond) for redemption before the maturity date." (Pl.'s Mem. at 12 (citing Black's Law Dictionary (7th ed. 1999).) Through this, Aristocrat asserts that its December 20, 2004 actions evidenced a demand for the bonds and therefore called the bonds, terminating the Bondholders' right to convert. However, under the Indenture, the language "any call by the Issuer for the redemption" plainly requires action to be taken by the Issuer instead of merely describing an object of action. Accordingly, the Court finds that there is no reasonable dispute regarding the use of "call" in the Indenture when viewed in context, and that the verb definition is more appropriate – "[t]o redeem (a bond) before maturity." Black's Law Dictionary (7th ed. 1999). The language is unambiguous. Further, it is clear that redemption requires far more than simply a demand for the bonds; rather, the Indenture describes a multi-step process of redemption, as described below.

Under the Indenture, redemption requires detailed notice, deposit of sufficient funds, and Board resolution. (Compl. Ex. A. § 12.04.) The entire process constitutes calling the bonds,

culminating in payment on the redemption date.[5] (Id. § 12.08.) No bonds can be said to have been redeemed or called prior to their surrender and payment, as the Indenture states that "[o]n presentation and surrender of such Bonds" for which the Issuer has issued notice and deposited sufficient funds, "said Bonds shall be paid and redeemed by the Issuer." (Id.) This paragraph requires the reading that redemption occurs only when the Bonds are surrendered and paid. That conclusion is necessary also because the paragraph provides for the contingency that the bonds might not be redeemed if they are not surrendered on the redemption date: "immediately after such Redemption Date, such Bond will cease to be Outstanding and interest (if any) on such Bond will cease to accrue, *whether or not such Bond is delivered to a Paying Agent*." (Id. (emphasis added).) It is only on "presentation and surrender of such Bonds" that the bonds are "paid and redeemed." (Id.)[6] Thus, because "to call" is the same as "to redeem," the two occur simultaneously and are subject to the same prerequisite steps.

This interpretation comports with other language in the Indenture. First, section 13.10 provides that, if the Issuer deposited funds to pay the principal, interest and premium of the bonds, and those funds were rendered surplussage by the subsequent conversion of bonds, the excess will be returned to Aristocrat. (Compl. Ex. A § 13.01.) Because Aristocrat must deposit funds as part of calling the bonds, it is clear that the Bondholders' conversion right exists after

---

[5] The Court realizes its position goes beyond the Bondholders' interpretation of the Indenture which infers that to call the bonds is to deposit sufficient funds for their redemption. However, the Court finds the Bondholders' interpretation untenable as it could potentially terminate their conversion right on any day prior to the redemption date and without their knowledge. Further the Bondholders' interpretation is not supported by the language of the indenture as outlined below.

[6] The Court notes that the heading of this paragraph "Payment of Bonds Called for Redemption" does not wholly support the Court's interpretation. However, the parties contractually agreed that the Indenture's paragraph headings "are for convenience only and shall not affect the construction" of the Indenture. (Id. § 14.12.) Accordingly, they do not factor into this Court's analysis.

11

the deposit of funds. Any other interpretation would obviate the need for this section because the only time Aristocrat pays the principal, interest and premium on the bonds is when they are redeemed under the Indenture. Second, section 2.11 provides for the payment of interest on the bonds and states that "if such Bond . . . has been called for redemption on a Redemption Date" interest payments are not required. (Id. § 2.11.) Here, this language strongly suggests that calling occurs on a redemption date, when the bonds are scheduled to be surrendered and paid. Similarly, in the tax redemption provision, through which Aristocrat can redeem the bonds if changing tax laws increase Aristocrat's tax liability on the bonds or otherwise affect the bonds' value, the Indenture states that notice to the Bondholders, "shall contain a statement informing Holders that their entitlement to exercise their Conversion Right *shall* terminate immediately pursuant to Section 13.01." (Id. § 12.01 (emphasis added).) It is counterintuitive to think that "shall" refers to an event that has already occurred or is concurrent with the notice. Instead, it seems the termination occurs with the calling of the bonds, as stated in Section 13.01, which requires redemption.

