UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTOCRAT LEISURE LIMITED,

        Plaintiff,

 - against -

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee,

        Defendant,

KBC FINANCIAL PRODUCTS UK LTD,
KBC ALPHA MASTER FUND SPC KBC
CONVERTIBLE OPPORTUNITIES
FUND, KBC ALPHA MASTER FUND
SPC KBC MULTI-STRATEGY
ARBITRAGE FUND, AMARANTH LLC,
ALEXANDRA GLOBAL MASTER FUND,
LTD., UFJ INTERNATIONAL PLC,
DEEPHAVEN INTERNATIONAL
CONVERTIBLE TRADING, LTD.,
CALAMOS ADVISORS LLC ON BEHALF
OF CALAMOS GROWTH AND INCOME
FUND, CALAMOS GLOBAL GROWTH
AND INCOME FUND AND CERTAIN
OTHER INSTITUTIONAL CLIENTS,
CQS CONVERTIBLE AND
QUANTITATIVE STRATEGIES
MASTER FUND LTD., D.E. SHAW
INVESTMENT GROUP, LLC, D.E.
SHAW VALENCE INTERNATIONAL,
INC, QVT FUND LP, LEHMAN
BORTHERS INTERNATIONAL
(EUROPE), DEUTSCHE BANK AG,
LONDON BRANCH,

        Intervening Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/16/09

**OPINION AND ORDER**

04 Civ. 10014 (PKL)

**APPEARANCES**

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
Mark C. Hansen, Esq.
Michael K. Kellogg, Esq.
Antonia M. Apps, Esq.
Bertrand-Marc Allen, Esq.
Robert A. Klink, Esq.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

Attorneys for the Plaintiff


CLEARY GOTTLIEB STEEN & HAMILTON L.L.P
Evan A. Davis, Esq.
One Liberty Plaza
New York, New York 10006

Attorneys for the Intervening Defendants, other than Deutsche
Bank AG, London Branch


DAVIS POLK & WARDWELL
James P. Rouhandeh, Esq.
James I. McClammy, Esq.
450 Lexington Avenue
New York, New York 10017

Attorneys for the Intervening Defendant, Deutsche Bank AG,
London Branch

**LEISURE, District Judge:**

For the reasons set forth below, the Intervening
Defendants' motion to quash trial subpoenas is GRANTED IN PART
and DENIED IN PART.

**BACKGROUND**

The Court assumes familiarity with the facts and
allegations as stated in the Court's many prior decisions in
this action. See Aristocrat Leisure Ltd. v. Deutsche Bank Trust
Co. Ams., 618 F. Supp. 2d 280 (S.D.N.Y. 2009) (Leisure, J.);
Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04
Civ. 10014, 2007 U.S. Dist. LEXIS 9521 (S.D.N.Y. Feb. 5, 2007)
(Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust
Co. Ams., No. 04 Civ. 10014, 2007 U.S. Dist. LEXIS 9517
(S.D.N.Y. Feb. 5, 2007) (Leisure, J.); Aristocrat Leisure Ltd.
v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2006 U.S.
Dist. LEXIS 80055 (S.D.N.Y. Nov. 2, 2006) (Leisure, J.);
Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04
Civ. 10014, 2006 U.S. Dist. LEXIS 34709 (S.D.N.Y. May 30, 2006)
(Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust
Co. Ams., 426 F. Supp. 2d 125 (S.D.N.Y. 2005) (Leisure, J.);
Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04
Civ. 10014, 2005 U.S. Dist. LEXIS 16788 (S.D.N.Y. Aug. 12, 2005)
(Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust
Co. Ams., No. 04 Civ. 10014, 2005 U.S. Dist. LEXIS 5378

3

(S.D.N.Y. Mar. 30, 2005) (Leisure, J.).   Accordingly, the Court only discusses those facts that are essential to the resolution of the instant motion.

The case arises out of Aristocrat's issuance of US$130,000,000 of 5% convertible bonds, due May 2006, to qualified institutional buyers.   Aristocrat filed this suit as a declaratory action on December 20, 2004, alleging that but for a scrivener's error, Aristocrat would have been able to redeem the bonds on November 22, 2004, its notice and call would have been effective on December 20, 2004, and Aristocrat would have terminated the Bondholders'[1] right to convert.   In its August 12, 2005, Opinion and Order, this Court found that Aristocrat's December 20, 2004, communication did not constitute an effective call for redemption, and the Bondholders' conversion rights were not terminated.   See Aristocrat Leisure, 2005 U.S. Dist. LEXIS 16788, at *8-9, 12, *20-22.

Subsequently, by Opinion and Order dated May 30, 2006, this Court found that because the Bondholders presented evidence that they submitted conversion notices and tendered their interests in the bonds, demonstrating that they exercised their rights to

---

[1] Unless otherwise noted, the term "Bondholders" is used in this Opinion and Order to refer to all of the bondholders that intervened in this action.   The term "Consequential Damages Parties" is used to refer to the bondholders pursuing consequential damages claims at the trial commencing October 5, 2009.   The term "Non-Consequential Damages Parties" is used to refer to the bondholders not pursuing consequential damages at trial.   The term "Indenture" refers to the May 31, 2001 indenture agreement, pursuant to which the convertible bonds were issued.

convert under the Indenture, and because Aristocrat had not issued or delivered any shares to any Bondholders, Aristocrat is in breach of the Indenture with respect to each Bondholder who submitted evidence to the Court.  See Aristocrat Leisure, 2006 U.S. Dist. LEXIS 34709, at *22-23; see also Aristocrat Leisure, 2007 U.S. Dist. LEXIS 9521, at *6-7 (holding that Aristocrat is in breach with respect to Deutsche Bank AG, London Branch); Aristocrat Leisure, 2006 U.S. Dist. LEXIS 80055, at *10-11 (holding that Aristocrat is in breach with respect to QVT Fund, LP).  The Court, however, denied the Bondholders' request for specific performance, holding that monetary damages were sufficient, and refusing to order Aristocrat to issue shares to the Bondholders.  See Aristocrat Leisure, 2006 U.S. Dist. LEXIS 34709, at *47.

In this Court's most recent decision, resolving the parties' motions for summary judgment on damages for Aristocrat's breach, the Court reiterated its denial of specific performance.  Aristocrat Leisure, 618 F. Supp. 2d at 299.  The Court determined that the Bondholders are entitled to general damages for Aristocrat's breach as of the date that each Bondholder completed the conversion process as defined in the Indenture.  Id. at 293-94.  The Court also addressed the availability of consequential damages for those Bondholders who hedged their positions in the convertible bonds.  See id. at

303-06. Specifically, the Bondholders, other than Calamos
Advisors LLC, hedged their long position in the convertible
bonds by borrowing stock and selling that borrowed stock,
thereby holding a short position in the stock.  As detailed in
the summary judgment record, it is common for a convertible
bondholder who engages in short selling to deliver the shares it
receives on conversion to close out its short positions. Id. at
288.  Thus, in the instant case, when Aristocrat refused to
convert the bonds to shares, these Bondholders were left with
open short positions, which only could be closed if the
Bondholders bought Aristocrat shares in the open market.  The
Court concluded, as a matter of law, that the Bondholders are
entitled to consequential damages, in the amount of the
difference between the value of the shares on the date of breach
and the value of the shares when they were purchased in the open
market.  Id. at 302.  However, the Court was unable to determine
as a matter of law the reasonableness of the Bondholders'
decisions to hold open their short positions after Aristocrat's
breach.  Id. at 309.

