UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9|28|09

ARISTOCRAT LEISURE LIMITED,

        Plaintiff,

 - against -

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee,

        Defendant,

KBC FINANCIAL PRODUCTS UK LTD,
KBC ALPHA MASTER FUND SPC KBC
CONVERTIBLE OPPORTUNITIES
FUND, KBC ALPHA MASTER FUND
SPC KBC MULTI-STRATEGY
ARBITRAGE FUND, AMARANTH LLC,
ALEXANDRA GLOBAL MASTER FUND,
LTD., UFJ INTERNATIONAL PLC,
DEEPHAVEN INTERNATIONAL
CONVERTIBLE TRADING, LTD.,
CALAMOS ADVISORS LLC ON BEHALF
OF CALAMOS GROWTH AND INCOME
FUND, CALAMOS GLOBAL GROWTH
AND INCOME FUND AND CERTAIN
OTHER INSTITUTIONAL CLIENTS,
CQS CONVERTIBLE AND
QUANTITATIVE STRATEGIES
MASTER FUND LTD., D.E. SHAW
INVESTMENT GROUP, LLC, D.E.
SHAW VALENCE INTERNATIONAL,
INC, QVT FUND LP, LEHMAN
BORTHERS INTERNATIONAL
(EUROPE), DEUTSCHE BANK AG,
LONDON BRANCH,

        Intervening Defendants.

**OPINION AND ORDER**

04 Civ. 10014  (PKL)

## APPEARANCES

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
Mark C. Hansen, Esq.
Michael K. Kellogg, Esq.
Antonia M. Apps, Esq.
Bertrand-Marc Allen, Esq.
Robert A. Klink, Esq.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

Attorneys for the Plaintiff


CLEARY GOTTLIEB STEEN & HAMILTON L.L.P
Evan A. Davis, Esq.
One Liberty Plaza
New York, New York 10006

Attorneys for the Intervening Defendants, other than Deutsche
Bank AG, London Branch


DAVIS POLK & WARDWELL
James P. Rouhandeh, Esq.
James I. McClammy, Esq.
450 Lexington Avenue
New York, New York 10017

Attorneys for the Intervening Defendant, Deutsche Bank AG,
London Branch

**LEISURE, District Judge:**

Both the Plaintiff, Aristocrat Leisure Ltd. ("Aristocrat"),
and the Intervening Defendant Bondholders ("Bondholders"), move
in limine to preclude certain evidence at trial commencing
October 5, 2009.  The Bondholders bring one motion in limine,
containing ten requests, and Aristocrat brings five motions in
limine.  For the reasons set forth below, the Bondholders' in
limine requests to preclude certain evidence at trial are
GRANTED IN PART and DENIED IN PART and Aristocrat's motions in
limine to preclude certain evidence at trial are GRANTED IN PART
and DENIED IN PART.

## BACKGROUND

The Court assumes familiarity with the facts and
allegations as stated in the Court's many prior decisions in
this action.  See Aristocrat Leisure Ltd. v. Deutsche Bank Trust
Co. Ams., No. 04 Civ. 10014, 2009 WL 2972518, at *1 (S.D.N.Y.
Sept. 16, 2009) (Leisure, J.) (citing previous decisions in this
case).  Accordingly, the Court only discusses those facts that
are essential to the resolution of the instant motions.

The case arises out of Aristocrat's issuance of
US$130,000,000 of 5% convertible bonds, due May 2006, to
qualified institutional buyers.  Aristocrat filed this suit as a
declaratory action on December 20, 2004, alleging that but for a

3

scrivener's error, Aristocrat would have been able to redeem the bonds on November 22, 2004, its notice and call would have been effective on December 20, 2004, and Aristocrat would have terminated the Bondholders'[1] right to convert. In its August 12, 2005, Opinion and Order, this Court found that Aristocrat's December 20, 2004, communication did not constitute an effective call for redemption, and the Bondholders' conversion rights were not terminated. See Aristocrat Leisure, No. 04 Civ. 10014, 2005 U.S. Dist. LEXIS 16788, at *8-9, *12, *20-22 (S.D.N.Y. Aug. 12, 2005) (Leisure, J.). Subsequently, by Opinion and Order dated May 30, 2006, this Court found that Aristocrat is in breach of the Indenture with respect to each Bondholder who submitted evidence to the Court but denied the Bondholders' request for specific performance, holding that monetary damages were sufficient. See Aristocrat Leisure, No. 04 Civ. 10014, 2006 U.S. Dist. LEXIS 34709, at *22-23, *47 (S.D.N.Y. May 30, 2006) (Leisure, J.).

On April 27, 2009, the Court resolved the parties' motions for summary judgment on damages for Aristocrat's breach, holding that the Bondholders are entitled to general damages for

---

[1] Unless otherwise noted, the term "Bondholders" is used in this Opinion and Order to refer to all of the bondholders that intervened in this action. The term "Consequential Damages Parties" is used to refer to the bondholders pursuing consequential damages claims at the trial commencing October 5, 2009. The term "Non-Consequential Damages Parties" is used to refer to the bondholders not pursuing consequential damages at trial. The term "Indenture" refers to the May 31, 2001, indenture agreement, pursuant to which the convertible bonds were issued.

4

Aristocrat's breach as of the date that each Bondholder
completed the conversion process as defined in the Indenture and
that the Bondholders who hedged their positions in the
convertible bonds were entitled to consequential damages as a
matter of law in the amount of the difference between the value
of the shares on the date of breach and the value of the shares
when they were purchased in the open market.  Aristocrat
Leisure, 618 F. Supp. 2d 280, 293-94, 299, 302-06 (S.D.N.Y.
2009).  The Court was unable to determine as a matter of law the
reasonableness of the Bondholders' decisions to hold open their
short positions after Aristocrat's breach and left this sole
issue to be determined by a trier of fact.  Id. at 309.
Accordingly, trial will commence October 5, 2009.  The Court's
most recent decision granted in part and denied in part the
Bondholders' motion to quash trial subpoenas issued by
Aristocrat.  See Aristocrat Leisure, 2009 WL 2972518, at *1.

Of the Bondholders who could have received consequential
damages based on this Court's April 27, 2009, Opinion and Order,
only (i) Alexandra Global Master Fund, Ltd., (ii) Deephaven
International Convertible Trading, Ltd., (iii) UFJ International
Limited, and (iv) a group of affiliated bondholders, KBC
Financial Products UK Ltd., KBC Hong Kong Limited, and KBC
Alternative Investment Management Limited's Funds (collectively
referred to as the "Consequential Damages Parties") are

proceeding to trial. (See Mem. of Law in Supp. of Mot. In Limine of Intervening Defs. & Countercl. Pls. ("Int. Defs.' In Limine Mem.") 1.)

## DISCUSSION

"'A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine.'" Highland Capital Mgt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (Leisure, J.) (citing Luce v. United States, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463, 83 L. Ed. 2d 443, 447 (1984)). Indeed, "[t]he purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (citations and internal quotation marks omitted); see also Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., No. 01 Civ. 3796, 2005 WL 1026515, at *3 (S.D.N.Y. May 2, 2005) (Leisure, J.). "The court's ruling regarding a motion in limine is 'subject to change when the case unfolds.'" Commerce, 2005 WL 1026515, at *4 (quoting Luce, 469 U.S. at 41, 105 S. Ct. at 463, 83 L. Ed. 2d at 447). Accordingly, this Opinion and Order constitutes a preliminary determination subject to change.

The Court first addresses the Bondholders' in limine requests and then addresses Aristocrat's motions in limine.

## I. The Bondholders' In Limine Motions

### A. Limits to the Scope of Trial

The Bondholders request that the Court limit the scope of trial to the sole issue of whether each Consequential Damages Party "act[ed] unreasonably in maintaining [its] hedge position[] after Aristocrat's breach, and, if so, at what point did [its] actions become unreasonable." (Int. Defs.' In Limine Mem. 3.) Aristocrat argues that the issues for trial are not limited solely to mitigation and, instead, also include causation, foreseeability, and assumption of risk. (See Aristocrat's Opp'n to Mot. In Limine of Intervening Defs. & Countercl. Pls. ("Aristocrat's Opp'n to Int. Defs.' In Limine Mem.") 2-6.)

