**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARISTOCRAT LEISURE LIMITED,  )<br>  )<br>     Plaintiff and Counterclaim Defendant,  )<br>  )<br>v.  )<br>  )<br>DEUTSCHE BANK TRUST COMPANY AMERICAS,  )<br>as Trustee,  )<br>  )<br>     Defendant and Counterclaim Plaintiff,  )<br>  )<br>  )<br>KBC FINANCIAL PRODUCTS UK LTD, et al.,  )<br>  )<br>     Intervening Defendants and  )<br>     Counterclaim Plaintiffs.  )<br>  ) | Case No. 04 CV 10014<br>(PKL) (ECF case) |

**ARISTOCRAT LEISURE LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION REGARDING COMPLIANCE WITH WITHHOLDING TAX OBLIGATIONS**

## TABLE OF CONTENTS

BACKGROUND REGARDING AUSTRALIAN TAXES ............................................................ 4

BACKGROUND REGARDING THE PARTIES' CONFERRAL................................................ 6

ARGUMENT.................................................................................................................................. 7

    I.       The Indenture Permits ALL To Withhold the Taxed Bondholders'
             Tax Obligations from ALL's Payments of Pre-Judgment Interest ......................... 7

    II.      Settled Law Permits ALL To Withhold the Tax from the
             Judgments, and the Bondholders Will Not Be Prejudiced by the
             Requested Relief .................................................................................................... 9

CONCLUSION............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page

**Cases**

*Bowman v. Ford Motor Co.*, No. 80-1163, 1980 U.S. App. LEXIS 11565 (6th Cir. Dec. 10, 1980) ..................................................................................................10

*Hemelt v. United States*, 122 F.3d 204 (4th Cir. 1997) ....................................................10

*Josifovich v. Secure Computing Corp.*, No. 07-5469 (FLW), 2009 WL 2390611 (D.N.J. July 31, 2009) ........................................................................................10

*Martin v. H.M.B. Constr. Co.*, 279 F.2d 495 (5th Cir. 1960) .............................................9

*Newhouse v. McCormick & Co.*, 157 F.3d 582 (8th Cir. 1998) ........................................10

*Ramos v. Davis & Geck, Inc.*, 64 F. Supp. 2d 6 (D.P.R. 1999), *vacated on other grounds*, 224 F.3d 30 (1st Cir. 2000) ............................................................. 9-10

*Redfield v. Insurance Co. of North Am.*, 940 F.2d 542 (9th Cir. 1991) ...........................10

*Rivera v. Baker West, Inc.*, 430 F.3d 1253 (9th Cir. 2005) ...............................................10

*Tungseth v. Mutual of Omaha Ins. Co.*, 43 F.3d 406 (8th Cir. 1994) ...............................10

**Other Cases**

*Federal Commissioner of Taxation v. Century Yuasa Batteries Pty Ltd.* (1998) 98 A.T.C. 4380 ........................................................................................................4

**Treaties and Conventions**

Agreement between the Commonwealth of Australia and the Federal Republic of Germany for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital and to Certain Other Taxes (Nov. 24, 1972) ..........................................................5, 11

Convention between the Government of Australia and the Government of the United Kingdom of Great Britain and Northern Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and on Capital Gains (Aug. 21, 2003) ...............................5, 11

Convention between the Government of Australia and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income (August 6, 1982) ..............................................................................................................5, 11

Protocol Amending the Convention between the Government of Australia and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income of 6 August 1982 (May 12, 2003)..........5

**Statutes**

N.Y. C.P.L.R. § 5001(b) ..........2, 3, 4, 8

**Other Authorities**

Income Tax Assessment Act 1936 (Australia) ..........4, 5, 6, 12

Taxation Administration Act 1953 (Australia) ..........4-5, 12

Taxation Administration Regulations 1976 – Regulation 41 (Australia) ..........5

Aristocrat Leisure Limited ("ALL") respectfully submits this motion regarding its compliance with the mandatory Australian tax withholding obligations that ALL anticipates will apply to any pre-judgment interest included in this Court's final judgments.

