**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ARISTOCRAT LEISURE LIMITED, <br><br>   Plaintiff and Counterclaim Defendant, <br><br>v. <br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee, <br><br>   Defendant and Counterclaim Plaintiff, <br><br>KBC FINANCIAL PRODUCTS UK LTD, et al., <br><br>   Intervening Defendants and <br>   Counterclaim Plaintiffs. | Case No. 04 CV 10014 <br>(PKL) (ECF case) |

**ARISTOCRAT LEISURE LIMITED'S CONSOLIDATED REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION REGARDING COMPLIANCE**
**<u>WITH WITHHOLDING TAX OBLIGATIONS</u>**

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 3

    I.      The Bondholders Have No Right to Reimbursement for Tax
           Withheld from Pre-Judgment Interest ...................................................................... 3

           A.    *The Language of § 3.10 on Delivery of Conversion Shares
                    Is Irrelevant* ................................................................................................ 3

           B.    *ALL Did Not Promise Blanket Immunity from Withholding
                    Tax* ............................................................................................................... 5

    II.     The Bondholders' Withholding Taxes Are Not Recoverable as
           Damages .................................................................................................................... 7

    III.    Australia's Withholding Tax Indisputably Applies to Pre-Judgment
           Interest ...................................................................................................................... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Beggs v. Dougherty Overseas, Inc.*, 287 F.2d 80 (2d Cir. 1961) ...................................................... 9

*Home Sav. of Am., FSB v. United States*, 399 F.3d 1341 (Fed. Cir. 2005) ...................................... 8

*Kovacs v. Commissioner*, 100 T.C. 124 (1993), *aff'd*, 25 F.3d 1048 (6th Cir. 1994) ...................... 9

*Oddi v. Ayco Corp.*, 947 F.2d 257 (7th Cir. 1992) .......................................................................... 8

**STATUTES**

N.Y. C.P.L.R. § 5001 ...................................................................................................................... 3

N.Y. C.P.L.R. § 5001(a) .................................................................................................................. 7

**OTHER AUTHORITIES**

Income Tax Assessment Act 1936 (Australia) .............................................................................. 10

Income Tax Assessment Act 1936, § 128F (Australia) .................................................................. 6

Taxation Administration Act 1953 (Australia) ............................................................................. 10

The Bondholders[1] persist in asking this Court to force ALL to pay directly to the Bondholders, as part of the final judgments, the same amount that ALL is legally required to withhold from pre-judgment interest and pay over to the Australian Taxation Office (currently estimated in the range of $6 to $9 million). In essence, the Bondholders are asking ALL to pay the same amount twice, with the result that the Bondholders would receive a 10% premium on the pre-judgment interest component of the final judgments. There is no legal or factual support for such an unreasonable and unfair result.

The Bondholders' August 9, 2010 papers in opposition to ALL's motion concede the two most crucial points made by ALL in its previous submissions to the Court:

(1)   *Pre-judgment interest on damages is not interest on the Bonds*. As set forth in ALL's opening papers (ALL Mot. at 2-3, 7-9), the Indenture provides for ALL to pay Additional Amounts reimbursing the Bondholders for tax withheld from, *inter alia*, payments of interest "on the Bonds." Indenture § 3.10. But in their opposition papers, the Bondholders do not claim that statutory pre-judgment interest on damages awarded by the Court for ALL's failure to deliver conversion shares is the same thing as interest "on the Bonds" under the Indenture. Thus, although § 3.10 provides for payment of Additional Amounts based on *Bond interest*, it lends no support to the Bondholders' position with respect to *pre-judgment interest*.

