UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARISTOCRAT LEISURE LIMITED,

           Plaintiff,

 - against -

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee,

           Defendant,

KBC FINANCIAL PRODUCTS UK LTD,
KBC INVESTMENTS HONG KONG LTD,
KBC ALPHA MASTER FUND SPC KBC
CONVERTIBLE ARBITRAGE FUND, KBC
ALPHA MASTER FUND SPC KBC
CONVERTIBLE OPPORTUNITIES
FUND, KBC ALPHA MASTER FUND
SPC KBC MULTI-STRATEGY
ARBITRAGE FUND, KBC
CONVERTIBLES MAC 28
LIMITED, MELODY IAM LIMITED,
AMARANTH LLC,
ALEXANDRA GLOBAL MASTER FUND,
LTD., UFJ INTERNATIONAL PLC,
DEEPHAVEN INTERNATIONAL
CONVERTIBLE TRADING, LTD.,
CALAMOS ADVISORS LLC ON BEHALF
OF CALAMOS GROWTH AND INCOME
FUND, CALAMOS GLOBAL GROWTH
AND INCOME FUND AND CERTAIN
OTHER INSTITUTIONAL CLIENTS,
CQS CONVERTIBLE AND
QUANTITATIVE STRATEGIES
MASTER FUND LTD., D.E. SHAW
INVESTMENT GROUP, LLC, D.E.
SHAW VALENCE INTERNATIONAL,
INC, QVT FUND LP, LEHMAN
BROTHERS INTERNATIONAL
(EUROPE), DEUTSCHE BANK AG,
LONDON BRANCH,

       Intervening Defendants.



**OPINION AND ORDER**

04 Civ. 10014  (PKL)

## <u>APPEARANCES</u>

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, PLLC
Mark C. Hansen, Esq.
Michael K. Kellogg, Esq.
Rebecca A. Beynon, Esq.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

<u>Attorneys for Plaintiff</u>


CAHILL GORDON & REINDEL LLP
Charles A. Gilman, Esq.
80 Pine Street
New York, NY 10005
<u>Attorney for Defendant Deutsche Bank Trust Company Americas</u>


CLEARY GOTTLIEB STEEN & HAMILTON LLP
Evan A. Davis, Esq.
One Liberty Plaza
New York, New York 10006

<u>Attorney for Intervening Defendants, other than Deutsche Bank
AG, London Branch</u>


DAVIS POLK & WARDWELL LLP
James I. McClammy, Esq.
450 Lexington Avenue
New York, New York 10017

<u>Attorneys for Intervening Defendant, Deutsche Bank AG, London
Branch</u>

**LEISURE**, **District Judge**:

Plaintiff, Aristocrat Leisure Ltd. ("Aristocrat") moves post-trial for an order directing that (1) Aristocrat may withhold from the final judgments entered for certain of the intervening defendant bondholders 10% of the pre-judgment interest awarded by the Court to comply with Australian tax laws; and (2) to the extent that Aristocrat appeals from any part of the Court's judgment, Aristocrat may secure the judgment pending appeal in a manner that will enable Aristocrat to comply with its obligations to pay, on behalf of certain of the intervening defendants, a 10% withholding tax on the pre-judgment interest portions of the damages award.  For the reasons set forth below, Aristocrat's motion is GRANTED.

## BACKGROUND

The Court assumes familiarity with the facts and allegations as stated in the Court's many prior decisions in this action.[1]  This case arises out of Aristocrat's issuance of

---

[1] See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., -- F. Supp. 2d --, 2010 WL 2976528 (S.D.N.Y. 2010) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 262 F.R.D. 348 (S.D.N.Y. 2009) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2009 WL 3321047 (S.D.N.Y. Oct. 8, 2009) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) (Leisure, J.);  Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 262 F.R.D. 293 (S.D.N.Y. 2009) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 618 F. Supp. 2d 280 (S.D.N.Y. 2009) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2007 U.S. Dist. LEXIS 9521 (S.D.N.Y. Feb. 5, 2007) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,

3

US$130,000,000 of 5% convertible bonds, due May 2006, to qualified institutional buyers.  The intervening defendant bondholders ("Bondholders"),[2] who own a substantial majority of the bonds at issue in this case, are various corporations organized in the United States and abroad, other than Australia. (See First Am. Answer & Countercl. of Intervening Defs. 2-3.)