Moreover, if the bondholder does not present the bond on the redemption date, the bondholder's right to interest "and all other rights of the Holder shall terminate (other than the right to receive the relevant redemption price.)." (Id. § 12.08.) This termination would necessarily include the Bondholders' conversion right. It is entirely logical that the Indenture contains this fail-safe provision to protect Aristocrat from the wayward bondholder seeking to retain his or her conversion right by improperly refusing to surrender the bond on the redemption date, thus negating the "any call" conversion right termination clause in section 13.01. If such a tactic is employed, Aristocrat can rest easy knowing that, though the calling process is incomplete and, therefore, the section 13.01 termination remains dormant, the rogue

12

bondholder's right to convert the bond along with all other rights, save that of receiving the redemption price, terminated on the redemption date. Therefore, Aristocrat's rights and obligations are unaffected by the bondholder's action. Aristocrat's right to redeem and ensure that the Bondholders' conversion right ends simultaneously with redemption under article 12 dovetails perfectly with this Court's reading of article 13 that the Bondholders' right to convert exists up until the redemption date. Further, it is clear that sections 12.01, 12.02, and 12.03 describe the types of redemption possible under the Indenture: tax, Issuer-opted or maturity-based, and as mandated by the gaming laws, respectively. Sections 12.04 and 12.08 follow those descriptions by outlining the procedures for redeeming the bonds. Thus, the fail-safe provision terminating the Bondholders' right to convert on the redemption date in section 12.08 applies equally to all three types of redemption.

Thus, Aristocrat has not called the bonds for redemption. It has merely attempted to complete some of the steps required to call the bonds. The Bondholders and the Trustee dispute whether Aristocrat's December 20, 2004 communication constituted effective notice under the Indenture. It is to this contention the Court now turns.

IV.  Validity of Aristocrat's December 20, 2004 Notice

As stated above, a notice of redemption must be given by first class mail to the Bondholders at least 30 days and not more than 60 days prior to the specified redemption date. (Id. § 12.04.) In addition to (1) the redemption date, the notice must specify (2) the unpaid principal owed on each bond to be redeemed, (3) the redemption price, (4) the amount of interest payable on the redemption date, (5) the CUSIP (identifying) number on the bonds, (6) the place of payment, (7) "that payment will be made upon presentation and surrender of the Bonds," (8) the conversion price, (9) "and the date on which the right to convert such Bonds expires." (Id.)

13

Here, the parties dispute whether Aristocrat's notice satisfied the above criteria. Aristocrat claims that it was necessary to clarify the terms of the Indenture based on the Trustee's refusal to accept Aristocrat's reading of the Indenture. Thus, plaintiff claims, it could not specify the redemption date other than to state that "such redemption to occur on the date that is 45 days after the date that the correction of the Exchange rate" is made pursuant to the litigation before this Court. (Pl.'s Mem. Ex. B.) Similarly, the allocation of interest is dependent on the date of this Court's decision. The Bondholders and Trustee contend this position is unacceptable and Aristocrat has failed to abide by the letter of the Indenture; thus, the December 20, 2004 notice is inadequate.

The Court need not reach this sticking point, however, as Aristocrat has not specified the appropriate date on which the conversion right terminated. As determined supra, Discussion Part III., the bonds are not called, and the conversion rights are not terminated until the entire process of redemption is complete. Further, if the process cannot be completed due to the Bondholders' failure to surrender the bonds on the redemption date, their conversion rights are still terminated on that date pursuant to § 12.08. Thus, the appropriate date on which the conversion right terminated is the redemption date. Aristocrat's denotation of the notice date, December 20, 2004, is therefore erroneous and rendered the notice invalid under the Indenture.

V.    <u>Effect of Aristocrat's Failure to Honor the Bondholders' Conversion Notices</u>

In their motion for judgment on the pleadings, the Bondholders assert that they are entitled to ordinary shares of Aristocrat stock and damages for the decrease in price of that stock from February 11, 2005 to today. The Bondholders claim that Aristocrat defaulted on the Indenture by failing to convert the bonds when the Bondholders tendered allegedly valid notices of conversion. Aristocrat claims (1) specific performance is not appropriate, (2) damages are

allowed only on the date of the alleged breach, not continuously up to today, and (3) that the Bondholders' assertion requires disposition of a contested question of fact, thereby rendering it inappropriate for a Rule 12(c) motion. However, the Bondholders' merely seek a declaration regarding their rights under the Indenture. Specifically, the Bondholders wish this Court to declare that § 4.09, stating that "the right of any Bondholder . . . to receive the Ordinary Shares when such Ordinary Shares are required to be delivered following conversion of a Bond held by such Holder . . . shall not be impaired or adversely affected without such Holder's consent," is a "right of election for Holders who have filed valid notices of conversion." (Compl. Ex. A § 4.09; Reply Memorandum of Law in Further Support of the Intervening Defendants' Motion for Judgment on the Pleadings ("BHs' Reply") at 7.) Further the Bondholders assert that damages will not compensate them for their losses incurred due to Aristocrat's alleged breach because solely awarding damages would preference bondholders who have not converted over those involved in the instant suit, in contravention of the Indenture.