Of the Bondholders who could have received consequential
damages based on this Court's April 2009 Opinion and Order, only
(i) Deephaven International Convertible Trading, Ltd., (ii) UFJ
International Limited, (iii) Alexandra Group Master Fund, Ltd.,
and (iv) a group of affiliated bondholders, KBC Financial

Products UK Ltd. and the KBC Alternative Investment Management Limited's Funds (collectively referred to as the "Consequential Damages Parties") are proceeding to trial. (See Intervening Defs.' & Countercl. Pls.' Mem. of Law in Supp. of Mot. to Quash Trial Subpoenas Issued by Pl. & Countercl. Def. ("Int. Defs.' Mem.") 1, 5.)

In anticipation of trial, Aristocrat has served subpoenas on the Bondholder entities and the Bondholders' current and former employees, including Consequential Damages Parties and Non-Consequential Damages Parties.  The Bondholders now seek to quash Aristocrat's trial subpoenas on the grounds that (i) the subpoenas impose an undue burden, (ii) the subpoenas go beyond the reach of Federal Rule of Civil Procedure 45, and (iii) Aristocrat failed to serve the subpoenas properly.  By contrast, Aristocrat contends that (i) the subpoenas seek testimony that is highly probative to the reasonableness of the Consequential Damages Parties' conduct, (ii) the subpoenas are directed at parties, officers of parties, and high-ranking employees of parties, and are therefore in compliance with Rule 45, and (iii) the subpoenas were served properly.  The parties also have submitted motions in limine.  The Court rules on some of the in limine issues in this Opinion and Order and reserves ruling on the remainder for a subsequent decision.

## DISCUSSION

The Court first addresses the scope of issues for trial, including the order of proof and relevance.  Next, the Court considers the Bondholders' undue burden argument.  The Court then turns to the jurisdictional reach of the subpoenas under Federal Rule of Civil Procedure 45.  Finally, the Court determines whether service of the subpoenas was proper.

### I. Scope of Issues for Trial

To resolve the instant motion and determine the admissibility of the proposed testimony and documentary[2] evidence Aristocrat seeks to proffer at trial, the Court first must remind the parties of this Court's previous holdings on the issues of consequential damages and mitigation of damages, thereby clarifying the issues that remain to be tried.

---

[2] In addition to listing testimony topics, Aristocrat's subpoenas seek documentary evidence.  The Bondholders correctly argue that Aristocrat may not seek document production after the discovery cut-off.  See McKay v. Triborough Bridge and Tunnel Auth., No. 05 Civ. 8936, 2007 WL 3275918, at *2 (S.D.N.Y. Nov. 5, 2007) ("[P]arties may not issue subpoenas 'as a means to engage in discovery after the discovery deadline has passed.'") (citing Dodson v. CBS Broadcasting, Inc., No. 02 Civ. 9270, 2005 WL 3177723 (S.D.N.Y. Nov. 29, 2005)).  Aristocrat's argument that these new documents would be used as trial exhibits is of no moment since Aristocrat's document requests are broad and, in many instances, call for "all documents" relating to several issues (Int. Defs.' Mem. Ex. E.)  See Dodson, 2005 WL 3177723, at *3 (recognizing that "Rule 45 can be used to subpoena documents to be introduced at trial as trial exhibits" but rejecting plaintiff's argument that documents sought after the discovery cut-off were for use as trial exhibits where "the scope of the request is broad and clearly is designed for discovery, not last-minute trial needs (such as for originals of documents where copies were produced in discovery and there is a need for the original at trial)").

This Court already has determined that the costs that the Bondholders incurred in covering their short positions "are directly traceable to Aristocrat's failure to deliver shares." Aristocrat Leisure, 618 F. Supp. 2d at 306.  In other words, the question of whether the Bondholders are entitled to recover the costs of closing out their short positions already has been resolved in the affirmative.[3]  What the Court was unable to resolve, and what now must be resolved by the trier of fact, is whether, as a factual matter, a Bondholder failed to mitigate these damages.  As detailed in this Court's prior decision, an injured party cannot recover damages for a loss that could have been avoided.  Id. at 306.  Moreover, in determining if the Consequential Damages Parties properly mitigated damages, the inquiry, as this Court previously explained, is whether each of the Consequential Damages Parties' actions were reasonable, not whether there were other reasonable courses of action.  Id. at 306-07.  Accordingly, it will be the role of the trier of fact

---

[3] The Bondholders move in limine to limit the scope of trial issues to the sole issue of whether the Consequential Damages Parties failed to mitigate their damages.  (Mem. of Law in Supp. of Mot. In Limine of Intervening Defs. & Countercl. Pls. ("Int. Defs.' In Limine Mem.") 3.)  Aristocrat argues that the issues for trial are not limited solely to mitigation and, instead, also include causation, foreseeability, and assumption of risk.  (Aristocrat's Opp'n to Mot. In Limine of Intervening Defs. & Countercl. Pls. ("Aristocrat's Opp'n to Int. Defs.' In Limine Mem.") 2-6.)  Because the issues Aristocrat seeks to try already have been decided as a matter of law in the Court's Opinion and Order dated April 27, 2009, the Bondholders' in limine request to limit the scope of trial to whether the Consequential Damages Parties mitigated their damages is granted.  The Court, however, reserves ruling on the Bondholders' more specific in limine requests to exclude evidence not pertaining to mitigation for a subsequent decision or for trial.

to determine whether a Consequential Damages Party acted
unreasonably, such that its consequential damages are limited
pursuant to the mitigation of damages doctrine, or reasonably,
such that it is entitled to the total difference between the
value of the shares on the date of breach and the value of the
shares as purchased in the market.  At all times it will be
Aristocrat's burden to prove that the Consequential Damages
Parties' actions were unreasonable.  Id.   Because Aristocrat
bears the burden of proof, it will present its case-in-chief
first.[4]

### A. Order of Proof

The Bondholders, while acknowledging that Aristocrat bears
the burden of proof and should present its case-in-chief first,
ask the Court to use its discretion under Federal Rule of
Evidence 611(a) to modify the traditional order of proof and
allow the Bondholders to conduct a direct examination of the
Consequential Damages Parties that the Bondholders have
designated as witnesses before Aristocrat examines them in its
case-in-chief.  (Int. Defs.' In Limine Mem. 18.)   The

---

[4] The parties dispute which side should present its case-in-chief first.
(Compare Int. Defs.' In Limine Mem. 18, with Aristocrat's Opp'n to Int.
Defs.' In Limine Mem. 5, 20-23, and Aristocrat's Corrected Opp'n to Mot. of
Intervening Defs. & Countercl. Pls. to Quash Trial Subpoenas Issued by Pl. &
Countercl. Def. ("Aristocrat's Opp'n to Int. Defs.' Mem.") 12 n.9.)   The
Court clarifies any ambiguity and holds that Aristocrat bears the burden of
proving that the Consequential Damages Parties failed to mitigate their
damages and, therefore, shall present its case-in-chief first.