The Court already has addressed the scope of trial in its Opinion and Order dated September 16, 2009. See Aristocrat Leisure, 2009 WL 2972518, at *3. The Court reiterates its position and holds that, pursuant to its April 27, 2009, Opinion and Order entitling the Bondholders to consequential damages as a matter of law, Aristocrat Leisure, 618 F. Supp. 2d at 302, the scope of this trial is limited to the sole issue of whether the Consequential Damages Parties unreasonably failed to mitigate

their consequential damages after Aristocrat's breach, id. at 306; see also Aristocrat Leisure, 2009 WL 2972518, at *3 n.3.

For the foregoing reasons, and for the reasons set forth in this Court's September 16, 2009, Opinion and Order, the Bondholders' in limine request to limit the scope of trial to the sole issue of whether the Consequential Damages Parties unreasonably failed to mitigate their consequential damages is granted.

## B. Relevance of Testimony of Non-Consequential Damages Parties

The Bondholders ask the Court to preclude the testimony of witnesses from the following categories:   (1) Non-Consequential Damages Parties who maintained a hedge position in Aristocrat stock; (2) Non-Consequential Damages Parties who did not maintain a hedge position Aristocrat stock; and (3) non-parties who maintained a hedge position in Aristocrat stock.   The Court addresses each category in turn.

### 1. Witnesses of Non-Consequential Damages Parties Who Maintained a Hedge Position

The Bondholders argue that Aristocrat should be precluded from introducing testimony of Non-Consequential Damages Parties—regardless of whether they maintained a hedge position—because their testimony will not shed light on "the conduct of the

[Consequential Damages Parties], let alone whether such conduct was unreasonable." (Int. Defs. In Limine Mem. 5.) The Bondholders contend further that, even if relevant, evidence of Non-Consequential Damages Parties' hedging strategies should be precluded under Federal Rule of Evidence 403 "on the grounds that it will result in confusion, waste time, and cause prejudice." (Id. 6.) Aristocrat responds that evidence relating to the Non-Claimant Bondholders is probative of the reasonableness of the Bondholders' conduct. (Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 6-11.)

This Court addressed the relevance and prejudicial effect of the testimony of Non-Consequential Damages Parties in its Opinion and Order dated September 16, 2009. See Aristocrat Leisure, 2009 WL 2972518, at *4-5. The Court incorporates by reference its September 16, 2009, decision and reiterates its holding that, pursuant to the low threshold of Federal Rule of Evidence 401, evidence of the Non-Consequential Damages Parties' hedging strategies is probative of the reasonableness of the Consequential Damages Parties' hedging strategies, id. at *5, and, at this point, is not prejudicial under Rule 403. Id. To the extent that Aristocrat seeks to proffer the testimony of Non-Consequential Damages Parties or any other witnesses on issues of "the amount (if any) of the consequential damages that may be legally attributed to [Aristocrat]," "causation,

9

foreseeability, and conscious assumption of risk," (Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 12, 13), that testimony is not relevant and will be cut-off by the Court. See Aristocrat Leisure, 2009 WL 2972518, at *3 n.3, *5.

For the foregoing reasons, and for the reasons set forth in this Court's September 16, 2009, Opinion and Order, the Bondholders' in limine request to exclude evidence of the hedging strategies of the Non-Consequential Damages Parties is denied.

### 2. Witnesses of Non-Consequential Damages Parties Who Did Not Maintain a Hedge Position

The Bondholders ask the Court to preclude testimony from Nick Calamos and Calamos Advisors LLC on the ground that their testimony is not relevant because neither Mr. Calamos nor Calamos Advisors LLC held a short position in Aristocrat stock. (See Int. Defs.' In Limine Mem. 7.) Without addressing the distinction between parties that did and did not hedge, Aristocrat makes the blanket assertion that "evidence concerning [Mr. Calamos and Calamos Advisors LLC] is probative of the issues for the jury, for the same reasons that evidence relating to the Non-Claimant Bondholders is probative." (Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 11 n.7.)

The Court agrees with the Bondholders and holds, consistent with its Opinion and Order dated September 16, 2009, that because neither Mr. Calamos nor Calamos Advisors LLC hedged its position in Aristocrat stock, neither party's testimony is probative of the reasonableness of the Non-Consequential Damages Parties' hedging strategies.  See Aristocrat Leisure, 2009 WL 2972518, at *5 n.6.

For the foregoing reasons, and for the reasons set forth in this Court's September 16, 2009, Opinion and Order, the Bondholders' in limine request to exclude the testimony of Mr. Calamos and Calamos Advisors LLC is granted.

### 3. Witnesses of Non-Parties Who Maintained a Hedge Position

The Bondholders request that the Court preclude the testimony of David Innerdale, an individual affiliated with a non-party bondholder, UBS AG, that hedged its position in Aristocrat stock.  (See Int. Defs.' In Limine Mem. 7.)  It appears that Aristocrat is trying to proffer, either live[2] or by deposition, the testimony of Mr. Innerdale in his individual

---

[2] It appears that Aristocrat no longer may be seeking Mr. Innerdale's live testimony.  In a July 9, 2009, letter from Aristocrat's counsel to the Bondholders' counsel, Aristocrat represented that it will not seek to enforce a subpoena relating to Mr. Innerdale in light of the Bondholders' counsel's "representations that Mr. Innerdale is presently a non-U.S. citizen[]/resident, lives and works outside of the U.S., and is not an officer or former officer of any party to this proceeding."  (Decl. of Evan A. Davis in Supp. of Int. Defs.' Mot. to Quash Pl.'s Trial Subpoenas Ex. D.) The Court, nonetheless, engages in the analysis above because Aristocrat reserved its right to serve Mr. Innerdale personally and seek his attendance at trial.  (See id.)

11

capacity as a non-party witness.  (See Decl. of Theodore S. Geiger in Supp. of Int. Defs.' Mot. In Limine Ex. A; Decl. of Evan A. Davis in Supp. of Int. Defs.' Mot. to Quash Pl.'s Trial Subpoenas Ex. A.)  For the following reasons, the Court grants the Bondholders' request to preclude Mr. Innerdale's testimony, whether live or by deposition.

Unlike the Non-Consequential Damages Parties, neither Mr. Innerdale nor UBS AG is a party to this action.  As a non-party, the Court is particularly concerned about the burden imposed on Mr. Innerdale to travel from outside the United States to this forum to testify live.  See Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (holding that the status of a witness as a non-party to the underlying litigation entitles the witness to consideration regarding expense and inconvenience).  Even if Aristocrat does not seek Mr. Innerdale's live testimony, the Court precludes this witness's deposition testimony on grounds of cumulativeness.  Aristocrat dedicates only one footnote in its opposition papers to respond to the Bondholders' contention that Mr. Innerdale's testimony is cumulative; in that footnote, Aristocrat offers the blanket assertion that, "[a]s a witness of a bond purchaser that is not seeking consequential damages, Mr. Innerdale would plainly offer a different and non-cumulative perspective."  (Aristocrat's Opp'n to Int. Defs.' Mem. 11 n.7.)  Aristocrat, however, fails

to offer evidence of what this unique perspective would be and how it would differ from the perspectives of the Non-Consequential Damages Parties whose testimony Aristocrat has indicated it will proffer at trial.

For the foregoing reasons, the Bondholders' in limine request to exclude Mr. Innerdale's testimony, whether live or by deposition, is granted.