The Bondholders[1] want ALL to pay directly to them, as part of the judgments, the same amount that ALL is legally required to withhold from pre-judgment interest and pay over to the Australian government. In essence, the Bondholders — who concede that this withholding is mandated by Australian law — are asking ALL to pay the same amount twice. ALL estimates this amount will be in the range of $6 to $9 million, depending on the amount of pre-judgment interest awarded by the Court and whether any of the Bondholders are exempt from the tax.

The Bondholders' demand for this duplicate payment is contrary to the express terms of the Indenture.[2] It also defies settled precedent under which courts routinely allow defendants to pay mandatory tax withholding directly to the government, in partial satisfaction of judgments against them.

The parties have separately briefed issues relating to the entry of judgment in this case and the appropriate amount of damages, and they await the Court's rulings on these matters. Although the parties dispute the amount of damages that should be awarded, they anticipate that

---

[1] Unless otherwise indicated, "Bondholders" means all purchasers of ALL convertible bonds and includes Alexandra Global Master Fund, Ltd. ("Alexandra"), Amaranth LLC ("Amaranth"), Calamos Advisors LLC ("Calamos"), CQS Convertible and Quantitative Strategies Master Fund ("CQS"), D.E. Shaw Investment Group, LLC ("D.E. Shaw"), Deephaven International Convertible Trading, Ltd. ("Deephaven"), KBC Financial Products UK Ltd. ("KBC FP"), KBC Investments Hong Kong Limited ("KBC HK"), certain KBC Alternative Investment Management Limited ("KBC AIM") funds, Lehman Brothers International (Europe) ("LBIE"), UFJ International Limited ("UFJ"), QVT Fund LP ("QVT"), Deutsche Bank AG, London Branch ("DBAGL"), and Deutsche Bank Trust Company Americas (the "Trustee").

[2] Indenture dated as of May 31, 2001, between ALL as Issuer and Bankers Trust Co. as Trustee ("Indenture"). For the Court's convenience, a copy of the Indenture is attached as Exhibit A to the Declaration of Daniel G. Bird in Support of ALL's Memorandum of Law in Support of its Motion Regarding Compliance with Withholding Tax Obligations (July 21, 2010) ("Bird Decl.").

the Court will issue judgments awarding damages to the Bondholders.[3]  In particular, the parties agree that some portion of the damages awarded will be attributable to pre-judgment interest that has accrued pursuant to N.Y. C.P.L.R. § 5001(b), although they dispute the amount of pre-judgment interest.[4]

The parties further agree that (1) ALL is required by Australian law, and permitted by international tax treaties, to withhold tax of 10% from any payment of pre-judgment interest to certain Bondholders (hereinafter, the "Taxed Bondholders"[5]), and to remit the amounts withheld directly to the Australian tax authorities; and (2) all or most of the Taxed Bondholders should be entitled, in their home countries, to a tax credit equal to the amount withheld, under tax treaties between those countries and Australia.

The Indenture expressly differentiates between (1) withholding taxes relating to "the principal of, and interest and premium (if any)[[6]] on, the Bonds," or relating to "deliveries of Ordinary Shares made on conversion of the Bonds," as distinct from (2) any other "tax, assessment or other governmental charge."  Indenture § 3.10.  Under § 3.10, the former are

---

[3] ALL objects to the entry of any judgment for the Non-Party Bondholders, as they have refused to provide adequate information for the calculation of any damages that may be owed them.  *See* ALL Mem. in Partial Opp. To the Motions of the Intervening Defendants, Deutsche Bank AG, London Branch, and Deutsche Bank Trust Co. Americas for Entry of Judgment at 3 & n.3 (Jan. 20, 2010) (Dkt. No. 351) ("ALL Opp."); *see also id.* at 1 n.1 (defining "Non-Party Bondholders").