(2)   *Reimbursing the Bondholders for withholding tax on pre-judgment interest would not put them in the same economic position as if ALL had not breached*. In their July 22, 2010 letter to this Court (at 2), the Bondholders argued that ALL should reimburse them for

---

[1] Capitalized terms have the meanings given in ALL's memorandum of law in support of its motion regarding compliance with withholding tax obligations (served July 21, 2010) ("ALL Mot."). The Intervening Defendants' Memorandum of Law is cited herein as "Bondholder Opp." The Memorandum of Law submitted by DBAGL, cited herein as "DBAGL Opp.," is in substance the same as the Intervening Defendants' Memorandum of Law.

withholding tax on pre-judgment interest in order to put them in the "same economic position" as if ALL had not breached.  But as ALL pointed out in its July 25, 2010 letter to the Court (at 1), if ALL had delivered conversion shares, the Bondholders would have been solely responsible for all taxes on any interest, dividends, gains, or other income subsequently generated by those shares.  It is undisputed that pre-judgment interest is the statutory substitute for such subsequently generated income.  The Bondholders' opposition papers do not claim that, absent breach, ALL would have reimbursed them for any taxes on such subsequently generated income.  Thus, not surprisingly, the Bondholders have abandoned their previous contention that reimbursement of withholding tax on pre-judgment interest is necessary to put them in the same economic position as if ALL had not breached — indeed, such reimbursement would plainly (and unjustifiably) put them in a better position, by approximately $6 to $9 million.

Having conceded these crucial points, the Bondholders are left with three meritless arguments:

(1) The Bondholders argue that tax withholding from pre-judgment interest on damages for breach is somehow the same thing as tax withholding from "deliveries" of shares "on conversion of the Bonds" under § 3.10 of the Indenture — even though no shares were ever delivered (so nothing can be withheld from them), and *even though there has not been and will not be any tax withholding from the general damages awarded for failure to deliver the shares*.

(2) The Bondholders argue that ALL promised them that no tax withholding of any kind would apply to them — even though there is no such promise in the Indenture or the Offering Memorandum, and in fact both documents provide to the contrary.

(3) The Bondholders argue that ALL should have submitted an expert declaration regarding Australia's withholding tax laws.  At no point during the parties' numerous prior

2

communications on this issue did the Bondholders dispute that Australian tax law mandates 10% withholding from pre-judgment interest. Even now, the Bondholders do not actually argue that the 10% withholding is not mandatory under Australian tax law. Their argument is simply that ALL should have submitted a declaration on this previously undisputed point — an argument that is rendered moot by ALL's inclusion of a declaration from Stephen Chubb of Ernst & Young, ALL's Australian tax adviser and tax agent.[2]

## ARGUMENT

### I. The Bondholders Have No Right to Reimbursement for Tax Withheld from Pre-Judgment Interest

A.  *The Language of § 3.10 on Delivery of Conversion Shares Is Irrelevant*

The Bondholders concede, as they must, that § 3.10(c) of the Indenture requires the Bondholders to pay "any tax . . . which is payable otherwise than by withholding or deduction *from payments of (or in respect of)* principal of, or *interest* and premium (if any) *on, the Bonds*." Indenture § 3.10(c) (emphases added). As noted above, the Bondholders do not and cannot dispute that pre-judgment interest under N.Y. C.P.L.R. § 5001 is *not* a "payment[] of (or in respect of) principal of, or interest and premium (if any) on, the Bonds." *Id.* It inexorably follows that the Indenture does not require ALL to reimburse the Bondholders for the Australian withholding tax that applies to their receipt of pre-judgment interest. *See* ALL Mot. at 2-3, 7-9.

In an effort to side-step this plainly dispositive contractual provision, the Bondholders seize on language in § 3.10 which provides that "deliveries" of conversion shares "are to be made free and clear" of certain tax withholding.[3] The Bondholders claim that any distinction

---

[2] See attached Declaration of Mr. Stephen Chubb in Support of Aristocrat Leisure Limited's Motion Regarding Compliance with Withholding Tax Obligations ("Chubb Decl.").

[3] Section 3.10 provides in pertinent part that:

3

between pre-judgment interest, on the one hand, and the delivery of shares that would have occurred if ALL had not breached, on the other hand, is "baseless." Bondholder Opp. at 1. The Bondholders thus contend that ALL must reimburse them for withholding tax on pre-judgment interest, because — inexplicably — they say there is no difference between the delivery of conversion shares and pre-judgment interest payable on damages for breach of the obligation to deliver such shares.