A jury trial commenced on October 5, 2009, where the sole issue of fact to be resolved was whether Aristocrat proved its

No. 04 Civ. 10014, 2007 U.S. Dist. LEXIS 9517 (S.D.N.Y. Feb. 5, 2007) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2006 U.S. Dist. LEXIS 80055 (S.D.N.Y. Nov. 2, 2006) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2006 U.S. Dist. LEXIS 34709 (S.D.N.Y. May 30, 2006) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 426 F. Supp. 2d 125 (S.D.N.Y.2005) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2005 U.S. Dist. LEXIS 16788 (S.D.N.Y. Aug. 12, 2005) (Leisure, J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., No. 04 Civ. 10014, 2005 U.S. Dist. LEXIS 5378 (S.D.N.Y. Mar. 30, 2005) (Leisure, J.).

[2]   Unless noted otherwise, the term "Bondholders" is used in this Opinion and Order to refer to all purchasers of Aristocrat's convertible bonds.
     The intervening defendant Bondholders are Alexandra Global Master Fund, Ltd. ("Alexandra"), Amaranth LLC ("Amaranth"), Calamos Advisors LLC ("Calamos"), CQS Convertible and Quantitative Strategies Master Fund("CQS"), D.E. Shaw Investment Group, LLC and D.E. Shaw Valence International, Inc. (collectively, "D.E. Shaw"), Deephaven International Convertible Trading, Ltd. ("Deephaven"), KBC Financial Products UK Ltd. ("KBC FP"), KBC Investments Hong Kong Limited ("KBC HK"), five KBC Alternative Investment Management Limited ("KBC AIM") funds—KBC Alpha Master Fund spc KBC Convertible Arbitrage Fund ("ARB"), KBC Convertibles MAC 28 Limited ("MAC 28"), Melody IAM Limited ("Melody"), KBC Alpha Master Fund spc KBC Multi-Strategy Arbitrage Fund ("Multi"), and KBC Alpha Master Fund spc KBC Convertible Opportunities Fund ("OPPS")—Lehman Brothers International (Europe) ("Lehman"), UFJ International Limited ("UFJ"), QVT Fund LP ("QVT"), and Deutsche Bank AG London Branch ("DBAGL").

affirmative defense that certain Bondholders[3] unreasonably failed to mitigate their consequential damages by keeping open their short positions in Aristocrat stock after Aristocrat's breach of the Indenture.[4]  On October 22, 2009, the jury reached a verdict that Aristocrat did not meet its burden of proving its affirmative defense.  (See Special Verdict Form, dkt. no. 324.)

After trial, Aristocrat moved for judgment as a matter of law pursuant to Rule 50(b) or, alternatively, for a new trial pursuant to Rule 59.  The Court denied both motions by Opinion and Order dated July 28, 2010.  See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., -- F. Supp. 2d --, 2010 WL 2976528, at *20 (S.D.N.Y. 2010) (Leisure, J.).  Bondholders also moved post-trial for entry of partial judgment pursuant to Rule 54(b) on their counterclaims for counter-declaratory relief with respect to the meaning of the Indenture and for breach of contract, and asked the Court to retain their previously-stayed counterclaims for violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 and breach of the implied covenant of good faith and fair dealing.  The Court denied

---

[3] Not all Bondholders who held short positions in Aristocrat stock sought consequential damages at trial.  The Bondholders who sought, and were awarded, consequential damages at trial are:  Alexandra, Deephaven, KBC FP, KBC HK, the five KBC AIM funds (ARB, MAC 28, Melody, Multi, and OPPS), and UFJ.  Bondholders who held a short position in Aristocrat stock but did not seek consequential damages at trial are:  Amaranth, CQS, DBAGL, D.E. Shaw, Lehman, and QVT.  The sole Bondholder who did not hedge is Calamos.

[4] The term "Indenture" refers to the May 31, 2001 indenture agreement, pursuant to which the convertible bonds were issued.