The Bondholders concede that "Aristocrat has denied that valid notices were filed, and an order directing delivery [of the shares] could not be entered until that factual dispute has been resolved." (BHs' Reply at 8.) The Court sees no distinction, for Rule 12(c) purposes, between the factual question arising from whether specific performance is appropriate and that arising from whether damages are appropriate. At the least, both require a determination of whether the Bondholders presented valid notices of conversion. Further, the Court notes that this topic was given short shrift by the parties; they devoted only six pages of their fifty-five page submission to the issue. Breach of contract is a complicated, fact-based analysis, more so when a party alleges that equity requires specific performance and continuing damages. Therefore, the Court defers its decision on what remedies are due the Bondholders based on Aristocrat's erroneous

interpretation of the Indenture until the facts are sufficiently culled and this issue receives the full benefit of the parties' legal analysis.

VI. <u>Indemnification</u>

The Trustee seeks declaratory judgment that section 5.06 of the Indenture mandates that the Trustee be duly compensated for its expenses incurred in defending the instant litigation. Plaintiff argues that the Trustee has not reasonably documented its expenses as required by the Indenture, and that the Trustee acted in bad faith when it conditioned reformation of the scrivener's error on Aristocrat's waiver of its immediate call right. The Trustee acknowledges that it has not fully quantified its expenses as they are on-going.

First, the Court finds Aristocrat's briefly pleaded allegation that the Trustee was required to submit expenses prior to filing for declaratory judgment meritless. The Indenture makes no such claim, stating clearly that:

> the Issuer agrees to pay *or reimburse* the Trustee . . . upon its request for all reasonably documented expenses, disbursements and advances properly incurred or made by or on behalf of it in accordance with any of the provisions of this Indenture (including . . .of its counsel . . .) except . . . from its gross negligence, bad faith or willful misconduct.

(Compl. Ex. § 5.06 (emphasis added).) It is undeniable that reimbursement contemplates past expense and there is no mention of when the request must be made. Further, Aristocrat's bases for alleging bad faith are rendered moot by this Court's determination that the Indenture did not contain an "immediate call right." The Trustee has steadfastly maintained that it did not object to the reformation of the Indenture to correct the scrivener's error. Rather, the Trustee refused to accept an erroneous interpretation of the Indenture which would deprive its charges, the Bondholders, of a highly valuable benefit of their bargain.

However, the Court finds that the Trustee has not reasonably documented its expenses as of yet. The Trustee only appends a conclusory invoice of $25,042 in expenses incurred from extraordinary services as Trustee in connection with the Trustee's "time spent on the administrative and other work caused by: (1) Aristocrat's redemption notice, (2) the conversion notices, & (3) the litigation, not including attorneys' fees & expenses." (Tr.'s Mem. Ex. C.) The invoice is not itemized nor is it clear what "other work" entails. This perfunctory invoice is insufficient even under the low bar of reasonable documentation. Thus, the Court cannot find as a matter of law that the Trustee is owed compensation under section 5.06 until the terms therein, including the provision of reasonable documentation, are satisfied.

## CONCLUSION

For the foregoing reasons, plaintiff Aristocrat's motion on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is DENIED. Defendant Trustee's motion on the pleadings is GRANTED IN PART and DENIED IN PART. Intervening defendant Bondholders' motion on the pleadings is GRANTED IN PART and DENIED IN PART. Plaintiff's claims are DISMISSED. Defendant Trustee's claim for indemnification survives. Intervening defendant Bondholders' claim for specific performance and damages survives. Plaintiff is ORDERED to respond to the intervening defendant Bondholders' counter-claims, stayed pending the disposition of this motion, WITHIN 20 DAYS of this Opinion and Order. The parties are ORDERED TO APPEAR before this Court for a pre-trial conference on August 31, 2005 at 10:30 a.m., in Courtroom 18b at 500 Pearl Street, New York, New York.

SO ORDERED.
New York, New York

August 12, 2005

*[signature]*
U.S.D.J.

Copies of this Opinion and Order have been sent to:

Evan A. Davis, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Antonia M. Apps, Esq.
Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC
1615 M Street N.W., Suite 400
Washington, D.C. 20036

Charles A. Gilman, Esq.
Cahill Gordon & Reinder LLP
80 Pine Street
New York, NY 10005