Bondholders, however, do not present any controlling law that would compel the Court to deviate from the standard order of proof in the form the Bondholders request.  In fact, the Court has not found any relevant caselaw supporting the Bondholders' request.  In Hudson v. International Business Machines Corp., 620 F.2d 351 (2d Cir. 1980), an employment discrimination action, the plaintiff called three witnesses during his case-in-chief who also were designated as defense witnesses.  Id. at 355.  In order to expedite proceedings, the trial court allowed the defense to present much of its own case-in-chief during its cross-examination of these witnesses.  Id.  The Second Circuit upheld this order of proof, noting that the plaintiff himself had chosen it, "presumably for his own strategic purposes," and that any hint of prejudice was averted by offering plaintiff the opportunity to present rebuttal testimony at the close of defendants' case.  Id.  Unlike the Bondholders' request, however, the plaintiff in Hudson still was afforded the opportunity to conduct an initial direct examination of the witnesses in question.

Modifying the standard order of proof would exacerbate jury confusion and prejudice Aristocrat's priority at trial as the party bearing the burden of proof.  These concerns outweigh any inconvenience to witnesses who would need to travel to testify for Aristocrat's case-in-chief and remain for the Bondholders'

case-in-chief if the Bondholders sought to re-call the witnesses.  Furthermore, as in Hudson, to expedite matters, the Bondholders may present much of their case-in-chief by examining[5] their own designated witnesses after they have been called and examined by Aristocrat.  See id.  Or, alternatively, the Bondholders may postpone cross-examination and re-call the witnesses in their case-in-chief.  See Argentine v. United Steelworkers of Am., AFL-CIO, 287 F.3d 476, 486 (6th Cir. 2002) (affirming trial court's decision to delay cross-examination of a witness called during the plaintiff's case-in-chief until the defense's own case-in-chief where the witness was "essentially a [defense] witness" and thus the questioning would be a cross-examination in form only).

For the foregoing reasons, the Bondholders' motion in limine to modify the order of proof at trial is denied.


B. Relevance

Having clarified the scope of the trial, the Court now assesses whether the proposed testimony is relevant under

---

[5] If Aristocrat calls in its case-in-chief the witnesses that Bondholders designated as their own and Bondholders proceed to cross-examine them following Aristocrat's direct, the Court reserves its right to prohibit Aristocrat from asking leading questions.  See Fed. R. Evid. 611(c) ("Ordinarily leading questions should be permitted on cross-examination.") (emphasis added).  "The purpose of the qualification 'ordinarily' is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent (savoring more of re-direct) . . . ."  Fed. R. Evid. 611 advisory committee's note.

Federal Rule of Evidence 401 and, even if relevant, whether such evidence is admissible pursuant to Federal Rule of Evidence 403.

"As a general matter, all relevant evidence is admissible under the Federal Rules of Evidence unless specifically excluded." United States v. Perez, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). Evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. Fed. R. Evid. 401. Since the "standard of relevance established by the Federal Rules of Evidence is not high[,]" United States v. Southland Corp., 760 F.2d 1366, 1375 (2d Cir. 1985) (Friendly, J.) (citation omitted), "[p]rotection against undue liberality in the admission of evidence . . . is furnished by Rule 403." United States v. Mangan, 575 F.2d 32, 45 (2d Cir. 1978). Rule 403 provides for the exclusion of relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; see United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1193 (2d Cir. 1989) (citing Fed. R. Evid. 403); United States v. Carter, 801 F.2d 78, 83 (2d Cir. 1986) (same). "Administration of

both [Rules 401 and 403] is left primarily to the sound discretion of the trial judge." Mangan, 575 F.2d at 45.

The Bondholders argue that evidence regarding the hedging activities of Non-Consequential Damages Parties is not relevant as it does not shed light on the conduct of the Consequential Damages Parties and, even if relevant, is prejudicial under Federal Rule of Evidence 403. (Int. Defs.' Mem. 8-10.) Aristocrat responds that the jury cannot evaluate the reasonableness of Consequential Damages Parties' hedging actions "in a vacuum" and that evidence of Non-Consequential Damages Parties' hedging strategies is probative of the reasonableness of the Consequential Damages Parties' hedging strategies and necessary for the jury to evaluate objectively the Consequential Damages Parties' actions. (Aristocrat's Opp'n to Int. Defs.' Mem. 6-7.)

A factfinder may look to the actions of similarly situated parties where it is unclear what actions are commercially reasonable. See Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc., No. 96 Civ. 7874, 2002 WL 826956, at *5 (S.D.N.Y. May 1, 2002) (holding that "it is only by looking at how similarly situated entities acted in [a] similar situation that a factfinder may determine what was commercially reasonable"); Hotel Employees & Restaurant Employees Int'l Union v. Raroc, Inc., No. 99 Civ. 3078, 2000 WL 204537, at *2 (S.D.N.Y. Feb. 22, 2000) (citing, in the context of a labor case, 26 C.F.R. § 639.99(b)(2)

for the proposition that an "employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market"). Reasonableness cannot be judged solely by looking at the subjective actions of the Consequential Damages Parties. See Rost v. Pfizer, Inc., 248 F.R.D. 417, 419-20 (S.D.N.Y. 2008) (holding that "[b]ecause the actions an employee takes to find work themselves cannot be evidence of their own reasonableness," looking solely at the employee plaintiff's efforts to find work "would convert the mitigation test into a subjective one"). Here, where "there is no clear, established market practice applicable to this particular set of circumstances," and "each Bondholder adhered to a different course of action with respect to its short positions," Aristocrat Leisure, 618 F. Supp. 2d at 307, evidence relating to the Non-Consequential Damages Parties' hedging strategies is particularly probative of the reasonableness of the Consequential Damages Parties' actions. Therefore, because evidence of Non-Consequential Damages Parties' hedging strategies[6] has some "tendency" to make the reasonableness of Consequential Damages Parties' hedging actions "more probable or less probable than it would be without the evidence," such evidence is relevant.

---

[6] Because Calamos Advisors LLC ("Calamos") did not hedge its short position in Aristocrat, neither Calamos nor its Chief Investment Officer, Nick Calamos, may be subpoenaed to testify at trial. Therefore, the Bondholders' motion to quash trial testimony subpoenas seeking Calamos's and Nick Calamos's testimony is granted.

Fed. R. Evid. 401.  To the extent that the Non-Consequential

Damages Parties seek to proffer evidence not relating to their

hedging strategies, that testimony is not relevant and will be

cut-off by the Court.

The Court now turns to whether testimony regarding Non-

Consequential Damages Parties' hedging strategies is prejudicial

under Federal Rule of Evidence 403.  As discussed above, the

threshold to exclude relevant evidence on Rule 403 grounds is

high.  While the Court appreciates the Bondholders' concern

regarding the risk that the jury may be misled to decide the case

based on the actions of the Non-Consequential Damages Parties

rather than the Consequential Damages Parties, the Court believes,

at this time, that the danger of unfair prejudice, confusion of

the issues, or misleading the jury does not substantially outweigh

the probative value of the evidence and can be alleviated by way

of a limiting jury instruction.  See Starter Corp. v. Converse,

Inc., 170 F.3d 286, 294 (2d Cir. 1999) (holding that the

probative value of contested evidence "far outweighed any danger

of unfair prejudice" where "any potential unfair prejudice was

cured" by a limiting jury instruction); United States v. Vereen,

No. 3:99CR 279, 2000 WL 490740, at *3 (D. Conn. Mar. 2, 2000)

(holding, in a criminal context, that the probative value of

evidence of other crimes is not substantially outweighed by danger

of unfair prejudice where the court will give a limiting jury

charge).  The Bondholders also argue that allowing some of the

Non-Consequential Damages Parties to testify necessarily requires

all of the Non-Consequential Damages Parties to testify.  (Int.