### C. Testimony Regarding Soundness of Legal Advice

The Bondholders ask the Court to exclude all evidence relating to the soundness of legal advice provided by counsel to the parties. (See Int. Defs.' In Limine Mem. 8.) While the Bondholders "do not oppose Aristocrat stating that some of the bondholders (among those seeking consequential damages) hedged their short positions based on their estimate of the outcome of the litigation, including any consideration of the likelihood that the Court would award specific performance" they object to Aristocrat presenting evidence of the "why[s] and wherefore[s]" of the legal advice the Bondholders received or about the Bondholders' "good faith in believing that . . . there was a reasonable basis to think that specific performance would be awarded." (Id. at 8-9 (internal quotation marks and citation omitted).) Aristocrat brings its own motion in limine to prevent the Bondholders "from introducing evidence suggesting

13

that they received, considered, and/or relied on advice of counsel in connection with their decisions to hold open short positions in [Aristocrat] shares after [Aristocrat] refused to deliver conversion shares."   (Aristocrat's Mem. of Law in Supp. of Mot. In Limine No. 3 ("Aristocrat's No. 1 In Limine Mem.") 1.)   Aristocrat argues further that, should the Court allow the Bondholders to testify about the advice of counsel, the Court should find that such testimony waives the attorney-client and work product privileges and allow Aristocrat to re-open discovery regarding the substance of counsel's advice. (Aristocrat's No. 3 In Limine Mem. 1; Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 14.)

The Court analyzes this issue in greater detail below, see infra Part II.C, and holds that the Bondholders may, without waiving privilege, introduce evidence suggesting that they received advice of counsel in connection with their decisions to hold open short positions; however, should the Bondholders testify about the content of that advice or testify that an individual Bondholder's actions were reasonable because the Bondholder relied on counsel's advice, such testimony would waive the attorney-client and work product privileges.   See id.

For the foregoing reasons, and for the reasons set forth below (see id.), the Bondholders' in limine request to exclude

14

all evidence relating to the soundness of legal advice, other
than the fact of having received advice of counsel, is granted.


D. <u>Valuation of Aristocrat Positions Held by Consequential
Damages Parties</u>

The Bondholders contend that the Court should exclude
testimony regarding how a bondholder marked its Aristocrat
position "unless there is a foundation laid establishing a
palpable connection between such bondholder's valuation or
'marking' practice and its hedging strategy." (Int. Defs.' In
Limine Mem. 9.) The Bondholders also argue that, without
establishing a connection between valuation and the Bondholders'
hedging strategies, "testimony regarding such complex accounting
practices and complicated financial instruments would only serve
as a source of confusion" and should be excluded under Federal
Rule of Evidence 403. (<u>Id.</u> 10.) Aristocrat responds that a
foundation connecting a Bondholder's accounting practices to its
hedging strategy is not required before presenting valuation
evidence and that jurors are capable of understanding complex
factual matters. (Aristocrat's Opp'n to Int. Defs. In Limine
Mem. 15, 16.)

The Court already has held that the trier of fact should
consider "what impact a Bondholder's accounting practices had on
its hedging strategy." <u>Aristocrat Leisure</u>, 618 F. Supp. 2d at

309.  Requiring a foundation prior to the proffer of this evidence appears, at this early time, to be putting the cart before the horse.  The Court, therefore, declines to impose a foundation requirement where none exists.  Furthermore, the Bondholders have not persuaded the Court that valuation evidence, absent a foundation, will confuse the jury to the level required for exclusion under Rule 403; to the contrary, requiring foundational testimony may create the type of confusion that the Bondholders seek to prevent.

For the foregoing reasons, the Bondholders' in limine request to exclude valuation testimony absent a foundation is denied.


E. Compensation of Bondholders' Current and Former Employees

The Bondholders ask the Court to "bar Aristocrat from asking witnesses, introducing deposition testimony or otherwise developing evidence about the individual compensation of current or former employees" of both the Consequential Damages Parties and the Non-Consequential Damages Parties on the grounds that such testimony is irrelevant and only will "distract and prejudice the jury."  (Int. Defs.' In Limine Mem. 11-12.)  The Bondholders concede that to the extent that compensation information supports Aristocrat's theory that Bondholder employees "made hedging decisions to make money, rather than to

16

mitigate their losses," such evidence is potentially admissible if it is limited to "the method of determining compensation" rather than "the amount of compensation an employee received." (Id. 12-13.)  Aristocrat argues in opposition that "the jury will be able to form a reliable judgment . . . only in the context of the actual dollar amounts at stake" and that presenting only the method of compensation will prevent the jury from "assess[ing] the effect of such incentives."  (Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 17.)

While the method of compensation is probative of a theory that hedging decisions were based on compensation and not mitigation, the Court has serious doubts about the relevance of the actual dollar figure of the Bondholders' compensation. Aristocrat has not convinced the Court that the actual dollar amount will shed further light on this theory, should Aristocrat pursue it.  Even if relevant, any limited probative value of this information is outweighed by its potential to bias the jury under Rule 403.  See Koufakis v. Carvel, 425 F.2d 892, 902 (2d Cir. 1970) (holding that remarks that "can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor" were grounds for a new trial);  Kinsey v. Cendant Corp., 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) ("Even assuming that [plaintiff's] compensation package and negotiations with [defendant] are of some limited

17

relevance, that relevance is outweighed by the unfair prejudice
that would result from its admission.").

     For the foregoing reasons, the Bondholders' in limine
request to exclude compensation information, other than the
method of compensation, is granted.


     F. Inflammatory and Prejudicial Remarks

     The Bondholders argue that the Court should preclude
Aristocrat from making "derogatory, inflammatory, and irrelevant
statements about 'hedge funds,' 'short selling,' 'off-shore
incorporation,' 'tax haven,' and the like" on the grounds that
such statements are irrelevant and, even if relevant,
prejudicial under Rule 403.  (Int. Defs.' In Limine Mem. 13-14.)
Aristocrat counters that "the Bondholders are hedge funds, [and]
they did engage in short-selling"; therefore, these terms should
not be precluded.  (Aristocrat Opp'n to Int. Defs.' In Limine
Mem. 18.)  Aristocrat further states that it "does not intend to
make 'derogatory, inflammatory [or] irrelevant statements' about
any topic."  (Id.)

     This Court has prohibited the use of pejorative terms when
such categorizations were inflammatory and unnecessary to prove
a claim.  See Highland, 551 F. Supp. 2d at 193 (granting motion
in limine precluding parties from "characteriz[ing] admissible
evidence and testimony as 'securities fraud,' 'illegal,'

18

'insider trading,' 'inside information,' and 'market manipulation'" on Rule 403 grounds and allowing the parties to use the term "material nonpublic information" to characterize inside information).  In this case, the Court agrees with Aristocrat that "hedge funds" and "short-selling" are factual terms that are not inflammatory in nature.  The Court also categorizes "off-shore incorporation" as a factual term and not inflammatory on its face.  The term "tax haven," however, when considered in isolation, appears irrelevant and inflammatory on its face and is precluded.  The Court declines to speculate on all other possible terms[3] that the parties may use during trial and whether such terms would be inflammatory.  Instead, the Court cautions the parties against using inflammatory terms and making derogatory statements that do not bear on the issues being tried, including, but not limited to, "tax haven" and statements linking the Bondholders, or hedge funds in general, to the financial crisis.

For the foregoing reasons, the Bondholders' in limine request to exclude specific factual terms, including, but not limited to, "hedge funds," "short-selling," and "off-shore incorporation," is denied, while the Bondholders' in limine

---

[3] For the first time in their reply briefing, the Bondholders ask the Court to preclude use of the term "naked shorts" on the grounds that no intervening defendant held a naked short position.  (Int. Defs.' Reply In Limine Mem. 11.)  Because Aristocrat did not have an opportunity to respond to this argument, the Court declines to rule on it.

request to prohibit Aristocrat from making inflammatory remarks, including, but not limited to, "tax haven" and linking the Bondholders, or hedge funds in general, to the financial crisis is granted.

## G. Testimony of Frank Bush

The Bondholders request that the Court preclude the live testimony of Frank Bush, a former Aristocrat officer who resides in Australia and has not worked at Aristocrat since July 2004, on the grounds that, pursuant to Federal Rule of Evidence 602, he lacks personal knowledge of the issues to be presented at trial "[s]ince he was not employed by Aristocrat at the time of its breach, did not know of Aristocrat's breach, was not involved with Aristocrat in the years following the breach, and has conceded lack of knowledge of convertible arbitrage and the investment strategies of hedge funds." (Int. Defs.' In Limine Mem. 14, 15.)  Aristocrat responds that Mr. Bush's testimony "is probative of key issues that must be resolved by the jury at trial, including 'what liability [Aristocrat] fairly may be supposed to have assumed consciously, or to have warranted the [Bondholders] reasonably to suppose that it assumed, when the contract was made.'"  (Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 19 (citation omitted).)  Aristocrat provides no other reason for proffering Mr. Bush's testimony.