[4] In general, the parties dispute the underlying damages amounts on which pre-judgment interest should be calculated, the date from which pre-judgment interest should be calculated for Bondholders with hedged positions, and whether coupon payments ALL previously deposited with the Court should stop accrual of pre-judgment interest.  *See generally* ALL Opp.

[5] Based on its understanding of their status, ALL believes that the Taxed Bondholders include Alexandra; Amaranth; Calamos; CQS; D.E. Shaw; Deephaven; KBC AIM; QVT; DBAGL, and the Trustee.

[6] It is undisputed that no premium is payable on the Bonds in this case.

2

classified as "Additional Amounts" for which ALL must compensate the Bondholders, but the latter are explicitly excluded from the Additional Amounts payable by ALL:

> [N]o Additional Amounts shall be payable for or on account of . . . (c) any tax, assessment or other governmental charge which is payable *otherwise* than by withholding or deduction from *payments of (or in respect of) principal of, or interest and premium (if any) on, the Bonds*.

*Id.* § 3.10(c) (emphases added).

As set forth in § 3.10, only "payments of the principal of, and interest . . . on[] the Bonds" and "deliveries of Ordinary Shares made on conversion" are to be made to Bondholders "free and clear of" Australian withholding taxes. *Id.* § 3.10. Thus, under § 3.10, only taxes withheld by ALL from payments of principal or interest *on the Bonds*, or from delivery of conversion shares, must be offset by payments of Additional Amounts to the Bondholders.

The dispositive question, then, is whether the withholding amounts at issue here are to be withheld from payments of Bond principal, from payments of interest on the Bonds, or from delivery of conversion shares. Plainly, they are not, and therefore ALL need not make any offsetting payments to the Bondholders.

Payment of pre-judgment interest under N.Y. C.P.L.R. § 5001(b) is not payment of Bond principal, nor is it delivery of conversion shares. It is payment of interest, but not interest *on the Bonds* — rather, it is payment of statutory interest on the Court's award of general or consequential damages (at the statutory rate of 9%, not the Bond Indenture rate of 5%). The amounts to be withheld by ALL are not withholding from the Bondholders' general damages (market value of conversion shares) or consequential damages (losses on short positions). They will not, even temporarily, reduce the amount of such damages by a single cent. Consequently, ALL's mandatory 10% withholding, per Australian law, from any award of pre-judgment interest

3

is a "tax, assessment or other governmental charge" which is expressly carved out of any obligation on ALL's part to pay Additional Amounts.

Accordingly, ALL respectfully moves this Court for an Order directing that (1) ALL may withhold the requisite tax from any damages awarded to the Taxed Bondholders and remit payment directly to the Australian tax authorities; and (2) to the extent that ALL appeals from any part of the Court's judgment, ALL may arrange to secure the judgment pending appeal in a manner that will enable ALL to comply with its withholding obligations under Australian law. The requested relief is consistent with the Indenture and settled law, and will not prejudice the Taxed Bondholders.  Moreover, the requested relief is necessary to avoid unfairly requiring ALL to shoulder the Taxed Bondholders' Australian tax obligations and effectively pay a 10% premium on the pre-judgment interest portions of the damages awards.

## BACKGROUND REGARDING AUSTRALIAN TAXES

Australia imposes a tax on any Bondholder who receives a payment that is "in the nature of interest," unless the Bondholder qualifies for an exemption.  *See* Australian Income Tax Assessment Act 1936 ("1936 Tax Act") §§ 128A(1AB)(a), 128B(1A), (2), (5).[7]  A payment is "in the nature of interest" if — like an award of New York statutory pre-judgment interest — the payment is based on a principal amount owed to another party and compensates that party for the use of its money.  *See Federal Commissioner of Taxation v. Century Yuasa Batteries Pty Ltd.* (1998) 98 A.T.C. 4380, 4383; *compare* N.Y. C.P.L.R. § 5001(b); ALL Opp. at 16 & n.19 (citing cases).  As the payer of taxable pre-judgment interest, ALL is required to withhold 10% of any payment of pre-judgment interest to a non-resident Bondholder and pay that tax to the Australian government, unless the Bondholder qualifies for an exemption from the tax.  *See* Australian

---

[7] The Appendix attached hereto contains excerpts of the sources of legal authority from Australia that are cited in this Motion.