Relying on the "free and clear" language with respect to "deliveries" of conversion shares, the Bondholders draw the (at best) attenuated inference that "for payments of interest on the Bonds *or on account of their conversion*, Aristocrat is responsible for paying additional amounts of money necessary to put bondholders in the same position as if withholding tax had not been required." *Id*. at 2 (emphasis added). The Bondholders "explain" this by adding that "[p]re-judgment interest here is money paid on damages for failure to convert and is therefore a *payment on account of such conversion*." *Id*. (emphasis added).

In essence, the Bondholders are attempting to equate two quite distinct things: (1) withholding tax on ALL's delivery of conversion shares in compliance with the Indenture (which delivery never occurred), and (2) withholding tax on statutory pre-judgment interest (awarded by

---

All payments of the principal of, and interest and premium (if any) on, the Bonds and all *deliveries of Ordinary Shares made on conversion of the Bonds pursuant to the Bonds* are to be made *free and clear* of, and without withholding or deduction for, any taxes duties, assessments, other governmental charges ("Taxes") imposed, levied, collected, withheld or assessed by or within Australia . . . , *unless such withholding or deduction is required by law* . . . . In the event that any such withholding or deduction is so required, the Issuer will pay such additional amount on the Bonds (all such additional amounts being referred to herein as "Additional Amounts") as will result in receipt by the Holder of each Bond of such amounts as would have been received by such Bondholder had no such withholding or deduction been required, *except that no Additional Amounts shall be payable for or on account of: . . . (c) any tax, assessment or other governmental charge which is payable otherwise than by withholding or deduction from payments of (or in respect of) principal of, or interest and premium (if any) on, the Bonds*[.]

(Emphases added.)

4

the Court) based on general damages (awarded by the Court) for ALL's breach of its obligation to convert pursuant to the Indenture.

ALL did not at any time deliver conversion shares, so it cannot be said that ALL is seeking to withhold anything from "deliveries of" conversion shares. While it could be argued that the Bondholders' general damages are a substitute for conversion shares, it has never been suggested by ALL, the Bondholders, or anyone else that the general damages (as opposed to the pre-judgment interest) to be awarded by the Court are subject to withholding tax. ALL is not seeking leave to withhold any tax from the Bondholders' general damages. In other words, insofar as the Indenture provides for the Bondholders to receive conversion shares or their monetary equivalent without tax withholding, that is exactly what will happen if ALL's motion is granted.

Moreover, nothing in § 3.10 requires ALL to pay taxes due "on account of" the Bondholders' efforts to convert. As noted above, the Indenture requires ALL to reimburse for taxes withheld from "deliveries" of conversion shares. The Indenture does not provide, in either words or substance, that ALL must reimburse for taxes withheld from *any payment* "on account of" conversion. In fact, the "on account of" language in § 3.10 supports ALL, not the Bondholders. *See* Indenture § 3.10 (providing that "no Additional Amounts shall be payable" by ALL "*on account of* . . . (c) any tax . . . payable otherwise than by withholding or deduction from payments of (or in respect of) principal of, or interest and premium (if any) on, the Bonds") (emphasis added). ALL submits that the plain language of the Indenture should be followed.

      B.    *ALL Did Not Promise Blanket Immunity from Withholding Tax*

According to the Bondholders, the Indenture contained a blanket provision that ALL "would compensate bondholders *for any withholding tax that was actually required*."

5

Bondholder Opp. at 1 (emphasis added).  In fact, as demonstrated above and in ALL's opening papers (ALL Mot. at 2-3, 7-8), the Indenture carefully delineated between withholding tax situations where Additional Amounts would be payable by ALL and those where no such amounts were required, including in this case.

The Bondholders' argument (at 3) based on the Offering Memorandum fares no better. The Offering Memorandum explicitly put the Bondholders on notice that, as a general matter, interest payments would be subject to 10% withholding:

> Payments of interest to a non-resident not carrying on a business in Australia through a permanent establishment *will generally be subject to interest withholding tax*, which is imposed at a rate of 10%.