Bondholders' motion, dismissed Bondholders' counterclaims, and held that final, rather than partial, judgment was appropriate. Id. at *21-23.  The Court also denied a post-trial motion brought by defendant, Deutsche Bank Trust Company Americas (the "Trustee"), for final judgment in favor of five non-party bondholders, pending the exchange of discovery.  Id. at *37. The Court made a number of determinations with respect to the calculation of Bondholders' judgments, including, inter alia, that, pursuant to Sections 5001 and 5004 of the New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), pre-judgment interest on general damages for all Bondholders shall accrue at an interest rate of 9% as of each Bondholder's conversion date. Id. at *33.

Aristocrat now moves for an order directing that (1) Aristocrat may withhold from the final judgments entered for certain of the intervening defendant bondholders 10% of the statutory pre-judgment interest awarded by the Court to comply with Australian tax laws; and (2) to the extent that Aristocrat appeals from any part of the Court's judgment, Aristocrat may secure the judgment pending appeal in a manner that will enable Aristocrat to comply with its obligations to pay, on behalf of certain of the intervening defendants, a 10% withholding tax on the pre-judgment interest portions of the damages award. (Aristocrat's Mem. of Law in Supp. of Its Mot. Regarding

Compliance With Withholding Tax Obligations ("Aristocrat's Mem.") 11-12.)  Aristocrat estimates that this 10% withholding tax will be in the range of $6 to $9 million, depending on the final amount of pre-judgment interest awarded and whether certain Bondholders are exempt from the tax.  (Id. 1.)

The Court first addresses the Australian tax laws at issue in this case.  Then the Court interprets the parties' tax withholding obligations under the Indenture and Offering Memorandum.

### DISCUSSION

Aristocrat contends that withholding 10% from the pre-judgment interest awarded to certain Bondholders is consistent with Australian tax laws, as well as the Indenture and Offering Memorandum in this case.  Bondholders oppose Aristocrat's motion on the grounds that (a) Aristocrat has not demonstrated that Australian tax law requires this withholding, (b) the Indenture and Offering Memorandum preclude Aristocrat from withholding taxes from pre-judgment interest, and (c) even if the terms of the Indenture and Offering Memorandum do not address withholding taxes for pre-judgment interest, Aristocrat still must pay Bondholders for any damages sustained from breaching the agreement to provide shares upon conversion free from withholding taxes.  (Intervening Defs.' Mem. of Law In Opp'n to

7

Aristocrat's Mot. Regarding Compliance With Withholding Tax Obligations ("Bondholders' Opp'n") 1-2.)

First, the Court addresses whether Australian tax laws indeed require Aristocrat to pay the Australian government taxes on the pre-judgment interest awarded to certain Bondholders in this case.  Second, having determined that Australian tax law obligates Aristocrat to pay the Australian government taxes in the amount of 10% of the pre-judgment interest awarded to certain Bondholders, the Court analyzes whether this 10% tax payment may be deducted from the pre-judgment interest that Aristocrat must pay those Bondholders under N.Y. C.P.L.R. §§ 5001 and 5004 or whether Aristocrat must pay the full amount of pre-judgment interest to those Bondholders and satisfy its Australian tax obligations through separate funds.

## I. Australian Tax Law Obligates Aristocrat to Withhold 10% of the Pre-Judgment Interest Awarded to Taxed Bondholders

In its opening brief, Aristocrat represents that the parties do not dispute that Aristocrat is required under Australian law, and permitted by international tax treaties, to withhold 10% from any payment of pre-judgment interest to certain non-exempt Bondholders—believed by Aristocrat to be Alexandra, Amaranth, Calamos, CQS, D.E. Shaw, Deephaven, KBC AIM, QVT, DBAGL, and the Trustee ("Taxed Bondholders")—and remit

8

the amounts withheld directly to the Australian tax authorities.
(Aristocrat's Mem. 2 & n.5.)  Aristocrat further represents that
the parties agree that all or most of the Bondholders should be
entitled to a tax credit in their home countries equal to the
amount withheld under tax treaties between those home countries
and Australia.  (Id. 2.)  Bondholders' opposition briefs,[5]
however, make clear that there is no agreement between the
parties as to the tax withholding requirements under Australian
law and the tax credits that Taxed Bondholders may be entitled
to in their home countries.  (Bondholders' Opp'n 5-6 & n.5.)