Defs.' Mem. 9.)   While the Court acknowledges this concern, the

extent of the Non-Consequential Damages Parties' testimony will be

limited by the prohibition on cumulative evidence.  Fed. R. Evid.

403; see also Granite Partners, 2002 WL 826956, at *5

(acknowledging the possibility that admitting evidence of actions

taken by similarly situated brokers "will require the admission of

'how 12 different brokers conducted 12 different liquidations,'"

and may "confuse the jury and prolong the trial" but admitting it

nonetheless because "evidence of how other dealers acted is

required for this cause of action").  Because it is difficult to

determine whether testimony will be cumulative or irrelevant

before it is actually proffered, the Bondholders have not

persuaded the Court, at this early stage, that the probative value

of the testimony of the subpoenaed Bondholders is substantially

outweighed by "undue delay, waste of time, or needless

presentation of cumulative evidence."  Fed. R. Evid. 403; see also

In re County of Orange, 208 B.R. 117, 121 (Bankr. S.D.N.Y. 1997)

(rejecting movant's argument that deposition testimony of movant's

counsel will be cumulative and irrelevant where previous discovery

indicated counsel's involvement in the negotiations at issue).

For the foregoing reasons, the Bondholders' motion to quash the trial testimony subpoenas on grounds of irrelevance is denied.

## II. Undue Burden Analysis

The Bondholders seek to quash trial subpoenas issued by Aristocrat on the ground that the subpoenas impose an undue burden under Federal Rule of Civil Procedure 45(c)(3)(A)(iv). (Int. Defs.' Mem. 8.)  In assessing whether Aristocrat's trial subpoenas impose an undue burden on the Bondholders, the Court assumes, solely for this analysis, that the subpoenas were served properly.

Rule 45 mandates this Court to quash or modify a subpoena that "subjects a person to undue burden."  Fed. R. Civ. Proc. 45(c)(3)(A)(iv).  The movant Bondholders carry the burden of proving that a subpoena imposes an undue burden on a witness. See Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996).  "Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance."   Kirschner v. Klemons, No. 99 Civ. 4828, 2005 WL 1214330, at *3 (S.D.N.Y. May 19, 2005) (citation omitted).

This Court exercises its discretion in determining whether undue burden is present. See In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (stating that motions to quash a subpoena are "entrusted to the sound discretion of the district court") (citation and internal quotation marks omitted); Concord, 169 F.R.D. at 49 ("The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court."). The Court engages in a balancing test to determine whether undue burden exists. See Concord, 169 F.R.D. at 49; 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008) ("Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena. The determination of a subpoena's reasonableness requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source. It obviously is a highly case specific inquiry and entails an exercise of judicial discretion."). "Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." Kirschner, 2005 WL 1214330, at *2.

The Bondholders' main support for their undue burden argument is that the testimony of Non-Consequential Damages Parties is not relevant, or, alternatively, is relevant but prejudicial under Federal Rule of Evidence 403. (Int. Defs.' Mem. 8-10.) Relevance, however, is not the controlling factor in an undue burden analysis. See Concord, 169 F.R.D. at 49 (listing relevance as one of several factors a court may consider in determining whether to quash a subpoena). In any event, as discussed above, evidence of Non-Consequential Damages Parties' hedging strategies is probative of the reasonableness of Consequential Damages Parties' strategies and not substantially outweighed by the risks enumerated in Federal Rule of Evidence 403. See Am. High-Income Trust v. AlliedSignal Inc., No. 02 Civ. 2506, 2006 WL 3545432, at *4 (S.D.N.Y. Dec. 8, 2006) (denying motion to quash deposition subpoena because movant failed to show that deponent lacks relevant information or that his deposition would constitute an undue burden).

Furthermore, the Bondholders do not submit affidavits from the subpoenaed entities and individuals describing the burden that the trial subpoenas impose. See Kirschner, 2005 WL 1214330, at *3 (holding that it is not an undue burden for an 88-year-old non-party witness with mobility problems to testify at trial where the party seeking to quash the subpoena provided "no affidavit or specific information regarding the manner and

20

extent of the burden"); In re County of Orange, 208 B.R. at 121
(denying motion to quash deposition subpoena where movant has
"not met its burden either as a party or a nonparty because [it]
failed to offer evidence of why the depositions would be an
undue burden"); see also 9 James Wm. Moore et al., Moore's
Federal Practice ¶ 45.51[4] (3d ed. 2009) ("A party objecting to
a subpoena on the ground of undue burden generally must present
an affidavit or other evidentiary proof of the time or expense
involved in responding to the discovery request."). The
Bondholders are sophisticated parties with the financial means
to travel, particularly where nearly all of the foreign
subpoenaed Bondholders live in London and can take a flight to
one of three airports in the Court's vicinity. In cases where
movants faced more significant challenges to appearing for
trial, courts in this Circuit have declined to quash trial
subpoenas. See, e.g., Kirschner, 2005 WL 1214330, at *3; James
v. Runyon, No. 91 Civ. 246, 1993 WL 173468, at *2 (N.D.N.Y. May
17, 1993) (holding that movant non-party witness is not
subjected to undue burden by testifying at trial because the
Court's interest in having all available information germane to
the controversy outweighs the temporary interruption in the
movant's ongoing substance abuse treatment); accord In re
McCorhill Publ'g, Inc., 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988)
(granting motion for a protective order precluding pre-trial

deposition where the deposition "would constitute a direct threat to [deponent's] life and could cause heart failure").

In further support of their undue burden argument, the Bondholders contend that live trial testimony is unwarranted where witnesses already have given sworn deposition testimony that was videotaped and can be played at trial. (Int. Defs.' Mem. 10.) The preference for live testimony is well established in this Circuit. See Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939) (Hand, L., J.) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand."); BlackRock Inc. v. Schroders PLC, No. 07 Civ. 3183, 2007 WL 1573933, at *9 (S.D.N.Y. May 30, 2007) (noting that although the matter could be tried without live testimony from unwilling witnesses, "so proceeding would be contrary to the policy of this Circuit") (citing DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002)). The Federal Rules of Evidence permit use of deposition testimony where a witness is unavailable for trial. Fed. R. Evid. 804(b) ("Testimony given as a witness . . . in a deposition" is not excluded under the hearsay rule where "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."). Thus, parties who have been served properly under Rule 45 cannot demand that their depositions be

used in lieu of live trial testimony.  Where certain Bondholders are not subject to service of subpoenas under Rule 45 or where Bondholders are subject to service but service defects have not been cured, the videotaped deposition testimony of such Bondholders would be admissible, subject to other objections. See Johnsen, Fretty & Co., LLC v. Lands South, LLC, 526 F. Supp. 2d 307 (D. Conn. 2007) (allowing testimony on videotape for nonparties who cannot be subpoenaed); Distefano v. Carozzi N. Am., No. 98 Civ. 7137, 2002 U.S. Dist. LEXIS 23042, at *5 (E.D.N.Y. Nov. 27, 2002) (noting that a case may be tried on depositions where trial is fixed "'at a point where litigants cannot compel personal attendance'") (citing Gulf Oil v. Gilbert, 330 U.S. 501, 511, 67 S. Ct. 839, 844, 91 L. Ed. 1055, 1064 (1947)).