The Court already has held that the scope of triable issues is limited solely to whether the Bondholders unreasonably failed to mitigate their consequential damages.  (See Aristocrat Leisure, 2009 WL 2972518, at *3; Aristocrat Leisure, 618 F. Supp. 2d at 306; supra Part I.A.)  Therefore, because Aristocrat does not proffer Mr. Bush's testimony for mitigation of damages, his testimony, whether live or by deposition, is not relevant under Federal Rule of Evidence 401 and, thus, not admissible under Federal Rule of Evidence 402.

For the foregoing reasons, the Bondholders' in limine request to exclude Mr. Bush's testimony is granted.


H. Testimony of Messrs. Laing, Jenkins, and Jones

The Bondholders request that the Court exclude the testimony, either live[4] or by deposition, of Denzil Jenkins, Anthony Jones, and Christopher Laing—all current and former employees of Non-Consequential Damages Party, Deutsche Bank AG, London Branch.  (Int. Defs.' In Limine Mem. 4, 16-18.)  The Bondholders argue that these individuals' testimony will not bear on the sole issue for trial—whether the Bondholders

---

[4] Aristocrat no longer may be seeking the live testimony of Messrs. Laing, Jenkins, and Jones.  In a July 9, 2009, letter from Aristocrat's counsel to the Bondholders' counsel, Aristocrat represented that it will not seek to enforce subpoenas relating to Messrs. Jenkins, Jones, and Laing, "in reliance on the representations made by counsel to Deutsche Bank."  (Decl. of Evan B. Davis in Supp. of Int. Defs.' Mot. to Quash Pl.'s Trial Subpoenas Ex. D.)  Aristocrat, however, reserved its right to serve these individuals personally and seek their attendance at trial.  (See id.)

unreasonably failed to mitigate their consequential damages—
since these individuals do not have personal knowledge of the
hedging practices of any of the Bondholders, including Deutsche
Bank AG, London Branch.  (Id. 17.)  Aristocrat does not contend
that it seeks the testimony of Messrs. Laing, Jenkins, and Jones
for the issue of mitigation of consequential damages; instead,
Aristocrat argues that, "like Mr. Bush's testimony, the
testimony of Messrs. Laing, Jenkins, and Jones is probative of
unresolved questions relating to consequential damages,
including whether [Aristocrat] consciously assumed the risk of
liability for costs resulting from the short positions being
held open, or, alternatively, whether it was reasonable for the
Bondholders to believe that [Aristocrat] had consciously assumed
such risk."  (Aristocrat's Opp'n to Int. Defs.' In Limine Mem.
20.)

     As stated above, the Court already has held that the scope
of triable issues is limited solely to whether the Bondholders
unreasonably failed to mitigate their consequential damages.
(See Aristocrat Leisure, 2009 WL 2972518, at *3; Aristocrat
Leisure, 618 F. Supp. 2d at 306; supra Parts I.A & G.)
Therefore, because Aristocrat does not proffer the testimony of
Messrs. Laing, Jenkins, and Jones on the issue of mitigation of
damages, their testimony, whether live or by deposition, is not

relevant under Federal Rule of Evidence 401 and, thus, not admissible under Federal Rule of Evidence 402.

For the foregoing reasons, the Bondholders' in limine request to exclude the testimony of Messrs. Laing, Jenkins, and Jones is granted.

## I. Order of Proof

The Bondholders ask this Court to use its discretion under Federal Rule of Evidence 611(a) to modify the traditional order of proof and allow the Bondholders to conduct a direct examination of the Consequential Damages Parties that the Bondholders have designated as witnesses before Aristocrat examines them in its case-in-chief. (Int. Defs.' In Limine Mem. 18.)  Aristocrat argues that modifying the traditional order of proof would prejudice Aristocrat by "depriv[ing] [Aristocrat] of its right to priority of presentation in a trial where it bears the burden of proof." (Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 23.)

The Court already has addressed the order of proof at trial in its Opinion and Order dated September 16, 2009.  The Court reiterates its position and declines to modify the standard order of proof at trial on the grounds that modification would exacerbate jury confusion and prejudice Aristocrat's priority at trial.  See Aristocrat Leisure, 2009 WL 2972518, at *3-4.

For the foregoing reasons, and for the reasons set forth in this Court's September 16, 2009, Opinion and Order, the Bondholders' in limine request to modify the order of proof at trial is denied.

J. <u>Providing the Jury with a Case History</u>

The Bondholders request that the Court permit them "to submit a statement summarizing the procedural history of the case and the Court's prior rulings for the Court to read to the jury at trial." (Int. Defs. In Limine Mem. 19.)  Alternatively, the Bondholders request that the Court prepare such a statement and read it to the jury.  (See id.)  Aristocrat agrees that the Court should, at the outset of trial, give the jury an unbiased and neutral statement providing context for the issues to be decided.  (Aristocrat's Opp'n to Int. Defs.' In Limine Mem. 23.) The parties, however, cannot agree on the content of such a statement.  Each party has submitted a proposed statement and provided a rebuttal to its adversary's proposed text.  The Court declines to adopt and read either party's statement to the jury but reserves its right to provide its own statement offering context to the jury on the issues to be tried.

For the foregoing reasons, the Bondholders' in limine request asking the Court to read the Bondholders' statement summarizing the procedural history of this case is denied.

II.  Aristocrat's In Limine Motions

A. No. 1:  Argument and Evidence Relating to Background
   Matters

Aristocrat asks this Court to limit argument and evidence

relating to certain background matters by providing the jury

with a statement of background facts, as written by Aristocrat,

and precluding the introduction of evidence or argument, other

than the aforementioned statement, concerning background matters

that are not probative of, or necessary for the jury's

understanding of, the issues to be determined at trial.  (See

Aristocrat's No. 1 In Limine Mem. 1, 2.)  Specifically,

Aristocrat requests that the Court "preclude the introduction of

evidence or argument on such matters as (1) the Court's prior

rulings that [Aristocrat's] redemption notice did not

effectively terminate the Bondholders' conversion rights and

that [Aristocrat] breached the Indenture by failing to deliver

conversion shares; (2) the Court's prior rulings on the

availability and the amount of general damages; and (3) the

Bondholders' securities fraud claims against [Aristocrat], which

are still being held in abeyance."  (Id. 4-5.)  Aristocrat

contends that such topics are "prejudicial" because "they could

be seen as suggesting to the jury that [Aristocrat] engaged in

wrongful conduct and should be 'punished' for its bad behavior."

(Id. 5.)   The Bondholders do not object to precluding evidence
and argument of the Court's prior rulings "relating to the
amount of general damages and to the [Bondholders'] securities
fraud claims" but are silent as to precluding evidence of the
Court's prior rulings on the availability of general damages.
(Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 4 n.3
(emphasis added).)   While the Court agrees with Aristocrat that
argument or evidence of the securities fraud claims and the
amount of general damages should be precluded, the Court
declines to preclude the parties from stating, as part of
explaining the procedural posture of this case, that the Court
previously awarded the Bondholders general damages.

       For the foregoing reasons, Aristocrat's in limine request
to preclude argument and evidence relating to the Bondholders'
securities fraud claims that are held in abeyance and the
amount, but not the fact, of general damages that the Court
awarded previously, is granted.   The Court still must resolve:
(1) whether it should present Aristocrat's proposed background
statement to the jury; and (2) whether it should permit argument
or evidence of the Court's prior ruling that Aristocrat breached
the Indenture by failing to deliver conversion shares.