4

Taxation Administration Act 1953 ("1953 Taxation Administration Act"), Sched. 1, §§ 12-245, 16-70; *see also id.* § 12-300; Taxation Administration Regulations 1976 – Reg 41.[8]

A Bondholder is exempt from the withholding tax — and ALL is therefore exempt from its 10% withholding requirement — if the Bondholder is either (i) a "superannuation fund for foreign residents" (*i.e.*, a pension fund) within the meaning of § 128B(3)(jb) of the 1936 Tax Act and that pension fund is not taxed on the interest in the home country, or (ii) a "financial institution" within the meaning of the 2003 Australia-U.S. Tax Treaty or the Australia-U.K. Tax Treaty. A "financial institution" under those treaties is defined as "a bank or other enterprise substantially deriving its profits by raising debt finance in the financial markets or by taking deposits at interest and using those funds in carrying on a business of providing finance." 2003 Australia-U.S. Tax Treaty, Art. 7(3)(b); Australia-U.K. Tax Treaty, Art. 11(3).

ALL understands that the parties agree on the following tax-related facts:

(1) all of the Bondholders reside outside of Australia;[9]

---

[8] Tax treaties between Australia and the United States, United Kingdom, and Germany permit Australia to assess a 10% tax on interest paid to non-residents. *See* Protocol Amending the Convention between the Government of Australia and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income of 6 August 1982, Art. 7(1), (2) (May 12, 2003) ("2003 Australia-U.S. Tax Treaty"); Convention between the Government of Australia and the Government of the United Kingdom of Great Britain and Northern Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and on Capital Gains, Art. 11(1)-(3) (Aug. 21, 2003) ("Australia-U.K. Tax Treaty"); Agreement between the Commonwealth of Australia and the Federal Republic of Germany for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital and to Certain Other Taxes, Art. 11(1) (Nov. 24, 1972) ("Australia-Germany Tax Treaty"). Treaties between those nations also provide that when a tax on a non-resident's interest income has been withheld in Australia, the non-resident may take a 100% tax credit against its United States, United Kingdom, or German taxes, as applicable to its residence. *See* Convention between the Government of Australia and the Government of the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Art. 22(1)(a) (Aug. 6, 1982) ("1982 Australia-U.S. Tax Convention"); Australia-U.K. Tax Treaty, Art. 22(2)(a); Australia-Germany Tax Treaty, Art. 22(2)(b)(iii).

(2) most or all of the Bondholders will be awarded some amount of pre-judgment interest by this Court;

(3) none of the Bondholders qualifies as a "superannuation fund for foreign residents" under § 128B(3)(jb) of the 1936 Tax Act, *see supra* note 9;

(4) some of the Bondholders may be "financial institutions" within the meaning of the Australia-U.K. Tax Treaty and therefore exempt from the tax by operation of that treaty (*e.g.*, KBC FP, UFJ, and LBIE), *see id.*;

(5) as non-residents, the Bondholders will owe a 10% tax to the Australian government on pre-judgment interest from ALL, unless they qualify for an exemption;

(6) as permitted by tax treaties with the United States, United Kingdom, and Germany, Australian law requires ALL to withhold a 10% tax on interest income from ALL's payment of pre-judgment interest to all of the remaining Taxed Bondholders, and to pay the withheld amount directly to the Australian tax authorities; and

(7) all or most of the Taxed Bondholders should be entitled to take a 100% tax credit in the amount withheld against their resident countries' taxes on that amount deemed to be income and allowed under most tax treaties with Australia.