Geiger Decl. Exh. 1, at 114 (emphasis added).  Thus, the Bondholders could not reasonably expect to be wholly free from liability for any withholding tax in any event.

The Offering Memorandum also stated that interest paid to non-residents would be exempt from withholding tax "if" an exemption provided by § 128F of the Australia's 1936 Tax Act applies, and that ALL "intends" to comply with § 128F.  *Id.*  As set forth in the accompanying Declaration of Stephen Chubb, § 128F of the 1936 Tax Act exempts from Australian tax withholding "interest paid by a company in respect of a debenture or debt interest in the company."  1936 Tax Act § 128F; *see* Chubb Decl. ¶ 13.  Thus, even if the conditional language of the Offering Memorandum ("if" and "intends") were an enforceable commitment to ensure exemption from any withholding (which it is not), that language is limited to withholding from interest paid "in respect of" a "debenture or debt interest" held by a Bondholder — not pre-

judgment interest paid on damages awarded in litigation to former Bondholders who converted their bonds into shares.  *See* Chubb Decl. ¶ 13.[4]

## II.     The Bondholders' Withholding Taxes Are Not Recoverable as Damages

The Bondholders argue (at 3) that ALL must shoulder their Australian tax burden because, in the absence of ALL's breach, ALL "would have had to bear the burden of any withholding tax under Australian law."  They go on to claim (at 4) that ALL must pay their tax burden because "it was . . . foreseeable to [ALL] that its breach of the Indenture would deny Bondholders the tax benefits set forth therein."

As an initial matter, the Bondholders have not been denied any tax benefits afforded them under the Indenture.  As ALL has explained, the Indenture required ALL to pay, on the Bondholders' behalf, only those taxes resulting from any "payments of the principal of, and interest and premium (if any) on, the Bonds," or from any "deliveries of Ordinary Shares made on conversion of the Bonds pursuant to the Bonds."  Indenture § 3.10.

As the Bondholders have conceded, pre-judgment interest is not a payment for "principal of . . . the Bonds," "interest and premium (if any) on[] the Bonds," or "deliveries of Ordinary Shares made on conversion of the Bonds," *id.*, but is an amount required by New York statute to be paid on the award of damages ordered by this Court, *see* N.Y. C.P.L.R. § 5001(a).  Consequently, ALL's motion does not seek to "shift" any tax obligation owed under the Indenture to the Bondholders; it simply seeks a ruling that it may withhold the requisite tax from any damages awarded to the Bondholders and remit payment directly to the Australian tax

---

[4] Indeed, the Bondholders concede that they no longer have any interest as Bondholders in ALL. *See* ALL Mot. at 8-9; Indenture § 13.02 ("[O]n the Conversion Date, . . . the rights of such converting Holder as a Holder with respect to the Bonds deposited for conversion shall cease.").

authorities, as required by law.  *See* ALL Mot. at 4-11.[5]  In no sense does ALL profit from this compliance with its obligations under Australian tax law.

The Bondholders wrongly claim (at 4) that they are entitled to a "gross up" in their damages to cover the withholding tax.  The cases on which the Bondholders rely — which have *never* been cited by a state or federal court in New York — are inapposite.  As the Seventh Circuit has emphasized:  "Generally[,] courts *do not* increase damages to compensate for expected tax liability on the damage award."  *Oddi v. Ayco Corp.*, 947 F.2d 257, 267 (7th Cir. 1992) (emphasis added).

Courts have (on rare occasions) departed from this rule only when the amount at issue "compensates a plaintiff for lost monies that *would not have been taxable*."  *Home Sav. of Am., FSB v. United States*, 399 F.3d 1341, 1356 (Fed. Cir. 2005) (emphasis added); *accord Oddi*, 947 F.2d at 267.  That is plainly not the case here.  As noted above, it is undisputed that if ALL had delivered shares on the conversion date, the Bondholders would have been solely responsible for all taxes on any interest, dividends, gains, or other income subsequently generated by *those shares*.[6]  Pre-judgment interest, in essence, substitutes for such subsequently generated income, so the Bondholders must pay tax on it just as they would have paid the tax on any income

---

[5] Thus, it makes no difference whether or not DBAGL and some of the other Bondholders can, in fact, take advantage of the tax credit for paying Australia's withholding tax.  *See* ALL Mot. at 11; Bondholder Opp. at 5 n.5; DBAGL Opp. at 1-2.  As a threshold matter, the Bondholders must comply with applicable tax laws wherever they do business; no cognizable injury arises from their obligation to do so.