   A. Parties' Arguments

     Bondholders state that Aristocrat does not meet its burden
of demonstrating that Australian tax law imposes withholding tax
upon pre-judgment interest because Aristocrat does not proffer
"the testimony of an expert on Australian tax law in support of
its interpretation that withholding tax is mandated by
Australian law" and "fails to cite any authority for the
proposition that pre-judgment interest is subject to withholding
tax."  (Id. 5 (emphasis in original).)  Aristocrat refutes this
contention in its reply brief by enclosing a declaration from

---

[5] Bondholder DBAGL, who is represented by separate counsel, "joins in, and
expressly incorporates" the arguments in the brief in opposition to
Aristocrat's tax withholding motion submitted by the remaining Bondholders.
(DBAGL Mem. of Law in Opp'n to Aristocrat's Mot. Regarding Compliance With
Withholding Tax Obligations ("DBAGL Opp'n") 1.)

Stephen Chubb, a partner in an Australian office of Ernst & Young, who serves as Aristocrat's Australian tax advisor and tax agent. (See Decl. of Mr. Stephen Chubb In Supp. of Aristocrat's Mot. Regarding Compliance with Withholding Tax Obligations ("Chubb Decl.") ¶ 1.) Mr. Chubb, a recipient of a Masters of Tax Law and Bachelor of Economics from the University of Sydney, is a member of the Institute of Chartered Accountants of Australia and has been a partner at Ernst & Young, which is a registered tax agent in Australia, for over ten years, rendering him qualified to give tax advice in Australia. (Id. ¶ 2.)

Mr. Chubb declares that "Australia imposes a tax on a non-resident, unless the non-resident qualifies for an exemption, who receives a payment from an Australian tax resident . . . that is interest or 'in the nature of interest' and represents income which is derived by the non-resident for Australian tax purposes." (Id. ¶ 6 (citing Australian Income Tax Assessment Act 1936 ("1936 Tax Act") §§ 128A(1AB)(a), 128B(1A), (2), (5)).) Mr. Chubb further states that the Australian government collects the tax by "imposing on the payer . . . an obligation to withhold and remit the tax." (Id.) "An entity that fails to withhold . . . is liable to a penalty . . . equal to the amount that the entity failed to withhold" and, generally, "the onus is on the payer to give evidence to the Commissioner of Taxation

10

that . . . an obligation to withhold an amount of tax from the payment does not exist."  (Id.)

The Australian Taxation Administration Act 1953 (the "1953 Tax Act") and Regulation 41 of the Australian Taxation Administration Regulations 1976 ("Regulation 41") require a payer of interest to withhold 10% of the amount of interest and pay it to the Australian Tax Commissioner.  See 1953 Tax Act, vol. 2, sched. 1, subdiv. 12-F, §§ 12-245, 12-250, 12-255 & subdiv. 16-B § 16-70(1); Regulation 41; Chubb Decl. ¶ 6.  The 1936 Tax Act defines interest as "an amount . . . that is in the nature of interest."  1936 Tax Act § 128A(1AB)(a); see also Chubb Decl. ¶ 7.  Under Australian caselaw, a payment is properly classified as "interest" if it "is based on a principal amount owed to another party and compensates that party for the use of its money." (Chubb Decl. ¶ 7; see also Fed. Comm'r of Taxation v. Century Yuasa Batteries Pty Ltd. (1998) 98 A.T.C. 4380, 4383 (defining interest as "the return, consideration or compensation for the use or retention by one person of a sum of money belonging to, or owed to another" that is "referable to a principal").)

Mr. Chubb states that the pre-judgment interest awarded to Bondholders in this case "should meet the criteria to be 'in the nature of interest'" because of the existence of a debtor and creditor relationship between Aristocrat and Bondholders and