For the foregoing reasons, the Bondholders' motion to quash the trial subpoenas on undue burden grounds is denied.

## III. Federal Rule of Civil Procedure 45 Analysis

The Bondholders ask the Court to quash Aristocrat's trial testimony subpoenas on the grounds that they go beyond the geographic reach of Federal Rule of Civil Procedure 45.  To determine whether Aristocrat's subpoenas violate Rule 45, the Court will first analyze the scope of Rule 45's 100-mile provision.  The Court then will determine how the 100-mile rule

affects the subpoenas served on officers of parties, employees
that are not officers of parties, and corporate representatives
of parties.

### A. The 100-Mile Rule

Federal Rule of Civil Procedure 45(c)(3)(A)(ii) provides
that a court must quash or modify a subpoena that "requires a
person who is neither a party nor a party's officer to travel
more than 100 miles from where that person resides, is employed,
or regularly transacts business."  This Rule is not read in
isolation but rather in conjunction with Rule 45(b)(2), which
provides that "[s]ubject to Rule 45(c)(3)(A)(ii), a subpoena may
be served at any place . . . outside [the] district [of the
issuing court] but within 100 miles of the place specified for
the deposition, hearing, trial, production, or inspection."  A
challenge arises when interpreting these Rules in the context of
parties, party officers, and party non-officer-employees who
reside and are served outside New York or the 100-mile radius of
the Court.

The Bondholders contend that Rule 45(c)(3)(A)(ii) requires
the Court to quash the subpoenas directed at a person either
named in the subpoena or designated as an appropriate corporate
representative who is not an officer of a party and does not
live or work in New York or within 100 miles of the Court.

24

(Int. Defs.' Mem. 11-12; Intervening Defs.' & Countercl. Pls.'
Reply Mem. of Law in Supp. of Mot. to Quash Trial Subpoenas
Issued by Pl. and Countercl. Def. ("Int. Defs.' Reply Mem.") 8-
10.)   The Bondholders further argue that, pursuant to Rule
45(b)(2), the Court lacks the power to require any individual,
regardless of his title, who resides more than 100 miles from
the Court to attend trial.   (See id.)   Aristocrat responds by
asserting the following: (1) the geographic limitations on the
Court's subpoena power do not apply to subpoenas directed at
parties, officers of parties, and high-ranking employees of
parties; (2) the Court has the power to compel the Bondholders
to produce corporate representatives located beyond the 100-mile
range of the Court; and (3) the hyper-technical reading of
Federal Rule of Civil Procedure 45 proposed by the Bondholders
would render the Rule meaningless. (Aristocrat's Opp'n to Int.
Defs.' Mem. 10-12; Aristocrat's Letter 9/1/09.)   Whether the
subpoena calls for the testimony of an officer of a party, a
non-officer-employee of a party, or a corporate representative
of a party will determine whether that witness's subpoena must
be quashed under Rules 45(b) and (c).

## B. Subpoenas Served on Officers of Parties

A majority of courts to interpret the interplay between
Rule 45(b)(2)(B) and Rule 45(c)(3)(A)(ii) have found that Rule

45(c)(3)(A)(ii) permits service of a subpoena on a party or a
party's officer beyond the 100-mile range that otherwise would
serve as a bar.  See In re Methyl Tertiary Butyl Ether ("MTBE")
Prods. Liab. Litig., MDL No. 1358, 2009 WL 1840882, at *1
(S.D.N.Y. June 24, 2009); Younis v. Am. Univ. in Cairo, 30 F.
Supp. 2d 390, 395 n.44 (S.D.N.Y. 1998) (recognizing that
officers of a foreign defendant in the action could be compelled
to appear and testify in New York); In re Ames Dep't Stores,
Inc., No. 01-42217, 2004 WL 1661983, at *1 (Bankr. S.D.N.Y. June
25, 2009) (holding that the majority of courts to address this
issue have decided that the 100-mile rule is inapplicable to
parties and party officers); Am. Fed'n of Gov't Employees, Local
922 v. Ashcroft, 354 F. Supp. 2d 909, 915 (E.D. Ark. 2003)
(same).

   The Court agrees with the majority position that corporate
officers of a party may be subpoenaed and required to travel
more than 100 miles from where they reside, are employed, or
regularly transact business.  The Bondholders have failed to
draw a distinction between individual Bondholders that are
participating in the upcoming trial (the Consequential Damages
Parties) and Bondholders that are not participating in the trial
(the Non-Consequential Damages Parties) for purposes of deciding
who is a party under Rule 45 (c)(3)(A)(ii).  Having chosen to
avail themselves of the many benefits of this forum, it is

disingenuous for the Bondholders and their corporate officers to reverse course now and contend that they are beyond the reach of this Court's subpoena power.  This view finds support in the purpose behind the Rule's geographic limitation, which "gives nonparty deponents protection from expending time and money to comply with a subpoena" and is intended to "protect [nonparty] witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest."  In re Edelman, 295 F.3d 171, 178 (2d Cir. 2002).  Even the Bondholders that are not proceeding to trial have more than "little or no interest" in the ultimate resolution of this litigation.  Accordingly, subject to other deficiencies addressed below, the Court declines to quash the subpoenas served on corporate officers of the Bondholders.

### C. Subpoenas Served on Employees That Are Not Officers of Parties

The Bondholders also seek to invoke the geographic limitations of Rule 45 to quash subpoenas served on individual employees of the Bondholders that are not party officers and subpoenas served on the Bondholder entities seeking testimony from the entities' corporate representatives.  Aristocrat and the Bondholders disagree as to whether these individuals fall within the scope of the geographic limitations of Rule 45.  (See

27

Int. Defs.' Mem. 11-12; Aristocrat's Opp'n to Int. Defs.' Mem. 10-11.)

The Court agrees with the Bondholders that the subpoenas served on individual employees who are not corporate officers, and who reside outside the geographic scope of Rule 45, must be quashed.  Aristocrat relies on Judge Mukasey's opinion in In re Gulf Oil/Cities Service Tender Offer Litigation for the proposition that a witness that will appear at trial for a defendant cannot refuse to appear during the plaintiff's case-in-chief; but in that case, unlike here, the witness was a party to the dispute.  776 F. Supp. 838, 839 (S.D.N.Y. 1991).  Judge Mukasey's opinion did not address the geographic scope of a court's subpoena power over non-parties, and this Court declines to classify non-officer employees as "parties" for purposes of evading the clear language of Rule 45(c)(3)(A)(ii).  See St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co. of Am., No. 91 Civ. 6151, 1993 WL 267347, at *1-2 (S.D.N.Y. July 12, 1993) (quashing subpoena seeking attendance of a party's non-officer employee for failing to comply with the 100-mile restriction of Rule 45).  The Court, therefore, holds that Aristocrat is bound by the limitations of Rule 45, which provides an exception to the 100-mile rule solely for parties and officers of parties. See M'Baye v. N.J. Sports Prod., Inc., 246 F.R.D. 205, 207 (S.D.N.Y. 2007).  While Aristocrat will not be able to bring in

28

non-officer employees (Messrs. Calvy, Matthew, Nunn, and Patterson) to testify live in its case-in-chief, Aristocrat may offer videotaped depositions where witnesses are "unavailable," see supra, Part II, or cross-examine such witnesses should they be called in the Bondholders' case-in-chief.