       1. Aristocrat's Proposed Background Statement

The Court already has held that because the parties cannot agree on a proposed background statement, the Court declines to adopt and read either party's statement to the jury and, instead, reserves its right to provide the jury with a background statement that it deems appropriate.  See supra Part I.J.  The Court, therefore, need not address the substance of Aristocrat's proposed background statement, other than the issue addressed below, which may arise in contexts outside the background statement.

In its proposed background statement, Aristocrat uses the term "additional damages" as a substitute for the term "consequential damages."  (Aristocrat's No. 1 In Limine Mem. Ex. 1.)  The Bondholders contend that "neither the Background Statement nor Aristocrat should be permitted to refer to the [Bondholders'] consequential damages as 'additional damages,' as this has the improper and misleading connotation that the [Bondholders] are seeking 'extra' or 'unnecessary' damages beyond their actual losses."  (Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 4 n.2.)  Neither the Second Circuit nor Black's Law Dictionary defines consequential damages as "additional damages."  See Rensselaer Polytechnic Inst. v. Varian, Inc., No. 07-5155-cv, 2009 U.S. App. LEXIS 17855, at *5 (2d Cir. Aug. 12, 2009) (stating that consequential damages "'seek to compensate a plaintiff for additional losses (other than the value of the

27

promised performance) that are incurred as a result of the
defendant's breach'" (emphasis added) (quoting <u>Schonfeld v.
Hilliard</u>, 218 F.3d 164, 175 (2d Cir. 2000)); <u>Black's Law
Dictionary</u> 445-46 (9th ed. 2009) (defining consequential damages
as "[l]osses that do not flow directly and immediately from an
injurious act, but that result indirectly from the act").
Because the terms are not interchangeable, the Court precludes
the parties from substituting "consequential damages" with
"additional damages."

### 2. Argument or Evidence of Court's Prior Ruling on Breach

Aristocrat asks the Court to "preclude the introduction of
evidence or argument concerning background matters that are not
probative of the issues to be tried," other than in a statement
of background facts that the Court may provide to the jury.
(Aristocrat's No. 1 In Limine Mem. 2.)  Aristocrat also asks the
Court to prohibit the Bondholders from asserting that Aristocrat
"breached" the Indenture because such a statement would be
prejudicial to Aristocrat.  (<u>Id.</u> 5.)

The Court's prior rulings, including its ruling on
Aristocrat's breach of the Indenture, are probative of the
present procedural posture of the case, which the jury will need
to be aware of to understand why it is being asked only to
determine whether the Bondholders unreasonably failed to

mitigate their consequential damages.  While many of the issues addressed in the Court's prior rulings—including the Court's rulings on the securities fraud claims and the amount of general damages, see supra—are not probative of the issues for trial, the Court declines, at this early time, to issue a blanket prohibition against mentioning all of its rulings at trial. Therefore, Aristocrat's in limine request to preclude argument or evidence of the Court's prior rulings, other than in a statement of background facts to be read to the jury, is denied.

To mitigate any prejudice to Aristocrat, the Court directs the parties to refrain from using pejorative terms in describing the Court's prior rulings.  Aristocrat asks the Court to preclude references to the Court's prior ruling that Aristocrat "breached the Indenture."  (See Aristocrat's No. 1 In Limine Mem. 4-5.)  The term "breached the Indenture" and variations of this phrase, such as "breach of contract," are factual references to the Court's prior ruling.  Unlike other terms that this Circuit has found to be prejudicial, the term "breach" or "breach of contract/Indenture" is not pejorative, inflammatory, or prejudicial on its face, and will not be precluded in describing the Court's prior rulings.  See Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 17 (2d Cir. 1996) (holding, in the context of a bifurcated trial where the liability jury decided that defendant engaged in wilful misconduct, that the

district court abused its discretion during the damages trial
"by mentioning wilful misconduct in its charge to the jury and
by permitting the plaintiff's counsel to refer, on several
occasions, to wilful misconduct," but that this error was
insufficient to warrant a new trial); Highland, 551 F. Supp. 2d
at 193 (precluding parties from "characteriz[ing] admissible
evidence and testimony as 'securities fraud,' 'illegal,'
'insider trading,' 'inside information,' and 'market
manipulation'" on Rule 403 grounds and allowing the parties to
use the term "material nonpublic information" to characterize
inside information).  Unlike "wilful misconduct" and "insider
trading," the terms "breach" or "breach of contract/Indenture"
are not so "highly potent" that they would invite speculation
regarding their meaning.  Pescatore, 97 F.3d at 17.  Therefore,
the Court denies Aristocrat's in limine request to preclude use
of the term "breach" or "breach of contract/Indenture."

     For the foregoing reasons, Aristocrat's motion in limine
No. 1 is granted with respect to precluding evidence or argument
about (1) the Court's prior rulings on the amount of general
damages; and (2) the Bondholders' securities fraud claims
against Aristocrat, which are still being held in abeyance, and
denied with respect to (1) precluding evidence or argument about
the Court's prior rulings on the availability of general
damages; (2) adopting and reading Aristocrat's proposed

background statement to the jury; (3) defining consequential
damages as "additional damages"; and (4) precluding evidence of
the Court's prior rulings, including use of the terms "breach"
or "breach of contract/Indenture."

B. No. 2:  Aristocrat's Internal Consideration of Whether to
   Call the Convertible Bonds and Honor the Bondholders'
   Conversion Notices

Aristocrat requests that the Court exclude evidence and
argument relating to Aristocrat's internal consideration of
whether to call the convertible bonds and honor the Bondholders'
conversion notices, including whether, hypothetically,
Aristocrat might have issued stock to the Bondholders in the
event that Aristocrat did not prevail in this litigation.
(Aristocrat's No. 2 In Limine Mem. 3.)  Aristocrat argues that
its internal considerations are not relevant to determining
whether the Bondholders' actions were reasonable, "as there is
no evidence that any [Aristocrat] witnesses ever communicated
their views . . . on any of these matters to any of the
Bondholders."  (Id.)  In response, the Bondholders argue that
Aristocrat's consideration of issuing shares if it did not
prevail on its declaratory judgment action is relevant because
it corroborates the reasonableness of the Bondholders' actions
in maintaining their hedge positions.  (Int. Defs.' Opp'n to
Aristocrat's In Limine Mem. 8.)  The Bondholders argue further

31

that it is immaterial that Aristocrat did not convey to the Bondholders its internal thinking concerning the possibility of issuing shares, as the fact that Aristocrat entertained this possibility tends to prove the objective reasonableness of the Bondholders' belief that they would receive shares.  (Id. 10.) The Court first turns to whether Aristocrat's internal considerations are relevant.  The Court then determines whether the evidence that the Bondholders rely on supports the Bondholders' view of what were those considerations.


### 1. Relevance of Aristocrat's Internal Considerations

The Bondholders argue that the decision of an individual Bondholder to maintain its short position in Aristocrat stock was predicated in part on the possibility that it would receive shares of Aristocrat stock as a result of this litigation.  (See id. 8.)  Evidence, if it exists, that Aristocrat was in fact considering issuing stock to the Bondholders certainly tends to support the reasonableness of a Bondholder's belief that this event would occur.  See Fed. R. Evid. 401.  To hold otherwise would result in the illogical position that Aristocrat's own internal discussions are not reflective of the actions that Aristocrat may have taken.  Standing alone, such evidence may not definitively prove that the Bondholders acted reasonably,

32

but the "standard of relevance established by the Federal Rules of Evidence is not high" and "[e]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant." Scotto v. Long Island R.R., No. 05 Civ. 4757, 2007 WL 894332, at *2 (S.D.N.Y. Mar. 20, 2007) (Leisure, J.) (citations and internal quotation marks omitted). Therefore, evidence suggesting that Aristocrat might have issued stock to the Bondholders if Aristocrat did not prevail in this litigation is relevant in assessing the reasonableness of the Bondholders' actions.

### 2. Deposition Testimony of Aristocrat's Internal Consideration

Aristocrat argues that, even if relevant, the testimony cited by the Bondholders does not show that Aristocrat was considering delivering shares to the Bondholders if it did not win the declaratory judgment; instead, whether to issue shares was a matter that Aristocrat had yet to address. (Aristocrat's No. 2 In Limine Mem. Reply 5-6.)