### BACKGROUND REGARDING THE PARTIES' CONFERRAL

The Taxed Bondholders initially indicated that they would consent to the proposed withholding by ALL, upon the provision by ALL of a "certificate from the Australian taxing authorities that the withholding tax had been paid and a letter from Australian counsel opining that withholding tax must be paid upon the satisfaction of a judgment for prejudgment interest rendered in a U.S. court proceeding." E-Mail from T. Geiger to R. Beynon (July 6, 2010) (Bird Decl. Exh. E).

In subsequent correspondence, however, the Bondholders reversed course. They now apparently take the position that § 3.10 of the Indenture precludes ALL from withholding the mandatory tax amounts from its payments of the judgments and instead requires ALL to pay the full amount of the judgments to the Bondholders and additionally remit the withholding amounts

---

[9] *See* Letter from R. Beynon to E. Davis (June 29, 2010) (Bird Decl. Exh. B); Letter from R. Beynon to J. McClammy (June 29, 2010) (Bird Decl. Exh. C); E-mail from J. McClammy to R. Beynon (July 6, 2010) (Bird Decl. Exh. D).

to the Australian government on the Bondholders' behalf.  *See* E-mail from E. Davis to R. Beynon (July 14, 2010) (Bird Decl. Exh. F).  As the latest step in its efforts to resolve this issue without the need for a motion, ALL has provided a draft of this Memorandum to the Bondholders.  The Bondholders still have not agreed, however, that ALL may withhold the tax owed by the Bondholders on pre-judgment interest from payment of final judgment.

## ARGUMENT

Granting this motion will prevent manifest injustice to ALL.  If the motion is denied, ALL will unfairly be required to pay additional damages equivalent to the withholding tax:  it will pay $6 to $9 million to the Australian government to satisfy tax obligations owed by the Taxed Bondholders, while paying the same amount to these Bondholders to satisfy part of this Court's judgments.

**I.     The Indenture Permits ALL To Withhold the Taxed Bondholders' Tax Obligations from ALL's Payments of Pre-Judgment Interest**

The Bondholders' assertion that § 3.10 of the Indenture requires ALL to shoulder their Australian tax obligations is at odds with the Indenture's plain language.  Contrary to the Bondholders' position, the Indenture explicitly permits ALL to withhold tax from any payments of pre-judgment interest and to remit the withheld amount directly to the Australian tax authorities, without any obligation to compensate the Bondholders in the form of Additional Amounts.

Section 3.10 differentiates between two categories of tax payments.  The first category includes those withholding taxes that ALL, as Bond issuer, must pay on the Bondholders' behalf.  The Indenture provides that, to the extent ALL is required to withhold taxes from any "payments of the principal of, and interest and premium (if any) on, the Bonds," or from any "deliveries of Ordinary Shares made on conversion of the Bonds pursuant to the Bonds," then ALL "will pay

7

such additional amounts on the Bonds . . . as will result in receipt by the Holder of each Bond of such amounts as would have been received by such Bondholder had no such withholding or deduction been required." Indenture § 3.10.

In the second category are all other taxes. Section 3.10 expressly negates any obligation on ALL's part to pay any taxes other than those affirmatively specified by the Indenture, providing that "no Additional Amounts shall be payable for or on account of . . . any tax, assessment or other governmental charge which is payable *otherwise* than by withholding or deduction from payments of (or in respect of) principal of, or interest and premium (if any) on, the Bonds." *Id.* § 3.10(c) (emphasis added).

Thus, by its plain terms, the Indenture compels the conclusion that ALL may properly withhold the required tax from the judgments to be entered in this case, and need not make any offsetting payment to the Bondholders. Pre-judgment interest is not a payment for "principal of . . . the Bonds," "interest and premium (if any) on[] the Bonds," or "deliveries of Ordinary Shares made on conversion of the Bonds." *Id.* Rather, it is an amount required by New York statute to be paid on the award of damages ordered by this Court. *See* N.Y. C.P.L.R. § 5001(b).