[6] For example, the Bondholders acknowledge (at 3) that if they had received conversion shares from ALL, they would have been responsible for the tax on any subsequent dividends on the shares.  The Bondholders go on to suggest that this does not affect their argument that pre-judgment interest is the same as delivery of conversion shares.  Even if this argument made sense (which it does not) it would be beside the point.  Regardless of whether post-conversion dividends are subject to withholding tax in particular, they are income which is generally subject to taxation in some form, and the liability for such taxation rests with the Bondholders, not with ALL.

8

generated by conversion shares.[7]  *See Kovacs v. Commissioner*, 100 T.C. 124 (1993), *aff'd*, 25 F.3d 1048 (6th Cir. 1994).

The other case cited by the Bondholders, *Beggs v. Dougherty Overseas, Inc.*, 287 F.2d 80 (2d Cir. 1961), likewise does not support their position.  There, the parties' contract expressly contemplated that the plaintiffs would be employed for a period of time sufficient to warrant exemption of their foreign-earned income from U.S. income tax.  However, the defendant's breach of the employment agreement cut short plaintiffs' employment, resulting in foreseeable U.S. income tax liability.  *See id.* at 83.  Here, by contrast, the Indenture expressly provided that ALL would *not* be obligated to pay any taxes other than those affirmatively specified by the Indenture, stating that "no Additional Amounts shall be payable for or on account of . . . any tax, assessment or other governmental charge which is payable *otherwise* than by withholding or deduction from payments of (or in respect of) principal of, or interest and premium (if any) on, the Bonds."  Indentur*e* § 3.10(c) (emphasis added).

## III.    Australia's Withholding Tax Indisputably Applies to Pre-Judgment Interest

The Bondholders assert for the first time that ALL has not established that Australian law actually imposes withholding tax on pre-judgment interest awards.  Although the parties have had numerous communications regarding this matter, the Bondholders have not previously disputed this point.  ALL submits herewith the declaration of its Australian tax advisor, which disposes of the Bondholders' argument.  *See* Chubb Decl. ¶¶ 1-15.  Notably, the Bondholders cite no authority even suggesting that Australia's withholding tax obligations are not mandatory

---

[7] The Bondholders' blanket assertion (at 4) that they "would not have had to pay withholding tax under the terms of the Indenture" is contrary to the express terms of the Indenture and, at best, misapprehends the Offering Memorandum.  *See supra* Part I; ALL Mot. at 2-3, 7-9.

9

in the case of pre-judgment interest.  They could of course have submitted evidence on Australian tax law contradicting ALL's position but have chosen not to do so.

## CONCLUSION

For the foregoing reasons, ALL respectfully requests that the Court enter an Order directing that (1) ALL may withhold from the judgments entered for the Taxed Bondholders any payments ALL is required to make under the 1936 Tax Act and the 1953 Taxation Administration Act on pre-judgment interest awarded by the Court; and (2) to the extent that ALL appeals from any part of the Court's judgment, ALL may arrange to secure the judgment pending appeal in a manner that will enable ALL to comply with its obligations to pay, on behalf of the Taxed Bondholders, a 10% withholding tax on the pre-judgment interest portions of the damages awards.

Dated:  August 13, 2010

Respectfully submitted,

*/s/ Mark C. Hansen*
Mark C. Hansen
James M. Webster, III
Rebecca A. Beynon
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, DC  20036
202-326-7900 (phone)
202-326-7999 (fax)

*Counsel for Plaintiff and Counterclaim Defendant Aristocrat Leisure Limited*