11

because the pre-judgment interest "is calculated with reference to a sum of money, . . . is payable for the use of money and is in the nature of compensation for deprivation of use of money." (Chubb Decl. ¶ 7.)  Mr. Chubb has advised Aristocrat that, "as the payer of taxable pre-judgment interest, [Aristocrat] is required to withhold 10% of any payment of pre-judgment interest to a non-resident Bondholder and pay that tax to the Australian government unless the Bondholder qualifies for an exemption from the tax."  (Id. ¶ 11 (citing 1953 Tax Act, vol. 2, sched. 1, subdiv. 12-F, §§ 12-245, 12-300 & subdiv. 16-B § 16-70(1); Regulation 41).)  A Bondholder is exempt from the withholding tax, and Aristocrat, consequently, is exempt from its 10% withholding requirement, if the Bondholder either is "(i) a 'superannuation fund for foreign residents' (i.e., a pension fund) within the meaning of § 128B(3)(jb) of the 1936 Tax Act and that pension fund is not taxed on the interest in the home country, or (ii) a 'financial institution' within the meaning of the 2003 Australia-U.S. Tax Treaty or the Australia-U.K. Tax Treaty."  (Id. ¶ 12 (quoting 1936 Tax Act § 128B(3)(jb); 2003 Australia-U.S. Treaty, 2003 Austl. T.S. No. 14, art. 7(3)(b); 2003 Australia-U.K. Treaty, 2003 Austl. T.S. No. 22, art. 11(3)(b)).)  There is no dispute that none of Bondholders qualifies as a "superannuation fund for foreign residents" under Section 128B(3)(jb) of the 1936 Tax Act.  There also is no

dispute that some Bondholders—KBC FP, UFJ, and Lehman—may be "financial institutions" within the meaning of the Australia-U.K. Tax Treaty and, therefore, exempt from the withholding tax requirement by operation of that treaty.[6]  See 2003 Austl. T.S. No. 22, art. 11(3)(b); Aristocrat's Mem. 6.

### B. Analysis

Under Federal Rule of Civil Procedure ("Rule") 44.1, a district court's determination of the content of foreign law is not a finding of fact but a "ruling on a question of law."  Fed. R. Civ. P. 44.1; see also In re Vivendi Universal, S.A. Sec. Litig., 618 F. Supp. 2d 335, 340 (S.D.N.Y. 2009).  "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.  While a court "may examine a wide array of materials to determine foreign law" under Rule 44.1, "it is under no obligation to do so if the party whose burden it is fails to produce sufficient evidence that foreign law applies."  In re Vivendi, 618 F. Supp. 2d at 340; see also Loebig v. Larucci, 572 F.2d 81, 85 (2d Cir. 1978) (Moore, J.) ("Rule 44.1 of the Federal Rules of Civil Procedure permits

---

[6] The Court takes no position as to whether KBC FP, UFJ, and Lehman are in fact exempt financial institutions under the 2003 Australia-U.K. Tax Treaty, 2003 Austl. T.S. No. 22, art. 11(3)(b).

parties to present information on foreign law, and the court may make its own determination of foreign law based on its own research, but it is not mandatory that it do so."); Bartsch v. Metro-Goldwyn-Mayer, Inc., 391 F.2d 150, 155 n.3 (2d Cir. 1968) (Friendly, J.) ("Though . . . Rule 44.1 establishes that courts may, in their discretion, examine foreign legal sources independently, it does not require them to do so in the absence of any suggestion that such a course will be fruitful or any help from the parties."); In re Nigeria Charter Flights Contract Litig., 520 F. Supp. 2d 447, 458 (E.D.N.Y. 2007) (declining to "undertake its own analysis of Nigerian law to determine whether a conflict exists" between Nigerian and New York breach of contract law).

Having considered the Australian tax laws, treaties, and caselaw submitted by Aristocrat and referenced in Mr. Chubb's Declaration, as well as Mr. Chubb's Declaration itself, the Court holds that Australian law requires Aristocrat to pay to the Australian tax authorities 10% of the pre-judgment interest awarded to Taxed Bondholders in this case.  The Court also finds that, consistent with Mr. Chubb's Declaration, the pre-judgment interest awarded in this case satisfies the definition of "interest" in the 1936 Tax Act, as it is "an amount . . . that is in the nature of interest."  1936 Tax Act § 128A(1AB)(a); see also Chubb Decl. ¶ 7.  Thus, Bondholders' argument that

Aristocrat has not satisfied its burden to show that Australian
tax laws require Aristocrat to pay to the Australian tax
authorities 10% of the pre-judgment interest awarded to Taxed
Bondholders is rejected.

## II.   Tax Withholding Provisions Under the Indenture and Offering Memorandum

The Court now turns to whether the terms of the Indenture
and Offering Memorandum require Aristocrat to compensate Taxed
Bondholders for the 10% amount of pre-judgment interest that
Aristocrat must withhold under Australian law.