For the foregoing reasons, the Bondholders' motion to quash the trial testimony subpoenas of Messrs. Calvy, Matthews, Nunn, and Patterson is granted.

### D. Subpoenas Seeking Testimony of Corporate Representatives

A different outcome is necessitated, however, for the subpoenas served on the corporate parties themselves. The Bondholders' objection to these subpoenas was raised only in vague terms in their moving papers and not fully addressed until reply briefing and subsequent letters to the Court.[7]  Regardless of whether this argument was raised in a timely manner (see infra n.9) there is no basis under the 100-mile rule to quash the subpoenas seeking testimony of the Bondholders' corporate representatives.

The Bondholders, as parties to this action, affirmatively have taken advantage of the benefits of this forum, and the Court has the power to require these parties to produce

---

[7] Bondholders submitted letters to the Court dated August 19, 2009, August 25, 2009, and August 28, 2009.  Aristocrat submitted letters to the Court dated August 21, 2009 and September 1, 2009.  The Court has docketed these five letters and incorporates them into the Bondholders' motion to quash.

corporate representatives to testify on their behalf at trial.
See In re Methyl, 2009 WL 1840882, at *1 (permitting plaintiff
to serve subpoenas on defendant and officers of defendant
seeking testimony of corporate representatives beyond the 100-
mile radius of the court).  The fact that the corporate entities
subpoenaed by Aristocrat are parties to this action
distinguishes the present circumstances from the caselaw relied
on by the Bondholders where a subpoena was found invalid when
served on a non-party corporate entity beyond the 100-mile
radius of the Court.  See, e.g., GMA Accessories, Inc. v.
Eminent, Inc., No. 07 Civ. 3219, 2007 U.S. Dist. LEXIS 91755, at
*3-5 (S.D.N.Y. Dec. 11, 2007).  Contrary to arguments raised by
the Bondholders, the corporate representative subpoenas do not
require non-corporate-officers to travel more than 100 miles to
attend trial.  (See Int. Defs.' Reply Mem. 9-10.)  Rather, the
corporate entities in receipt of these subpoenas may choose a
competent person to testify on behalf of the corporation.  (See
Aristocrat's Letter 9/1/09 (the subpoenas seek the testimony of
"[a]ny person competent to testify on behalf of the [corporate
parties]")).  Whether the appropriate person is an officer of
the corporation is within the discretion of the corporate party
and not a requirement of the subpoena itself.  If the
Bondholders' position were correct, parties responding to trial
subpoenas would have an incentive to avoid the subpoena simply

by producing employees that are not corporate officers as their party representatives.  This type of evasive behavior by parties that have affirmatively chosen to pursue their claims in this forum is clearly not what Rule 45 was intended to promote.

For the foregoing reasons, the Bondholders' motion to quash trial subpoenas of corporate representatives is denied.


## IV. Service of Subpoenas

The Bondholders argue that the trial subpoenas should be quashed because Aristocrat has failed to serve them properly. Specifically, the Bondholders contend that service via e-mail on the Bondholders' counsel, Cleary Gottlieb Steen & Hamilton LLP and Davis Polk & Wardwell, was ineffective since counsel declined to accept service of the subpoenas on behalf of any witness.  (Int. Defs.' Mem. 14.)  Following briefing on the Bondholders' motion to quash, Aristocrat submitted two letters to the Court detailing its subsequent efforts to serve the individual witnesses and corporations, while the Bondholders submitted three letters to the Court objecting to the corrected service.  To determine whether the subpoenas were served properly, the court must analyze the issue in four parts:  (A) service of individuals in the United States; (B) service of individuals in foreign countries; (C) service of corporations in

31

the United States; and (D) service of corporations in foreign
countries.

### A. Service of Individuals in the United States

"Serving a subpoena requires delivering a copy to the named
person . . . ." Fed. R. Civ. Proc. 45(b)(1). The purpose of
requiring delivery to a named person is to "ensure receipt, so
that notice will be provided to the recipient, and enforcement
of the subpoena will be consistent with the requirements of due
process." Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC,
Nos. 06 Civ. 7764 & 06 Civ. 13516, 2008 WL 3833238, at *2
(S.D.N.Y. Aug. 15, 2008) (internal quotation marks omitted)
(citing Moore et al., supra, ¶ 45.21). Unlike service of most
litigation papers, service on an individual's lawyer will not
suffice. See Khachikian v. BASF Corp., No. 91-CV-573, 1994 WL
86702, at *1-2 (N.D.N.Y. Mar. 4, 1994) (quashing subpoena that
plaintiff mailed to the defendant corporation's attorney rather
than to the corporation itself, which was the party named in the
subpoena); In re Deposition Subpoena Directed to Smith, 126
F.R.D. 461, 462 (E.D.N.Y. 1989) (McLaughlin, J.) (denying
plaintiff's motion to serve a deposition subpoena and a subpoena
duces tecum on a non-party witness by delivering the subpoenas
to the witness's attorney where Rule 45 required service on the
person named in the subpoena; noting that Rule 45 should be

32

reevaluated to permit service of subpoenas other than by personal delivery); Harrison v. Prather, 404 F.2d 267, 273 (5th Cir. 1968) (holding that service of subpoena on plaintiff's counsel, as opposed to the plaintiff himself, renders such service a nullity); see also Wright & Miller, supra, § 2454 ("[U]nlike service of most litigation papers after the summons and complaint, service on a person's lawyer will not suffice."). Nonetheless, more recent cases in the Second Circuit interpret Rule 45's personal service requirement liberally where the type of service used "was calculated to provide timely actual notice." CareCore, 2008 WL 3833238, at *2 (noting that "nothing in the word 'delivering' [in Rule 45(b)(1)] indicates personal service, and a personal service requirement can be unduly restrictive"); see also Cartier v. Geneve Collections, Inc., No. CV 2007-0201, 2008 WL 552855, at *1 (E.D.N.Y. Feb. 27, 2008) (agreeing that "'delivery' under Rule 45 means a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness, rather than personal service"); Cordius Trust v. Kummerfeld, No. 99 Civ. 3200, 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000) (holding that because "alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the 'delivery' requirement of Rule 45 will be met").

Aristocrat first sought to serve individual witnesses via e-mail to the Bondholders' counsel. Based on the traditional view, such service was ineffective as the subpoenas were not delivered to the individuals whose testimony the subpoenas sought. The Court need not reach the issue of whether service on counsel was sufficient under the more liberal view because Aristocrat has remedied any service defect by effecting personal service within 100 miles of the Court on Tracy Fu and Vadim Iosilevich (See Decl. of Rebecca A. Beynon in Supp. of Aristocrat's Opp'n to Int. Defs.' Mem. ¶¶ 3-4; Aristocrat's Opp'n to Int. Defs.' Mem. Ex. C.) Aristocrat also has made several unsuccessful attempts to personally serve Nicholas M. Maounis within 100 miles of this Court. (See Decl. of Rebecca A. Beynon in Supp. of Aristocrat's Opp'n to Int. Defs.' Mem. ¶ 5.) Because it has attempted personal service several times, Aristocrat now may use substitute service to serve Mr. Maounis. See CareCore, 2008 WL 3833238, at *3.