The Bondholders rely on four sections of deposition testimony in support of their argument,[5] including testimony from

---

[5] The Bondholders also rely on a partial settlement agreement between Aristocrat and Deephaven International Convertible Trading Ltd. ("Deephaven") dated August 9, 2006, ("Settlement Agreement"), in which Aristocrat agreed not to deliver shares to Deephaven in exchange for paying Deephaven its pro

the Chairman of Aristocrat's Board that issuing stock to the
Bondholders is something that "would have to be decided some
time in the future.  If that came up, if that were the case."
(Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 7-8.)  While
this testimony supports the argument that Aristocrat had not
ruled out the possibility of issuing shares of stock to the
Bondholders, it does not show that this was a matter that
actually was under consideration.  The Bondholders may address
this issue further in their examination of witnesses at trial
but based on the deposition testimony currently before the
Court, the Bondholders may not argue that Aristocrat was
considering issuing stock to the Bondholders if Aristocrat did
not prevail in this litigation.

Based on the foregoing reasons, Aristocrat's motion in
limine to exclude as irrelevant argument and evidence of
Aristocrat's internal considerations of whether to honor the
Bondholders' conversion notices is denied, while Aristocrat's

---

rata share of the bonds.  (Decl. of Theodore S. Geiger in Supp. of Opp'n to
Aristocrat's Mot. In Limine Ex. 7.)  The Bondholders argue that the
Settlement Agreement is "probative of the possibility [that] Aristocrat might
deliver shares to [Deephaven] in the period before the date of [the]
agreement[]."  (Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 5.)
Aristocrat objects to the admissibility of the Settlement Agreement pursuant
to Federal Rule of Evidence 408.  (Aristocrat's No. 2 In Limine Mem. Reply
6.)  The Court declines to rule on the admissibility of the Settlement
Agreement because, having raised the issue only in opposition, it is not
clear whether the Bondholders are seeking to introduce the Settlement
Agreement at trial.  In any event, the Court has reservations about the
admissibility of this document under Rule 408(a).

motion in limine to preclude deposition testimony that is not probative of Aristocrat's internal considerations is granted.

## C. No. 3:  Bondholders' Evidence Regarding Advice of Counsel, or, Alternatively, Waiver of Privilege

Aristocrat asks the Court to prevent the Bondholders "from introducing evidence suggesting that they received, considered, and/or relied on advice of counsel in connection with their decisions to hold open short positions in [Aristocrat] shares after [Aristocrat] refused to deliver conversion shares." (Aristocrat's No. 3 In Limine Mem 1.)  Aristocrat's main support for this argument is an agreement made by the parties before Magistrate Judge Peck on December 11, 2006 (the "December 11 agreement").  Aristocrat maintains that if the Court rejects this argument, and finds that the Bondholders are permitted to present evidence of their consultations with counsel, the Court should:  (1) find that, by putting this advice "at issue," the Bondholders have waived any attorney-client privilege and work product protection attached to this advice and all communications and documents related to this advice, and (2) re-open discovery on these issues. (Id.)

The Bondholders agree with Aristocrat that the issue of whether the parties can mention conversations with counsel is governed by the December 11 agreement, but the Bondholders disagree with Aristocrat's interpretation of the agreement.  In

35

response to Aristocrat's contention that the proposed testimony
will waive attorney-client privilege and work product
protections, the Bondholders draw a distinction between the
argument that Bondholders sought legal advice as one aspect of
an overall course of reasonable conduct, and the argument that
the Bondholders acted reasonably because they relied on advice
rendered by legal counsel.  According to the Bondholders, only
the latter would result in a waiver of attorney-client privilege
and work product immunity, necessitating additional discovery.
(See Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 14.)

        To decide this issue, the Court begins by looking at the
one piece of common ground between the parties:  the December 11
agreement.  The Court then addresses the issue of attorney-
client privilege and work product waiver, and whether discovery
should be re-opened.


        1. The December 11, 2006, Agreement

        On December 11, 2006, the parties met for a discovery
conference before Magistrate Judge Peck.  (Aristocrat's No. 3 In
Limine Mem. 4-6; Transcript of Dec. 11, 2006 Hr'g ("Tr."), Ex. J
to the Decl. of Daniel G. Bird in Supp. of Aristocrat's Mots. in
Limine.)  A number of issues were addressed at this conference,
including how best to deal with claims from both parties that
they acted with good faith in the course of this litigation,

while their adversary acted with bad faith in pursuing their legal positions. (Tr. 10:1-13:9.) Both Aristocrat and the Bondholders appear to have been concerned that pursuing this line of questioning could constitute a waiver of the attorney-client privilege. (Id.) Judge Peck signaled that unless the parties could agree "that the issue of good faith and bad faith will not be raised by either side . . . . [asserting a] claim of good faith, like any claim of reliance on counsel or anything else, to the largest extent, waives the privilege." (Id. 10:20-11:15.)

Counsel for Aristocrat responded by stating that good faith is not a part of this case, but at the same time, "at some point somebody is going to have to introduce this case at trial and say why we're here, and I imagine a witness says . . . we took action based on an interpretation of the indenture. We filed suit for that. We lost. We're now in breach." (Id. 11:17-22.) Both sides agreed that statements such as these were different from a claim that the parties acted with good faith. (Id. 11:16-25.) Judge Peck suggested that counsel "prep the witness not to use words sounding like good faith, and if the witness, despite your able preparation slips, [counsel for the Bondholders] will move to strike." (Id. 12:5-7.) The parties agreed with this approach, and further agreed that comments that Aristocrat acted in bad faith "would be stricken from the record

or not be allowed to be introduced." (Id. 12:12-13.)   Mr.

Davis, Counsel for the Bondholders, raised the caveat

> that some of the bondholders hedged their position
> based on their estimate of the outcome of the
> litigation.   That fact alone be stated, we would not
> argue to why and wherefore of why they thought that
> was the correct outcome.   I have no objection to
> Aristocrat saying it thought it would win the
> litigation, but nothing beyond that because if we're
> going to get into a discussion of the reasonableness
> and the whys and wherefores, then we're into an issue
> where both sides have to be able to argue their
> position.

(Id. 12:16-24.)   Judge Peck then confirmed that both sides

agreed to this proposal, including the caveat raised by the

Bondholders.   (Id. 12:25-13:9.)

Aristocrat argues that this agreement, particularly the

caveat made by Mr. Davis, prohibits the Bondholders from

indicating whether advice of counsel influenced their decisions

to hold open short positions in Aristocrat stock.   (Aristocrat's

No. 3 In Limine Mem. 5-6.)   The Bondholders agree that both

sides are precluded from addressing the underlying

reasonableness of advice of counsel, and from discussing the

actual content of any advice of counsel, but the Bondholders do

not agree that the December 11 agreement precludes the parties

from mentioning that they sought legal advice concerning the

probable outcome of this litigation.   (See Int. Defs.' Opp'n to

Aristocrat's In Limine Mem. 12-14.)

The Court agrees with the Bondholders that the December 11 agreement does not prevent the parties from mentioning the fact that they sought advice of counsel.  When read in isolation, it is difficult to determine what is meant by Mr. Davis's statement that the Bondholders "would not argue to why and wherefore of why they thought" their estimate of the outcome of the litigation was reasonable.  (Tr. 12:18-19.)  Read in the context of the preceding paragraphs, however, which deal with finding a way to avoid good faith and bad faith allegations by both parties, it appears that Mr. Davis's statement was intended to preclude either party from delving into the reasonableness of the other side's belief that they would win the underlying litigation, rather than to preclude either party from stating that they consulted with counsel in the course of forming their opinions about the likely outcome of this case.

The Court, therefore, finds that the December 11 agreement does not preclude the Bondholders from stating that they received advice of counsel in connection with their decision to hold open short positions in Aristocrat stock after Aristocrat refused to deliver conversion shares.