Moreover, once the Bondholders converted their Bonds (in 2004-2006), they ceased to be "Holders" under the Indenture entitled to payments of Bond principal, Bond interest, or any "Additional Amounts" relating thereto under § 3.10. *See* Indenture § 13.02 ("[O]n the Conversion Date, . . . the rights of such converting Holder as a Holder with respect to the Bonds deposited for conversion shall cease."). Hypothetically, if the judgments to be entered for the Bondholders included unpaid amounts of Bond principal or interest, then ALL might have to withhold taxes from such amounts and make offsetting payments of Additional Amounts to the Bondholders. But the judgments to be entered here do not include any Bond interest, because all

outstanding Bond interest was previously paid, and they do not include Bond principal because the Bondholders converted their Bonds to shares and sought damages in their capacity as conversion shareholders.

The Bondholders suggest that, because § 3.10 requires that "delivery" of conversion shares be made "free and clear" of any tax withholding, this Court's judgment for "damages for failure to deliver" shares — including "compensation for delay" in the form of pre-judgment interest — "should be made free and clear of withholding." Bird Decl. Exh. F. That argument ignores § 3.10(c), which carves out taxes, assessments, and governmental changes arising from payments other than payments of Bond principal or interest. This Court is not ordering the "delivery" of shares — indeed, the Court expressly declined to do so. And, although the general damages reflect the market value of the conversion shares, no taxes are to be withheld from such damages. At issue here is ALL's obligation to withhold taxes, on behalf of the Taxed Bondholders, from the payment of statutorily imposed pre-judgment interest. Section 3.10 plainly imposes the obligation to pay that tax on the Bondholders, not ALL.

## II.    Settled Law Permits ALL To Withhold the Tax from the Judgments, and the Bondholders Will Not Be Prejudiced by the Requested Relief

Permitting ALL to withhold from the judgments Australia's 10% tax on the Bondholders is consistent with settled law. To the extent that a judgment debtor is required to withhold taxes from the payment of a judgment, courts routinely order that such withholding should be paid directly to the taxing authority in partial satisfaction of the judgment. *See Martin v. H.M.B. Constr. Co.*, 279 F.2d 495, 496 (5th Cir. 1960) (holding it was "proper" for the district court to order the clerk to use a portion of the judgment paid into court by the defendant to pay the applicable tax withholding due to the IRS, rather than to the plaintiff); *Ramos v. Davis & Geck, Inc.*, 64 F. Supp. 2d 6, 8-10 (D.P.R. 1999) (ordering the clerk "to withhold and forward to Puerto

9

Rico's Treasury Department" the appropriate tax withholding for "FICA and Puerto Rico income taxes"), *vacated on other grounds*, 224 F.3d 30 (1st Cir. 2000); *see also Bowman v. Ford Motor Co.*, No. 80-1163, 1980 U.S. App. LEXIS 11565, at *4-*5 (6th Cir. Dec. 10, 1980) (ordering on remand entry of a judgment providing that, *inter alia*, defendant was to "withhold the amount required by law to be withheld as taxes on [damages for future salary] for federal income and social security taxes and state and city taxes," and "pay over the balance of the [damages]").[10]

This approach is consistent with fundamental fairness. If ALL is not permitted to offset the judgments by amounts it pays to the Australian taxation authorities on behalf of the Taxed Bondholders, then such payments will become a premium on the amount of pre-judgment interest awarded by this Court. This Court should not enter judgment in a manner that would allow such an additional recovery by the Bondholders. *See Redfield v. Insurance Co. of N. Am.*, 940 F.2d 542, 549 (9th Cir. 1991) (tax withholding requirement not triggered because damages were not taxable to plaintiff, but defendant could obtain "relief from final judgment" if plaintiff "has received the full amount of his award from the [defendant's] payments and refunds or credits from various tax authorities in the aggregate" while the appeal was pending).