### A. Parties' Arguments

Bondholders insist that pursuant to the terms of the
Indenture and Offering Memorandum, Aristocrat must pay to Taxed
Bondholders the full amount of the pre-judgment interest,
including the amount that Aristocrat must withhold to satisfy
its Australian tax obligations, "to put bondholders in the same
position as if withholding tax had not been required."
(Bondholders' Opp'n 2.)  Aristocrat contends that Bondholders
"are asking [Aristocrat] to pay the same amount twice"—once to
Taxed Bondholders and once to the Australian government—and that
this "demand for . . . duplicate payment is contrary to the
express terms of the Indenture," which permit Aristocrat "to

withhold tax from any payments of pre-judgment interest and to

remit the withheld amount directly to the Australian tax

authorities, without any obligation to compensate the

Bondholders in the form of Additional Amounts." (Aristocrat's

Mem. 1.)  Both sides cite Section 3.10 of the Indenture in

support of their respective positions.  Section 3.10 of the

Indenture provides that:

> All payments of the principal of, and interest and premium (if any) on, the Bonds and all deliveries of Ordinary Shares made on conversion of the Bonds pursuant to the Bonds, are to be made free and clear of, and without withholding or deduction for, any taxes, duties, assessments or other governmental charges ("Taxes") imposed, levied, collected, withheld or assessed by or within Australia or any other jurisdiction in which the Issuer or its successor is organized . . ., unless such withholding or deduction is required by law or by regulation or governmental policy having the same force of law.  In the event that any such withholding or deduction is so required, the Issuer will pay such additional amounts on the Bonds (all such additional amounts being referred to herein as "Additional Amounts") as will result in receipt by the Holder of each Bond of such amounts as would have been received by such Bondholder had no such withholding or deduction been required, except that no Additional Amounts shall be payable for or on account of:

> . . .

> (c) any tax, assessment or other governmental charge which is payable otherwise than by withholding or deduction from

16

> payments of (or in respect of)
> principal of, or interest and
> premium (if any) on, the Bonds[.]

Indenture § 3.10 (emphasis added).  Pursuant to the text above,

Section 3.10 differentiates between two categories of tax

payments.  The first category includes those withholding taxes

that Aristocrat, as Bond Issuer, must pay on Bondholders'

behalf.  (Aristocrat's Mem. 7.)  The second category negates

Aristocrat's obligation to pay any taxes other than those

affirmatively specified by the Indenture, providing that "no

Additional Amounts shall be payable for or on account of . . .

any tax, assessment or other governmental charge which is

payable otherwise than by withholding or deduction from payments

of (or in respect of) principal of, or interest and premium (if

any) on, the Bonds."  (Indenture § 3.10(c); see also Aristocrat

Mem. 8.)  Bondholders contend that the pre-judgment interest

awarded in this case falls into the first category while

Aristocrat argues that it falls into the second category.

Bondholders also contend that, pursuant to the Offering

Memorandum, the Bonds "were set up to ensure that non-resident

purchasers, such as the Intervening Defendants, were exempt from

interest withholding tax pursuant to Section 128F of the

Australian Income Tax Assessment Act 1936."  (Bondholders' Opp'n

3.)  The relevant portion of the Offering Memorandum provides

that:

17

> Interest paid to a non-resident of Australia is not subject to general income tax in Australia if the non-resident is not carrying on a business in Australia through a permanent establishment (i.e., branch or other fixed place of business) in Australia. Payments of interest to a non-resident not carrying on a business in Australia through a permanent establishment will generally be subject to interest withholding tax, which is imposed at a rate of 10%.
>
> However, a payment of interest made to a non-resident would be exempt from Australian interest withholding tax if an exemption provided by Section 128F of the Australian Income Tax Assessment Act 1936 ("1936 Act") applies.

Ex. 1 to the Decl. of Theodore S. Geiger In Supp. of Intervening Defs.' Mem. of Law in Opp'n to Aristocrat's Mot. Regarding Compliance with Withholding Tax Obligations ("Offering Mem.") 114 (emphasis added).)  Section 128F of the 1936 Tax Act, referenced in the Offering Memorandum, exempts from Australian tax withholding "interest paid by a company in respect of a debenture or debt interest in the company."  1936 Tax Act § 128F(1); see also Chubb Decl. ¶ 13.  Bondholders assert, and Aristocrat and its tax advisor disagree, that "[p]re-judgment interest paid as a result of the breach of the terms of a debenture falls within the plain terms of this definition."  (Bondholders' Opp'n 3; see also Aristocrat's Consol. Reply Mem. in Supp. of Its Mot. Regarding Compliance with Withholding Tax Obligations ("Aristocrat's Reply") 6-7; Chubb Decl. ¶ 13.)