For the foregoing reasons, the Bondholders' motion to quash the testimony subpoenas of Messrs. Fu, Iosilevich, and Maounis on grounds of improper service is denied.


### B. Service of Individuals in Foreign Countries

Separate and apart from the geographic limits of Rule 45(b)(2)(B) and 45(c)(3)(A)(ii), the Bondholders seek to quash

34

the subpoenas calling for testimony of two foreign nationals (Messrs. Carter and Hintze)[8] living abroad because the subpoenas were not served in compliance with the requirements of Rule 45(b)(3) for service of subpoenas in a foreign country.  Rule 45(b)(3) provides that "28 U.S.C. § 1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country."  Section 1783 requires a showing that the "particular testimony . . . is necessary in the interest of justice, and [in civil cases] that it is not possible to obtain [the witnesses's] testimony in admissible form without his personal appearance."  28 U.S.C. § 1783.

Aristocrat does not dispute that it has failed to comply with the requirement of 28 U.S.C. § 1783.  To the contrary, Aristocrat argues that 28 U.S.C. § 1783 is inapplicable on its face to Messrs. Carter and Hintze because they are not, as Rule 45(b)(3) directs, United States nationals or residents living in a foreign country, but rather are foreign nationals living in foreign countries.  (See Aristocrat's Opp'n to Int. Defs.' Mem. 15-16; Aristocrat's Letter 9/1/09.)

---

[8] For the reasons previously stated in Part III.C, the subpoena served on Mr. Calvy  is quashed for failing to comply with the requirements of Rule 45(c)(3)(A)(ii).  The Court therefore refrains from addressing the subpoena directed at Mr. Calvy a second time, but because Mr. Calvy is a foreign citizen who lives abroad and was served with his subpoena abroad, the same analysis that applies to the subpoenas served on Messrs. Carter and Hintze also serves as a basis to quash the subpoena served on Mr. Calvy.

It is unclear what, if any, provision of the Federal Rules Aristocrat believes controls the service of subpoenas directed at foreign nationals living abroad.  If Aristocrat were correct, and 45(b)(3) was not relevant to the service of subpoenas on foreign nationals living abroad, it strains credulity to believe that this apparent silence in the Rules would result in the unlimited ability of litigants to serve trial subpoenas on any foreign national anywhere in the world, especially considering the more stringent limitations on serving United States nationals living aboard.  In any event, courts faced with similar circumstances have found that foreign nationals living abroad are not subject to subpoena service outside the United States.  See United States v. Taveras, No. 04-CR-156, 2006 WL 1875339, at *15 (E.D.N.Y. July 5, 2006) ("[T]he federal district court's power of subpoena does not extend to non-citizens beyond the nation's borders."); United States v. Korolkov, 870 F. Supp. 60, 65 (S.D.N.Y. 1994) (relying on 28 U.S.C. § 1783 and finding that "[a]s [the potential witnesses] are not citizens of the United States and do not reside here, they are not amenable to United States subpoenas"); Wright & Miller, supra, § 2462 ("Aliens who are inhabitants of a foreign country cannot be compelled to respond to a subpoena, as they owe no allegiance to the United States.").

The same result would be reached if the Court did have the power to subpoena foreign nationals living outside the United States pursuant to 28 U.S.C. 1783.  The individuals in question already have been deposed in this case.  Aristocrat therefore cannot meet the requirement of 28 U.S.C. § 1783 that it "is not possible to obtain [the witnesses'] testimony in admissible form without his personal appearance."  28 U.S.C. § 1783(a).

For the foregoing reasons, Aristocrat's motion to quash the trial subpoenas served on Messrs. Carter and Hintze is granted.

### C. Service of Corporations in the United States

Federal Rule of Civil Procedure 45 does not specify what constitutes personal service on a corporation in the United States or in a foreign country.  To fill this gap, courts in this Circuit rely on the service of process requirements on corporations set out in Federal Rule of Civil Procedure 4.  See In re Grand Jury Subpoenas Issued to Thirteen Corps., 775 F.2d 43, 46 (2d Cir. 1985) (applying Fed. R. Civ. Proc. 4 to determine whether subpoenas were served properly on two corporations); Khachikian v. BASF Corp., No. 91-CV-573, 1994 WL 86702, at *1 (N.D.N.Y. Mar. 4, 1994) ("In situations such as the present one in which personal service must be made on a corporation . . . Rule 45(b) provides no guidance as to what constitutes such service.  Therefore, courts have looked to Rule

37

4(d)(3) of the Federal Rules of Civil Procedure."); In re

Pappas, 214 B.R. 84, 85 (Bankr. D. Conn. 1997) ("Because Rule 45

does not specify what constitutes personal service upon a

corporation, courts look to Fed. R. Civ. P. 4 for guidance.");

Moore et al., supra, ¶ 45.21[1] ("When a subpoena is to be

served on a corporation . . . or other artificial entity, the

concept of 'personal' service is somewhat obscured, because the

entity is not a 'person' on whom service can be directly made.

Accordingly, service of a subpoena on an artificial entity may

be made by using the analogous method for service of process on

that entity under Rule 4.").

Under the guidance of Rule 4, service on a corporation

within the United States may be effected "by delivering a copy

of the [subpoena] to an officer, a managing or general agent, or

any other agent authorized by appointment or by law to receive

service of process and—if the agent is one authorized by statute

and that statute so requires—by also mailing a copy of each to

the defendant."  Fed. R. Civ. Proc. 4(h)(1)(B).  Pursuant to

this Rule, the Second Circuit has permitted subpoenas to be

served on a corporation through an agent so long as the

corporation receives adequate notice.  See In re Grand Jury

Subpoenas, 775 F.2d at 46 ("A corporation may be served through

an officer or agent explicitly or implicitly authorized to

accept service of process."); Ultradent Prods., Inc. v. Hayman,

38

No. M8-85, 2002 WL 31119425, at *3 (S.D.N.Y. Sept. 24, 2002)
(permitting service of a subpoena to a corporation upon the New
York Secretary of State because it was "reasonably measured to
insure the actual receipt of the subpoena by the corporation").

Aristocrat served subpoenas on the Bondholder corporate
entities via e-mail to their counsel.  The Bondholders argue
that such service was ineffective since it did not constitute
personal service and counsel did not agree to accept service of
any trial subpoenas on behalf of any individual or entity.[9]
(Int. Defs.' Mem. 14.)  Following briefing on the instant motion
to quash, the parties submitted letters notifying the Court that
Aristocrat had re-served trial subpoenas on the domestic and
foreign corporate entity Bondholders in response to the
Bondholders' argument that service on corporate entities via e-
mail to counsel was ineffective.[10]  (See Bondholders' Letter
8/19/09; Aristocrat's Letter 8/21/09.)  According to the
parties' letters, Aristocrat now has served several of the

_____

[9] Aristocrat contends that the Bondholders waived their ineffective service on
corporate entities argument because it was not raised until the Bondholders'
reply.  (See Aristocrat's Opp'n to Int. Defs.' Mem. 15; Int. Defs.' Reply
Mem. 6; Aristocrat's Letter 8/21/09; Bondholders' Letter 8/25/09.)  A movant
may not raise new arguments in a reply submission.  United States v. Yousef,
327 F.3d 56, 115 (2d Cir. 2002); City of Livonia Employees' Ret. Sys. v.
Essner, No. 07 Civ. 10329, 2009 WL 1809984, at *3 n.1 (S.D.N.Y. June 25,
2009).  Nonetheless, because the parties submitted five subsequent letters to
the court briefing this issue and each side had an opportunity to respond,
the court has docketed these letters and will treat them as part of the
Bondholders' motion to quash.