## 2. Potential Waiver of Privilege

Aristocrat contends that even if the December 11 agreement does not prevent the Bondholders from mentioning that they

39

sought legal advice in connection with their decision to hold
open short positions in Aristocrat shares, introducing such
evidence at trial puts the advice at issue and thereby waives
any privilege or work product protections.  Aristocrat contends
further that, since privilege is (or will be) waived, it should
have an opportunity to conduct discovery on the substance of
this advice.  (See Aristocrat's No. 3 In Limine Mem. 6-11.)  The
Bondholders respond by distinguishing situations where a party
claims that it followed reasonable advice of counsel, thereby
placing the actual content of the advice at issue, and
situations such as this, where a party merely states that it
consulted counsel on a certain topic but does not make any
representations as to the reasonableness or content of the
advice.  The Bondholders argue that only the former scenario
constitutes an at issue waiver. (See Int. Defs.' Opp'n to
Aristocrat's In Limine Mem. 13-15.)

     The Court agrees with the Bondholders that, subject to the
limitations described below, merely stating that individual
Bondholders sought advice of counsel on a particular topic does
not place the actual content of the advice at issue or otherwise
waive privilege.  An at issue waiver may occur "when the party
attempts to use the privilege both as 'a shield and a sword'" by
"partially disclos[ing] privileged communications or
affirmatively rely[ing] on [them] to support its claim or

defense and then shield[ing] the underlying communications from scrutiny." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000). In addressing this issue, the Second Circuit recently restated that waiver "'depends primarily on the specific context in which the privilege is asserted'" but also clarified that "reliance on privileged advice in the assertion of the claim or defense" is an "essential element" of a claim of waiver. In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008) (quoting In re Grand Jury Proceedings, 219 F.3d at 183); accord In re Adelphia Commc'ns Corp., No. 03 MDL 1529, 2009 WL 1922425, at *2 (S.D.N.Y. July 1, 2009).

The Bondholders have represented that they will not argue that they relied on privileged advice rendered by counsel in opposing Aristocrat's claim that their actions were unreasonable. (See Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 14.) The Bondholders instead wish to inform the jury of the fact that counsel was consulted on the subject matter underlying this litigation—a fact that in and of itself is not privileged. See Fed. R. Civ. Proc. 26(b)(5)(A)(ii) (describing the substance of a privilege log, including a description of "the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim."). This case is not an instance where a party seeks to unfairly use its privilege as

41

a sword and a shield by relying on advice provided by counsel while simultaneously refusing to disclose the full content of this advice to an adversary.  Rather, because the Bondholders are not claiming to have relied on an opinion of counsel, the actual content of the advice provided to the Bondholders is irrelevant.[6]

For the foregoing reasons, Aristocrat's motion in limine to prevent the Bondholders from introducing evidence suggesting that they received advice of counsel in connection with their decisions to hold open short positions is denied.  Because there is no waiver of privilege, Aristocrat's request to re-open

---

[6] Aristocrat relies on Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, in arguing that offering evidence that a decision was made after consulting with counsel creates an at issue waiver because the party has provided circumstantial evidence of what counsel opined.  No. 03 Civ. 5560, 2008 WL 5423316 (S.D.N.Y. Dec. 31, 2008).  Kingsway, however, followed the language of the doctrine espoused in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975) ("the Hearn test") in finding that "a party does not have to expressly state that it relied on any advice from his attorney" for an at issue waiver to occur.  Kingsway, 2008 WL 5423316, at *11 (quoting Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A., 210 F.R.D. 506, 509, 510 (S.D.N.Y. 2002) (relying on Hearn as "[t]he leading case on" the at issue waiver)).  The Hearn test recently has been criticized by the Second Circuit on this very issue:

> We agree with its critics that the Hearn test cuts too broadly and therefore conclude that the District Court erred in applying it here.  According to Hearn, an assertion of privilege by one who pleads a claim or affirmative defense "put[s] the protected information at issue by making it relevant to the case."  But privileged information may be in some sense relevant in any lawsuit.  A mere indication of a claim or defense certainly is insufficient to place legal advice at issue.  The Hearn test presumes that the information is relevant and should be disclosed and would open a great number of privileged communications to claims of at-issue waiver.  Nowhere in the Hearn test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver.

Erie, 546 F.3d at 229 (emphasis added) (internal citations omitted).

discovery on this issue also is denied.  The Court cautions the Bondholders not to sidestep this ruling by imparting to the jury the actual content of the legal advice provided by counsel, or by arguing that an individual Bondholder's actions were reasonable because they relied on an opinion of counsel. Arguments such as these indeed would put the subject matter of the communication with counsel at issue and would result in a waiver of the privilege.  Until such a misstep occurs, the Court declines to find that the privilege has been waived.

### D. No. 4:  Limit Expert Testimony Presented at Trial

The Bondholders intend to call Charles M. Jones as an expert witness.  Aristocrat does not challenge Professor Jones's general qualifications, but rather moves to preclude Professor Jones from testifying on four topics:  (1) the ultimate issue of the reasonableness of the Bondholders' actions; (2) "factual narratives" that are not within Professor Jones's personal knowledge; (3) the state of mind of parties to this action; and (4) topics outside Professor Jones's area of expertise, "including the methodology used by the Bondholders[] to mark or value investments for accounting purposes and the relationship of such marking or valuation to alleged hedging strategies." (Aristocrat's No. 4 In Limine Mem. 1.)  The Court addresses each topic in turn.

1. Testimony on the Ultimate Issue of the Reasonableness of
   the Bondholders' Actions

Aristocrat contends that while Professor Jones's testimony
may "embrace" an ultimate issue to be decided by the jury,
"Professor Jones should not be permitted to testify at trial
that the Bondholders acted reasonably, as such testimony would
impermissibly intrude on the jury's function."  (Id. 2.)  The
Bondholders admit that Professor Jones may not frame his opinion
in terms of "ultimate legal conclusions," but contend that
Aristocrat's concern is misplaced because Professor Jones will
not testify to the ultimate legal conclusion.  (Int. Defs.'
Opp'n to Aristocrat's In Limine Mem. 18-19.)  The Bondholders
explain that "to the extent Professor Jones uses the word
'reasonable' in describing conduct by bondholders," his
testimony will be consistent with the law in this Circuit as it
"will identify the 'factors indicating to him' why the conduct
would be rational under the circumstances."  (Id. 19-20 (quoting
Highland, 551 F. Supp. 2d at 181).)

Because the parties agree that Professor Jones cannot
testify to the ultimate issue, and because Aristocrat does not
challenge the Bondholders' representation of the extent to which
Professor Jones will testify about the reasonableness of the

Bondholders' actions, Aristocrat's motion in limine to preclude expert testimony on the ultimate issue is granted.

### 2. "Factual Narratives" Not Within Expert's Personal Knowledge

Aristocrat asks this Court to prohibit Professor Jones from presenting a factual narrative of "lay matters that the jury is capable of understanding and deciding without [the expert's] testimony." (Aristocrat's No. 4 In Limine Mem. 6 (quoting Highland, 551 F. Supp. 2d at 180).)  The Bondholders reply that "Professor Jones does not intend to provide such testimony" but rather will identify the facts upon which his decision is based and may provide answers to hypothetical questions.  (Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 20-21.)  Aristocrat raises no objection to these limitations.

Because the parties agree that Professor Jones should not, and will not, provide a factual narrative, Aristocrat's motion in limine to preclude factual narrative testimony is granted.

### 3. Testimony that Goes to State of Mind of the Parties

Aristocrat asks the Court to prohibit Professor Jones from providing testimony as to the state of mind of parties to this action.  (Aristocrat's No. 4 In Limine Mem. 6.)  The Bondholders do not dispute that testimony "about the intent or motive of

45

parties or others lie outside the bounds of expert testimony,"
Highland Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d 461,
470 (S.D.N.Y. 2005) (citation and internal quotation marks
omitted), and represent that Professor Jones will not offer
testimony about the state of mind of individual Bondholders.
(Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 22-23.)

Because the parties agree that Professor Jones should not,
and will not, testify about state of mind, Aristocrat's motion
in limine to preclude expert testimony about the state of mind
of the parties is granted.