---

[10] Indeed, when courts evaluate the propriety of withholding taxes from a judgment, they typically "assume . . . that [the defendant] is obligated to withhold taxes from a judgment awarding damages" that are subject to withholding, and focus instead on the antecedent question — *i.e.*, whether the damages are, in fact, subject to withholding. *Tungseth v. Mutual of Omaha Ins. Co.*, 43 F.3d 406, 409 (8th Cir. 1994); *Newhouse v. McCormick & Co.*, 157 F.3d 582, 584-85 (8th Cir. 1998) ("The key question in this appeal is whether [plaintiff's damages] awards constitute 'wages,' thus triggering a withholding requirement on the part of [defendant]."); *see also Rivera v. Baker West, Inc.*, 430 F.3d 1253, 1260 (9th Cir. 2005) ("[B]ecause the settlement proceeds were properly classified as lost wages, the district court correctly deemed the proceeds subject to income tax withholding."); *Hemelt v. United States*, 122 F.3d 204, 210 (4th Cir. 1997) ("because the payments from [employer] to taxpayers and other class members arose out of their employment relationship, they fit within the statutory and regulatory definition of wages, and FICA taxes were properly withheld from the awards"); *Josifovich v. Secure Computing Corp.*, No. 07-5469 (FLW), 2009 WL 2390611, at *7 (D.N.J. July 31, 2009) ("Defendant is required to withhold applicable employment taxes from that portion of the settlement proceeds allocated to back pay and front pay.").

In addition, the Taxed Bondholders will not be prejudiced by the relief ALL seeks here. To the extent that they must pay taxes duly imposed by the Australian government on the income they receive in the form of pre-judgment interest, that is a cost of doing business from which neither ALL nor this Court has any reason to shield them. Moreover, as a practical matter, there should be no out-of-pocket impact on most of if not all of them, because of offsetting tax credits in their home countries.

The Taxed Bondholders resident in the United States, the United Kingdom, and Germany will be entitled to recover 100% of ALL's payments of their tax obligations as a tax credit against their respective tax obligations (as applicable). *See* 1982 Australia-U.S. Tax Convention, Art. 22(1)(a) ("[T]he United States shall allow to a resident or citizen of the United States as a credit against United States tax the appropriate amount of income tax paid to Australia."); Australia-U.K. Tax Treaty, Art. 22(2)(a) ("Australian tax payable under the laws of Australia and in accordance with this Convention, whether directly or by deduction, on income or chargeable gains from sources within Australia . . . shall be allowed as a credit against any United Kingdom tax computed by reference to the same income or chargeable gains by reference to which the Australian tax is computed."); Australia-Germany Tax Treaty, Art. 22(2)(b)(iii) (allowing the "Australian tax paid in accordance with this Agreement" to be used "as a credit against German tax on income payable in respect of . . . interest to which [Article 11(1)] applies").

## CONCLUSION

For the foregoing reasons, ALL respectfully requests that the Court enter an Order directing that (1) ALL may withhold from the judgments entered for the Taxed Bondholders any payments ALL is required to make under the 1936 Tax Act and the 1953 Taxation

Administration Act on pre-judgment interest awarded by the Court; and (2) to the extent that ALL appeals from any part of the Court's judgment, ALL may arrange to secure the judgment pending appeal in a manner that will enable ALL to comply with its obligations to pay, on behalf of the Taxed Bondholders, a 10% withholding tax on the pre-judgment interest portions of the damages awards.

Dated: July 21, 2010						Respectfully submitted,

						*/s/ Mark C. Hansen*
						Mark C. Hansen
						James M. Webster, III
						Rebecca A. Beynon
						KELLOGG, HUBER, HANSEN, TODD,
						  EVANS & FIGEL, P.L.L.C.
						1615 M Street, N.W.
						Suite 400
						Washington, DC  20036
						202-326-7900 (phone)
						202-326-7999 (fax)

						*Counsel for Plaintiff and Counterclaim*
						*Defendant Aristocrat Leisure Limited*