B. <u>Analysis</u>

The parties agree that, as set forth in Section 3.10 of the Indenture, only (1) payments of the principal of the Bonds, (2) interest on the Bonds, and (3) deliveries of shares made on conversion of the Bonds "are to be made to Bondholders 'free and clear of' Australian withholding taxes." (Aristocrat's Mem. 3 (quoting Indenture § 3.10); <u>see also</u> Bondholders' Opp'n 2.)  The parties dispute, however, whether the pre-judgment interest that Bondholders are entitled to under N.Y. C.P.L.R. §§ 5001 and 5004 fits one of these three definitions.  The Court analyzes each definition in turn.

First, the Court holds, and Bondholders do not dispute, that the pre-judgment interest awarded in this case does not constitute payment for "the principal of . . . the Bonds." (Indenture § 3.10.)  Second, the Court holds, and Bondholders do not dispute, that the pre-judgment interest awarded here does not constitute "interest . . . on[] the Bonds," but rather is a payment of statutory interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004.  (<u>Id.</u>)

Bondholders claim that pre-judgment interest satisfies the third definition of exclusion by arguing that the pre-judgment interest awarded in this case under N.Y. C.P.L.R. §§ 5001 and 5004 constitutes "money paid on damages for failure to convert and is therefore a payment <u>on account of</u> such conversion."

(Bondholders' Opp'n 2 (emphasis added).)  Bondholders'
interpretation of the Indenture as precluding withholding tax
"on account of" conversion is unsupported by the plain text of
the Indenture.  The Indenture states that Aristocrat may not
withhold taxes from "deliveries of Ordinary Shares made on
conversion of the Bonds."  (Indenture § 3.10.)  It does not
preclude Aristocrat from withholding taxes "on account of"
conversion, as Bondholders contend.  (Bondholders' Opp'n 2.)
Here, the delivery of "Ordinary Shares made on conversion of the
Bonds" never occurred because of Aristocrat's breach.
(Indenture § 3.10.)  Accordingly, Aristocrat cannot, and does
not, seek to withhold anything from "deliveries of" conversion
shares.  (Aristocrat's Reply 5.)  Nor does Aristocrat seek to
withhold taxes from Taxed Bondholders' general damages, were the
Court to construe general damages as a substitute for conversion
shares.  (Id.)  Rather, Aristocrat permissibly seeks to withhold
taxes from statutory pre-judgment interest.  (Id.)  For these
reasons, an award of pre-judgment interest under N.Y. C.P.L.R.
§§ 5001 and 5004 does not constitute delivery of shares made on
conversion of the Bonds under the third definition of exclusion.
Pursuant to Section 3.10(c) of the Indenture, therefore,
Aristocrat may withhold 10% of the statutory pre-judgment
interest awarded to Taxed Bondholders to fulfill its Australian
tax obligations.

The Court also rejects Bondholders' reliance on the Offering Memorandum in support of their argument against withholding taxes. The Offering Memorandum expressly states that "[p]ayments of interest to a non-resident . . . will generally be subject to interest withholding tax, which is imposed at a rate of 10%." (Offering Mem. 114.) Bondholders contend that the exception to this general requirement applies here—namely, that the pre-judgment interest awarded here fits the tax withholding exemption in Section 128F of the 1936 Tax Act referenced in the Offering Memorandum. (See Bondholders' Opp'n 3; Offering Mem. 114 ("[A] payment of interest made to a non-resident would be exempt from Australian interest withholding tax if an exemption provided by Section 128F . . . applies.").) As stated above, Section 128F of the 1936 Tax Act exempts from Australian tax withholding "interest paid by a company in respect of a debenture or debt interest in the company." 1936 Tax Act § 128F(1). The issue, therefore, is whether the statutory pre-judgment interest in this case constitutes interest "in respect of a debenture or debt interest." Id. The Court answers in the negative and explains below.

Mr. Chubb acknowledges that the Bonds at issue in this case qualify as debentures and that "the interest on the Bonds was exempt from withholding tax under [Section 128F]." (Chubb Decl.