[10] The Court notes in passing that Aristocrat re-served the subpoenas without
prejudice to its initial position that service via e-mail to counsel was
proper.  (Aristocrat's Letters 8/21/09 & 9/1/09.)

corporate Bondholder entities "with offices and/or agents in the
New York Metropolitan region (Amaranth, LLC, Alexandra Global
Master Fund, Ltd., Deephaven International Convertible Trading,
Inc., D.E. Shaw Investment Group, LLC, D.E. Shaw Valence
International, Inc., KBC Alternative Investment Management Ltd.,
and KBC Financial Products UK Ltd., and QVT Fund, LP)" via
certified mail sent to the Bondholder entity or its corporate
affiliate.  (Aristocrat's Letter 8/21/09.)   The Bondholders do
not contest corrected service via certified mail on Alexandra
Global Master Fund, Ltd., D.E. Shaw Investment Group, LLC, and
D.E. Shaw Valence International, Inc., as these entities are
located in New York or within 100 miles of the Court.
(Bondholders' Letter 8/28/09.)  But the Bondholders still
contest corrected service via certified mail on several of the
Bondholders' domestic affiliates.  (Id.)  Because Aristocrat has
submitted sufficient evidence in support of the existence of an
explicit or implicit agency relationship between the foreign
corporations and their domestic affiliates (see Aristocrat's
Letters 8/21/09 Attachs. A-C & 9/1/09 Attachs. A-D), the
Bondholders wrongly oppose service on the domestic affiliates.
See Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A., 347
F.3d 448, 469 (2d Cir. 2003) (holding "that in light of the
evidence, it strains credulity to believe that the two
[corporations] have no corporate connection, as defendants

40

assert, and thus service on one did not effect service on the other"); In re Grand Jury Subpoenas, 775 F.2d at 46 ("A corporation may be served through an officer or agent explicitly or implicitly authorized to accept service of process."); Boryk v. deHavilland Aircraft Co., 341 F.2d 666, 668-69 (2d Cir. 1965) (finding service on the president of a subsidiary adequate and noting that the label attached to the agent and the agent's lack of explicit authority to accept service was not determinative); In re Elec. & Musical Indus., Ltd., Middlesex, Eng., 155 F. Supp. 892, 893 (S.D.N.Y. 1957) (holding that a corporation could be served by delivering a copy of the subpoena to an officer or managing or general agent of the corporation, and that the agent could be an individual, a partnership, or another corporation); accord Wright & Miller, supra, § 2454 ("Service on an agent of a corporation is sufficient . . . since it is not the agent who is to respond to the subpoena but the corporation, and the agent in that situation is merely the vehicle for reaching the corporation.").

For the foregoing reasons, the Bondholders' motion to quash the trial subpoenas served via certified mail to several of the Bondholders' corporate affiliates (Alexandra Investment Management LLC, Amaranth Advisors, LLC, CQS (UK) LLP, Deephaven Capital Management LLC, KBC Financial Products USA Inc.) on grounds of improper service is denied.

41

### D. Service of Corporations in Foreign Countries

Because Rule 45 does not explain what constitutes service on a corporation in a foreign country, consistent with the analysis above, the Court looks to Rule 4(h)(2) for guidance. Rule 4(h)(2) directs the Court to look to Rule 4(f) for further instruction. Rule 4(f) states that, "[u]nless federal law provides otherwise, [a corporation] . . . may be served at a place not within any judicial district of the United States[] by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. Proc. 4(f). Aristocrat's attempt to serve the foreign corporations by international registered mail triggers the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 10(a), Nov. 15, 1965, 20 U.S.T. 361, 363, 658 U.N.T.S. 163, 169 [hereinafter Hague Convention]. The Hague Convention allows signatories to serve persons abroad directly through the mail. Id. ("Provided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad."). The subpoenas Aristocrat served via international registered mail appear to have been sent to the United Kingdom.

Both the United States and the United Kingdom are signatories to the Hague Convention and neither country has objected to direct service through postal channels.  See id. 20 U.S.T. at 368, 369, 373, 658 U.N.T.S. at 182, 184, 193, 195; Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir. 1986); IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503, 511-12 (D. Conn. Sept. 29, 2005).

The Second Circuit has permitted service on corporations via international registered mail pursuant to the Hague Convention where the party effecting service submits sufficient proof of service.  See Ackermann, 788 F.2d at 838, 839 (holding that service of process by international registered mail from Germany to the United States satisfied the Hague Convention and constitutional due process); G.A. Modefine, S.A. v. Burlington Coat Factory Warehouse Corp., 164 F.R.D. 24, 25 (S.D.N.Y. 1995) (upholding service of summons and complaint on an Italian entity and an Italian national through international registered mail as consistent with the Hague Convention and granting default judgment against the Italian national where plaintiff filed sufficient proof of service, but not entering default judgment against the Italian entity where proof of service was insufficient).

In the instant case, Aristocrat served trial testimony subpoenas on three foreign Bondholder entities (Deutsche Bank AG, London Branch, Lehman Brothers International (Europe), and

43

UFJ International Limited) via international registered mail.
Aristocrat, however, did not submit proof of service, as favored
in this Circuit.  See G.A. Modefine, 164 F.R.D. at 25.  The
Court, therefore, directs Aristocrat to submit such proof of
service within 10 days of the date of this Opinion and Order.

**CONCLUSION**

     For the foregoing reasons, the Bondholders' motion to quash
Aristocrat's trial subpoenas with respect to the subpoenas
naming Calamos Advisors LLC and Messrs. Calamos, Calvy, Carter,
Hintze, Matthews, Nunn, and Patterson is GRANTED.  The
Bondholders' motion in limine to limit the scope of trial to
mitigation of consequential damages is GRANTED.  The
Bondholders' motion in limine to modify the order of proof at
trial is DENIED.  Aristocrat is ordered to submit proof of
service of trial subpoenas by international registered mail
within 10 days of the date of this Opinion and Order.  The
parties are reminded that they are to appear for trial in
courtroom 18B on October 5, 2009, at 9:30 a.m.

**SO ORDERED.**
**New York, New York**

September **16**, 2009

Peter K. Leisure

U.S.D.J.

Copies of this Opinion and Order have been e-mailed to:

Mark C. Hansen, Esq.
Kellogg, Huber, Hansen, Todd, Evans, & Figel, PLLC.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

Charles S. Gilman, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005

Evan A. Davis, Esq.
Cleary Gottlieb Steen & Hamilton L.L.P
One Liberty Plaza
New York, New York 10006

James I. McClammy, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017