### 4. Topics Outside Expert's Area of Expertise

Aristocrat asks the Court to preclude Professor Jones from
testifying about financial accounting methodology, as that topic
is outside his expertise. (Aristocrat's No. 4 In Limine Mem. 7-
8.) Specifically, Aristocrat requests that the Court preclude
Professor Jones from testifying that "a conservative valuation
of the Bonds is consistent with ordinary accounting practice and
does not determine whether or not a particular hedging strategy
is reasonable." (Id. 7.) The Bondholders respond that: (1)
this issue is moot because the Bondholders have moved in limine
to preclude testimony concerning these issues unless a proper
foundation is established, an argument this Court has rejected,
see supra Part I.D; and (2) that Professor Jones intends to

provide "limited testimony" that will "explain that hedging

decisions and marking decisions serve different purposes, and

accordingly there is no necessary correlation between the two"

and will not "provide an extended discussion concerning

'financial accounting.'"   (Int. Defs.' Opp'n to Aristocrat's In

Limine Mem. 24-25.)

The Court agrees with Aristocrat that Professor Jones may

not provide an extended discussion of the financial accounting

methodology used by the Bondholders.  However, based on his

undisputed expertise in financial markets and in hedging

practices, the Court will permit Professor Jones to provide

testimony on the limited topics proposed by the Bondholders,

namely, explaining the different purposes behind hedging

decisions and marking decisions.

For the foregoing reasons, Aristocrat's motion in limine to

preclude Professor Jones from testifying about accounting

methodology, but not about the different purposes of hedging and

marking decisions, is granted.

### E. No. 5:  Deposition Testimony of Bondholders' Current and Former Employees

Aristocrat requests that the Court preclude the Bondholders

from introducing into evidence the videotaped deposition

testimony of three witnesses who reside overseas—Andrew Calvy,

Peter Green, and Kazuo Matsude.  (Aristocrat's No. 5 In Limine

Mem. 1-2.)   The Bondholders argue that Federal Rule of Civil Procedure 32(a)(4)(B) expressly permits use of their deposition testimony.   (Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 25.)

"The Second Circuit has held that a witness's live in-court testimony is the preferred method of presenting his or her testimony." Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d 741, 769 (S.D.N.Y. 2006) (Leisure, J.).   That being said, "Rule 32[] . . . provides limited exceptions to th[e] requirement" that testimony at all trials must be live. Banks v. Yokemick, 144 F. Supp. 2d 272, 288 (S.D.N.Y. 2001); see also Garcia-Martinez v. City & County of Denver, 392 F.3d 1187, 1191 (10th Cir. 2004) ("Rule 32(a) creates an exception to the hearsay rules").   In particular, Rule 32(a)(4)(B) states that:

> A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . . (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition.

Fed. R. Civ. Proc. 32(a)(4)(B).   It is undisputed that the witnesses in question reside outside the United States and Aristocrat does not argue that the witnesses' absence was procured by the Bondholders.   Yet, Aristocrat contends that the Bondholders should not be permitted to introduce videotaped

48

deposition testimony of these witnesses, all of whom are either current or former employees of Consequential Damages Parties, because their testimony "goes to one of the central issues the jury will be asked to evaluate," and therefore should be evaluated live, and because the Bondholders have failed to show that they have made an attempt to compel the witnesses to appear at trial.   (Aristocrat's No. 5 In Limine Mem. 6-7.)

Aristocrat's arguments ignore the clear language of Rule 32.  Aristocrat points to no requirement that a party that meets the standard set out in Rule 32(a)(4)(B) only may use deposition testimony that addresses peripheral topics.  The Court is mindful of the jury's role in assessing a witness's credibility. Here, however, the portions of the depositions designated for trial "are limited additions to the live testimony that will be presented" and will be presented via videotape so that the jury can assess the witnesses' reactions.  (Int. Defs.' Opp'n to Aristocrat's In Limine Mem. 25); see also DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002) (noting that videotaped depositions could be used to assess the credibility of witnesses that reside outside the United States); Traver v. Officine Meccaniche Toschi SpA, 233 F. Supp. 2d 404, 417 (N.D.N.Y. 2002) (holding that "videotape[d] depositions" would permit "the jury [to] have the opportunity to assess the credibility of any [foreign] witnesses"); Nichols v. Am. Risk

49

Mgmt., No. 89 Civ. 2999, 2000 WL 97282, at *2 (S.D.N.Y. Jan. 28, 2000) (permitting use of deposition testimony of an expert witness at trial under Rule 32(a)(4)(B) where the opposing party "has not suggested that it withheld any cross-examination during [the witness's] deposition or that any special circumstances exist here which require an exception to Rule 32(a)[4](B)").

Aristocrat similarly points to no caselaw holding that, despite not appearing in the language of Rule 32(a)(4)(B), there is a requirement that a party must show that they have made a reasonable effort to procure the attendance of witnesses that reside overseas before they may introduce deposition testimony of these witnesses at trial. At best, the two cases relied on by Aristocrat for this point, both of which are from outside this Circuit, would permit the Court to exercise its discretion in deciding whether a party must make an effort to procure a foreign witnesses' attendance at trial before it may offer the witnesses' deposition testimony. See Moore v. Miss. Valley State Univ., 871 F.2d 545, 552 (5th Cir. 1989); In re Air Crash Disaster at Stapleton Int'l Airport, 720 F. Supp. 1493, 1502-03 (D. Colo. 1989).[7] To the extent this discretion exists, the

___

[7] Aristocrat's reliance on Garcia-Martinez is similarly misplaced. The witness in question in Garcia-Martinez was the plaintiff, who procured his own absence by choosing to leave the country prior to trial. 392 F.3d at 1190. Because "the witness's absence was procured by the party offering the deposition," Fed. R. Civ. Proc. 32(a)(4)(B), i.e. by the witness himself, the clear language of Rule 32(a)(4)(B) precluded the use of his deposition at trial. Garcia-Martinez, 392 F.3d at 1192. Aristocrat does not argue that

Court declines to exercise it under the present circumstances.[8]
As previously described, the Court is satisfied that the jury
will be able to evaluate the witnesses' credibility by viewing
the videotaped depositions, and the Court takes notice of the
representations made by the Bondholders that the testimony of
these witnesses will be limited additions to the live testimony
of other witnesses employed by the same institutions as the
witnesses in question.

For the foregoing reasons, Aristocrat's motion in limine to
preclude the Bondholders from introducing into evidence
videotaped deposition testimony of three witnesses that reside
abroad is denied.

### CONCLUSION

For the foregoing reasons, the Bondholders' in limine
requests A, C, E, G, and H to exclude certain evidence are
GRANTED, in limine requests D, I, and J are DENIED, and in
limine requests B and F are GRANTED IN PART and DENIED IN PART.

---

the witnesses's absence in this case was procured by the Bondholders, but
rather, that the Bondholders have an affirmative obligation to attempt to
procure the foreign witness's attendance at trial.   The Court rejects this
backward reading of Garcia-Martinez.

[8] Aristocrat's argument appears to be better suited to a situation where a
deposition is used at trial pursuant to Rule 32(a)(4)(D) ("the party offering
the deposition could not procure the witness's attendance by subpoena"),
which does require the party offering the deposition to demonstrate an
inability to compel the witness to attend trial.   The logic of Aristocrat's
present argument would conflate the requirements of with Rule 32(a)(4)(D) and
Rule 32(a)(4)(B)).

Aristocrat's motions in limine numbers 1, 2, and 4 are GRANTED IN PART and DENIED IN PART while motions in limine numbers 3 and 5 are DENIED.  The parties are reminded that they are to appear for trial in courtroom 18B on October 5, 2009, at 9:30 a.m.

**SO ORDERED.**
**New York, New York**

September **28**, 2009

_Peter K. Leisure_

U.S.D.J.

Copies of this Opinion and Order have been e-mailed to:

Mark C. Hansen, Esq.
Kellogg, Huber, Hansen, Todd, Evans, & Figel, PLLC.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

Charles S. Gilman, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005

Evan A. Davis, Esq.
Cleary Gottlieb Steen & Hamilton L.L.P
One Liberty Plaza
New York, New York 10006

James I. McClammy, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017