¶ 13.)  However, the pre-judgment interest awarded here under
N.Y. C.P.L.R. §§ 5001 and 5004 is not in respect of the Bonds or
Bond interest.  Rather, it is in respect of damages for breach
of the Indenture.  (See N.Y. C.P.L.R. § 5001(a) ("Interest shall
be recovered upon a sum awarded because of a breach of
performance of a contract . . . ."); Chubb Decl. ¶ 13 ("[W]here
the original Bonds have been retired, cancelled or they are
otherwise no longer on issue (as is currently the case), the
pre-judgment interest should not be considered to be paid 'in
respect of' the Bonds.").)  Bondholders' blanket assertion that
"[p]re-judgment interest paid as a result of the breach of the
terms of a debenture falls within the plain terms of" Section
128F, (Bondholders' Opp'n 3), does not meaningfully challenge
the Court's reading of Section 128F of the 1936 Tax Act.
Accordingly, the statutory pre-judgment interest awarded here
does not qualify for a tax withholding exemption under Section
128F of the 1936 Tax Act.

Bondholders claim that they are entitled to a "gross up" in
their damages to cover the 10% withholding tax because, had
Aristocrat performed fully under the Indenture by providing
shares upon conversion, Aristocrat (rather than Bondholders)
would have had to bear the burden of any withholding tax.  (See
id. 3-4.)  The Court rejects this claim on the grounds that it
does not overcome the requirements of Australian tax law, which

obligate Aristocrat to remit to the Australian government 10% of the pre-judgment interest awarded to Taxed Bondholders, and the terms of the Indenture and Offering Memorandum, which permit Aristocrat to withhold this 10% tax from the pre-judgment interest awarded to Taxed Bondholders.

Finally, the parties dispute whether certain international treaties between Australia and the United States, United Kingdom, and Germany, respectively, provide a 100% tax credit against the taxes withheld from Taxed Bondholders residing in the United States, United Kingdom, and Germany.  (See Aristocrat's Mem. 11; Bondholders' Opp'n 5 n.5; DBAGL Opp'n 1-2; Chubb Decl. ¶ 15.)  The Court need not resolve this dispute because whether Taxed Bondholders may obtain a tax credit from their home countries to offset the withholding tax has no bearing on the outcome of this motion.  Other than noting that "many of the Intervening Defendants are not based in the United States or the United Kingdom and would therefore not be entitled to seek a refund of the withholding tax," (Bondholders' Opp'n 5 n.5), and that "DBAGL will receive little to no benefit from any such [treaty] provisions," (DBAGL Opp'n 1), Bondholders do not argue that a Taxed Bondholder's ability to receive a corresponding tax credit in its home country affects the outcome of this motion.

For the reasons stated above, pursuant to Australian tax laws and the terms of the Indenture and Offering Memorandum, Aristocrat may withhold 10% of the statutory pre-judgment interest awarded to Taxed Bondholders to satisfy Aristocrat's Australian tax obligations.  Accordingly, should Aristocrat appeal any of this Court's rulings, Aristocrat may secure the judgment pending appeal in a manner that will enable Aristocrat to comply with its obligations to pay, on behalf of Taxed Bondholders, a 10% withholding tax on the pre-judgment interest portions of the damages award.

## CONCLUSION

For the foregoing reasons, Aristocrat's motion to withhold from Taxed Bondholders' final judgments 10% of the statutory pre-judgment interest awarded by the Court to satisfy Aristocrat's Australian tax obligations is GRANTED.  Should Aristocrat appeal any of this Court's rulings, Aristocrat may secure the judgment pending appeal in a manner that will enable Aristocrat to comply with its obligations to pay, on behalf of Taxed Bondholders, a 10% withholding tax on the pre-judgment interest portions of the damages award.  The Clerk of Court is asked to close docket number 370.

**SO ORDERED.**
**New York, New York**

August __19__ 2010

Peter K. Leisure

U.S.D.J.

Copies of this Opinion and Order have been e-mailed to:

Mark C. Hansen, Esq.
Rebecca A. Beynon, Esq.
Kellogg, Huber, Hansen, Todd, Evans, & Figel, PLLC
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

Charles S. Gilman, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005

Evan A. Davis, Esq.

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

James I. McClammy, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017